| | |
|---|---|
| 1567 56TH STREET, LLC, 1569 56TH STREET, LLC, and SHLOMO BRAUN, | Case No: 22-cv-04873 (KAM-RML) |
| *Plaintiffs,* | **SECOND AMENDED COMPLAINT** |
| - against - | |
| ARTHUR SPITZER, JOSH WEINFELD, ISIDORE BLEIER, BSD REALTY HOLDINGS INC., 1567 56 NY LLC, DEKEL ABSTRACT LLC, ABRAHAM TEITELBAUM, ROSA FUNDING LLC, PS FUNDING, INC., and JEHUDA WEISZ, | |
| *Defendants.* | |

Plaintiffs Shlomo Braun, 1567 56th Street, LLC, and 1569 56th Street, LLC by their counsel Levi Huebner & Associates PC, pleads their case for quiet title and for a money judgment against Defendants, Arthur Spitzer, Josh Weinfeld, Isidore Bleier, BSD Realty Holdings Inc., 1567 56 NY LLC, Dekel Abstract LLC, Abraham Teitelbaum, Rosa Funding LLC, PS Funding, Inc., and Jehuda Weisz, and states as follows:

## SYNOPSIS

Plaintiff Rabbi Shlomo Braun ("Plaintiff Rabbi Braun"), a widowed septuagenarian, has had title to two properties going back to the 1970s. These two properties right next to each other are the primary residence of Plaintiff Rabbi Braun and several of his immediate family members. The Defendants used forgeries, fraud, and deceit to convert Plaintiffs title in these two properties. There was no closing, no contract of sale, and no relationship between the Plaintiffs and the Defendants.

Plaintiffs are not the only victims. Each of the victims has a common theme, that the Defendants used, to manipulate the victim in such a way that the victim would not comprehend

what had befallen, nor fully catch on to the game. As more victims are coming forward, the Plaintiffs are able to comprehend and articulate more detail on the Defendants common scheme.

In this game, Plaintiffs were caught up. Unbeknownst to Plaintiffs and without consent, the Defendants forged Plaintiffs title to two properties and encumbered them with a mortgage on each. The monies obtained from these two mortgages were then transferred to various shell corporations and redistributed to each co-defendant through a scheme using fraudulent mortgages.

## JURISDICTIONAL and PARTY ALLEGATIONS

1.      Pursuant to 28 U.S.C. 1332, the diversity subject matter of this case arises from a combined $2,400,000 mortgage fraud of Defendants, all domiciled and operating in the State of New Jersey, and of whom orchestrated the fraud causing damages to Plaintiffs in the State of New York.

2.      Pursuant to 18 U.S.C. 1964, the subject matter of this case arises from Defendants theft and conversion of property exceeding the value of $2,400,000 through racketeering activity orchestrated as an organized enterprise operating in interstate commerce following a pattern of the same or similar criminal acts committed against Plaintiffs and others.

3.      At all times material to this lawsuit, Plaintiffs, Shlomo Braun (referred to as "Plaintiff Rabbi Braun"), 1567 56th Street, LLC and 1569 56th Street, LLC (referred to together as collectively "Plaintiffs") are domiciled or located in Brooklyn, New York, County of Kings.

4.      At all times material to this lawsuit, the defendant Arthur Spitzer ("Defendant Spitzer") is domiciled at 2370 Forest Circle in the Township of Toms River in the State of New Jersey.

5. At all times material to this lawsuit, the defendant Josh Weinfeld ("Defendant Weinfeld") is domiciled at 54 Gudz Road in the Township of Lakewood in the State of New Jersey.

6. At all times material to this lawsuit, the defendant Isidore Bleier ("Defendant Bleier") is domiciled at 10 Teaberry Court in the Township of Lakewood in the State of New Jersey with a secondary address as New Jersey as 213 2nd Street, Lakewood, New Jersey 08701.

7. At all times material to this lawsuit, the defendant BSD Realty Holdings Inc. ("Defendant BSD") is a corporation in the State of New Jersey with an address located at 123 Bayview Avenue, in the City of Jersey City in the State of New Jersey.

8. At all times material to this lawsuit, the defendant 1567 56 NY LLC, is a corporation in the State of New York domiciled at 2370 Forest Circle in the Township of Toms River in the State of New Jersey.

9. At all times material to this lawsuit, the defendant Dekel Abstract LLC ("Defendant Dekel") is a corporation in the State of New Jersey with an address located at 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

10. At all times material to this lawsuit, the defendant Abraham Teitelbaum ("Defendant Teitelbaum") is domiciled at 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

11. At all times material to this lawsuit, the defendant Rosa Funding LLC ("Defendant Rosa Funding") is located at an address known as 213 2nd Street in Lakewood of the State of New Jersey as a consortium between Defendant Weinfeld and Defendant Bleier.

12.     At all times material to this lawsuit, the defendant PS Funding, Inc. ("Defendant PS Funding") is a corporation in the State of Delaware located at Incorporating Services, Ltd. at 3500 S Dupont Hwy in the City of Dover in the State of Delaware.

13.     At all times material to this lawsuit, the defendant Jehuda Weisz ("Defendant Weisz") is domiciled at 1303 Hickory Street in Toms River in the State of New Jersey.

14.     Upon information and belief, each individual defendant is a citizen of the United States.  The bases for this belief are derived from the facts of this case, by virtue of the corporation such defendant owns, the license such person holds, the manner of real estate that was handled by each defendant, or the manner the processing of mortgage documents that was handled by each defendant.

15.     The acts necessary or precedent to bringing this lawsuit were calculated to swindle and defraud a resident of the State of New York.

16.     Pursuant to N.Y. Real Prop. Acts. Law § 1515[b] it appears from the public records and from the allegations set forth in this complaint that the defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, 1567 56 NY LLC, Defendant BSD, Defendant Rosa Funding, and Defendant PS Funding, claims, or might claim, an interest in the real property, adverse to the interest of the Plaintiffs.  The nature of such claims as delineated below appears from the deeds belonging to 1567 56th Street, LLC and 1569 56th Street, LLC that were fraudulently transferred to 1567 56 NY LLC and from the mortgages that Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding, Inc., falsely claiming to be secured lenders on the properties belonging to 1567 56th Street, LLC and 1569 56th Street, LLC.

17. Pursuant to N.Y. Real Prop. Acts. Law § 1515[c] Plaintiffs do not have sufficient knowledge to state whether any of the defendants are mentally retarded, mentally ill or an alcohol abuser, but upon information and belief no Defendant is an infant.

18. Pursuant to N.Y. Real Prop. Acts. Law § 1515[d] Plaintiffs have named all parties who might claim an interest in this action.

19. At all relevant times, Plaintiffs are unaware about other individuals or corporations involved in the underlying swindle that should be named as a party.

20. This Court has jurisdiction.

## RELEVANT FACTS

21. Plaintiff Rabbi Braun, a widowed septuagenarian, has had title to two properties going back to the 1970s. These properties are addressed as 1567 56th Street and 1569 56th Street, in Brooklyn, NY.

22. These two properties right next to each other are the primary residence of Plaintiff Rabbi Braun and several of his immediate family members.

23. Plaintiff Rabbi Braun is the sole member of Plaintiff 1567 56th Street LLC (the "Plaintiff 67 LLC").

24. Plaintiff Rabbi Braun is the sole member of Plaintiff 1569 56th Street LLC (the "Plaintiff 69 LLC").

25. At all relevant times, Plaintiff Rabbi Braun was above the age of 70.

## I. The 69 Property

26. On February 2, 2014, Plaintiff 69 LLC received from Plaintiff Rabbi Braun clear title and ownership to the property addressed as 1569 56th Street ("69 Property") located in

Brooklyn, New York, County of Kings, which grant is registered with the City Register as CRFN 2014000057977.

27.     The 69 Property is described at the City Registrar under Block 5488 and Lot number 49 with the following description:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, City of New York, bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue; RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches; THENCE westerly parallel with 56th Street, 20 feet; THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING. NOTE: Being Lot(s) Lot: 49, Block: 5488; Tax Map of the Borough of Brooklyn, County of Kings, State of New York. NOTE: Lot and Block shown for informational purposes only.

28.     On June 15, 2016, Plaintiff 69 LLC granted the Plaintiff 67 LLC, 60% of the title and ownership to the property addressed as 1569 56th Street (the "69 Property") located in Brooklyn, New York, County of Kings registered with the City Register as CRFN 2016000221114.

29.     The 69 Property is described at the City Registrar under Block 5488 and Lot number 49 with the following description:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, City of New York, bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the comer formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th A venue; RUNNING THENCE northerly parallel with 16th A venue 100 feet 2 inches; THENCE westerly parallel with 56th Street, 20 feet; THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING.

30.     At all relevant times, the Plaintiff 67 LLC together with the Plaintiff 69 LLC had clear title to the 69 Property with no encumbrances.

31.     At all relevant times, there were no encumbrances on the 69 Property.

## II.     The 67 Property

32.     On August 4, 2014, the Plaintiff 67 LLC received clear title and ownership to the property with an address known as 1567 56th Street (the "67 Property") located in Brooklyn New York, County of Kings registered with the City Register as CRFN 2014000313033.

33.     The 67 Property is described at the City Registrar under Block 5488 and Lot 50 with the following description:

> ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, known as Block 5, Lot 221 on map entitled, "Map No. 1 of 918 lots. Cowenhoven Farm, New Utrecht, drawn by B.L. Williams, C.E., November 1890 fled July 17, 1891 as Map No. 1013 and which said lot, according to said map is bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 120 feet westerly from the corner formed by the intersection of the northerly side of 56th Street and the westerly side of 16th Avenue; RUNNING THENCE northerly parallel with 16th Avenue and part of the distance through a party wall, 100 feet 2 inches; THENCE westerly parallel with 56th Street 20 feet; THENCE southerly parallel with 16th Avenue, 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING. SAID PREMISES KNOWN AS 1567 56th Street, BROOKLYN, N.Y.

34.     At all relevant times, the Plaintiff 67 LLC has had clear title to the 67 Property.

35.     At all relevant times, there were no encumbrances on the 67 Property.

## III.     The Conversion

36.     In the Summer of 2019, Defendant Spitzer approached Plaintiff Rabbi Braun offering an "opportunity" to invest in real investments involving Mendel Deutsch.

37.     Meanwhile, Defendant Spitzer did not have any partnership with Mendel Deutsch.

38.     Plaintiff Rabbi Braun was listening to the offers made by Defendant Arthur Defendant Spitzer ("Defendant Spitzer") and did not agree to invest in any of these ventures.

39.     On August 20, 2019, Defendant Spitzer incorporated Defendant 1567 56 NY LLC, a sham entity in which he is listed as the sole member of (the "Defendant Sham LLC").

40.     Defendant Spitzer created the Defendant Sham LLC without knowledge of the Plaintiffs.

## IV.     The Forgery of Title to the 67 Property

41.     At some point in 2019, Defendant Spitzer, with the assistance of one or more of the other Defendants, forged the signature of Plaintiff Rabbi Braun to transfer the title of the 67 Property to the Defendant Sham LLC. This forgery is dated August 20, 2019.

42.     By purported deed dated August 20, 2019, the transfer of title of the 67 Property was done without the consent from Plaintiff Rabbi Braun.

43.     The transfer of title of the 67 Property to the Defendant Sham LLC is registered in the City Register as CRFN 2019000306591.

44.     Plaintiff 67 LLC did not receive any consideration for the transfer of title of the 67 Property to the Defendant Sham LLC.

45.     Plaintiff Rabbi Braun did not receive any consideration for the transfer of title of the 67 Property to the Defendant Sham LLC.

46.     Plaintiff Rabbi Braun did not gift the 67 Property to either Defendant Spitzer or the Defendant Sham LLC.

47.     Plaintiff 67 LLC did not gift the 67 Property to either Defendant Spitzer or the Defendant Sham LLC.

48.     Defendant Dekel and Defendant Teitelbaum performed the transfer of title of the 67 Property.

49.     Defendant Weisz notarized the forged signature of Plaintiff Rabbi Braun transferring title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

50.     At all relevant times, Plaintiff Rabbi Braun never appeared before Defendant Weisz for any notary services.

51.     At all relevant times, Plaintiff Rabbi Braun did not request any notarization services from Defendant Weisz.

52.     Utilizing the umbrella of Defendant Rosa Funding LLC, Defendant Weinfeld and Defendant Bleier created an instrument, dated August 27, 2019, encumbering the 67 Property with a mortgage for $1,200,000 that was registered with the City Register as CRFN 2019000306592.

53.     At all relevant times, Defendant Weisz was an associate of Defendant Dekel.

54.     Neither of the Defendants performed the due diligence to ascertain the legitimacy or chain of title required for transferring the 67 Property, albeit for no consideration and simultaneously encumbering the 67 Property.

55.     At all relevant times, there was no contract of sale for the 67 Property by either Plaintiff 67 LLC or Plaintiff Rabbi Braun.

56.     The same day the fraudulent deed and mortgage of the 67 Property was recorded, Defendant Dekel and Defendant Teitelbaum submitted an assignment of the mortgage

from Defendant Rosa Funding to Defendant PS Funding upon the 67 Property registered with the City Register as CRFN 2019000306592.

57.     At all relevant times, there was no closing on the 67 Property where either Plaintiff Rabbi Braun or Plaintiff 67 LLC were participants prior to Defendant Rosa Funding encumbering the 67 Property registered with the City Register as CRFN 2019000306591, 2019000306592 and 2019000306593.

58.     Defendant PS Funding is attempting to foreclose upon the 67 Property by suing the Defendant Sham LLC, ARTHUR SPITZER, NEW YORK CITY – DEPARTMENT OF FINANCE, and JANE/JOHN DOE Nos. 1-12, in the Supreme Court of Kings County under 503948/2021. ("67 Foreclosure") by an action commenced on February 18, 2021.

59.     On February 9, 2021, Hugh Humphreys, the director of Asset Management for Defendant PS Funding Inc., wrote an email (from hhumphreys@peerstreet.com) to Arthur Defendant Spitzer stating that:

> Good Afternoon.  Looks like a Braun Shlomo is owner of 1567 and 1569 56th.
> Who knew!
> I'm going through the motions, but:
> Please let me know the nature of these transfers.  I'm sure you know that is a
> default under the loan documents.

60.     At all relevant times, Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC as a party to the 67 Foreclosure.

61.     Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC regarding the 67 Foreclosure.

62.     Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC in the 67 Foreclosure in furtherance of a sophisticated scam to execute a judgment of

foreclosure against the 67 Property without Plaintiff Rabbi Braun or Plaintiff 67 LLC having any due process to challenge such illegitimate foreclosure.

63. Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC regarding the 69 Foreclosure.

64. At all relevant times, Defendant PS Funding did not deliver notice to Plaintiff Rabbi Braun as required under N.Y. Real Prop. Acts. Law § 1303 within 10 days of commencing the 67 Foreclosure.

65. Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC any notice regarding the 67 Foreclosure.

## V. The Forgery of Title to the 69 Property

66. At some point in 2019, Defendant Spitzer, with the assistance of one or more of the other Defendants, forged the signature of Plaintiff Rabbi Braun to transfer the title of 69 Property to the Defendant Sham LLC. The forgery is dated August 20, 2019.

67. The transfer of title of the 69 Property to the Defendant Sham LLC is registered in the City Register as CRFN 2019000306603.

68. By purported deed dated August 20, 2019, the transfer of title of the 69 Property was done without the consent from Plaintiff Rabbi Braun.

69. Plaintiff 69 LLC did not receive any consideration for the transfer of title of the 69 Property to the Defendant Sham LLC.

70. Plaintiff 67 LLC did not receive any consideration for the transfer of title of the 69 Property to the Defendant Sham LLC.

71. Plaintiff Rabbi Braun did not receive any consideration for the transfer of title of the 69 Property to the Defendant Sham LLC.

72. Plaintiff Rabbi Braun did not gift the 69 Property to either Defendant Spitzer or the Defendant Sham LLC.

73. Plaintiff 67 LLC (a 60% owner of the 69 Property) and Plaintiff 69 LLC (a 40% owner of the 69 Property) did not gift the 69 Property to either Arthur Defendant Spitzer or the Defendant Sham LLC.

74. Defendant Dekel and Defendant Teitelbaum performed the transfer of title of the 69 Property.

75. Defendant Weisz notarized the forged signature of Plaintiff Rabbi Braun transferring title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

76. At all relevant times, Plaintiff Rabbi Braun never appeared before Defendant Weisz for any notary services.

77. At all relevant times, Plaintiff Rabbi Braun did not request any notarization services from Defendant Weisz.

78. Utilizing the umbrella of Defendant Rosa Funding LLC, Defendant Weinfeld and Defendant Bleier created an instrument, dated August 29, 2019, encumbering the 69 Property with a mortgage for $1,200,000 that was registered with the City Register as CRFN 2019000306604.

79. Upon information and belief, Defendant Weisz is an associate of Defendant Dekel.

80. Defendant Dekel and Defendant Teitelbaum did not perform due diligence to ascertain the basis for transferring the 69 Property, albeit for no consideration and encumbering the 69 Property.

81.     At all relevant times, there was no contract of sale for the 69 Property by either Plaintiff 69 LLC, Plaintiff 67 LLC or Plaintiff Rabbi Braun.

82.     The same day the fraudulent deed and mortgage of the 69 Property was recorded, Defendant Dekel and Defendant Teitelbaum submitted an assignment of the mortgage from Defendant Rosa Funding to Defendant PS Funding upon the 69 Property registered with the City Register as CRFN 2019000306605.

83.     At all relevant times, there was no closing on the 69 Property where either Plaintiff Rabbi Braun, Plaintiff 67 LLC or Plaintiff 69 LLC were participants prior to Defendant Rosa Funding encumbering the 69 Property registered with the City Register as CRFN 2019000306603, 2019000306604 and 2019000306605.

84.     Defendant PS Funding is attempting to foreclose upon the 69 Property by suing the Defendant Sham LLC, ARTHUR SPITZER, NEW YORK CITY – DEPARTMENT OF FINANCE, and JANE/JOHN DOE Nos. 1-12, in the Supreme Court of Kings County under 503623/2021. ("69 Foreclosure") by an action commenced on February 15, 2021.

85.     On February 9, 2021, Hugh Humphreys, the director of Asset Management for Defendant PS Funding Inc., wrote an email (from hhumphreys@peerstreet.com) to Arthur Defendant Spitzer stating that:

> Good Afternoon.  Looks like a Braun Shlomo is owner of 1567 and 1569 56th.
> Who knew!
> I'm going through the motions, but:
> Please let me know the nature of these transfers.  I'm sure you know that is a default under the loan documents.

86.     At all relevant times, Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC as a party to the 69 Foreclosure.

87.     Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC regarding the 69 Foreclosure.

88.     Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC in the 69 Foreclosure in furtherance of a sophisticated scam to execute a judgment of foreclosure against the 69 Property without Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC having any due process to challenge such illegitimate foreclosure.

89.     At all relevant times, Defendant PS Funding did not deliver notice to any tenant of the 69 Property as required under N.Y. Real Prop. Acts. Law § 1303 within 10 days of commencing the 69 Foreclosure.

90.     Defendant PS Funding did not name Plaintiff Rabbi Braun, Plaintiff 67 LLC or Plaintiff 69 LLC in the 69 Foreclosure in furtherance of a sophisticated scam to execute a judgment of foreclosure against the 69 Property without Plaintiff Rabbi Braun, Plaintiff 67 LLC or Plaintiff 69 LLC having any due process to challenge such illegitimate foreclosure.

## FIRST CLAIM FOR RELIEF

Declaratory Relief for the Deed of the 67 Property

91.     Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 90, for relief against Defendant Spitzer and the Defendant Sham LLC requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

92.     Diversity jurisdiction exists for this claim for relief, (i) since the 67 Property value involved exceed the threshold of $75,000; (ii) since Defendant Spitzer and the Defendant Sham LLC are domiciled or located outside the State of New York, as delineated *supra* in ¶¶ 4

and 9, and (iii) all of the plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

93.     A live controversy exists begging the question whether the transfer of the title of the 67 Property to the Defendant Sham LLC is void ab initio.

94.     At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC gifted the 67 Property to anyone.

95.     At all relevant times, Plaintiff Rabbi Braun and Plaintiff 67 LLC is in possession of the 67 Property.

96.     At all relevant times, Plaintiff Rabbi Braun and Plaintiff 67 LLC did not relinquish their possession of true title to the 67 Property.

97.     At all relevant times, Plaintiff 67 LLC did not sell the 67 Property to anyone.

98.     At all relevant times, Plaintiff 67 LLC did not receive any consideration for the transfer of the 67 Property to the Defendant Sham LLC.

99.     Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC conveyed title of the 67 Property to the Defendant Sham LLC.

100.    The title to the 67 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

101.    At all relevant times, Plaintiff 67 LLC's possession of the title in the 67 Property is superior to that of Defendant Spitzer and the Defendant Sham LLC.

102.    Plaintiffs request judgment declaring that the transfer of the 67 Property to the Defendant Sham LLC is void ab initio with no legal affect.

103. Plaintiffs request judgment directing the City Register to strike CRFN 2019000306591 the transfer of the 67 Property to the Defendant Sham LLC from the record of registered deeds.

104. Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer and the Defendant Sham LLC from any claim to title of the 67 Property.

105. As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 67 Property was slandered.

106. As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 67 LLC suffered damages.

107. Plaintiff Rabbi Braun and Plaintiff 67 LLC requests a money judgment for the injuries incurred by the slander of title.

108. Plaintiff Rabbi Braun requests a money judgment for the personal injuries incurred caused to him.

109. Plaintiff Rabbi Braun and Plaintiff 67 LLC has no other adequate remedy at law available to redress and remedy this controversy for relief.

## SECOND CLAIM FOR RELIEF
Declaratory Relief for the Deed of the 69 Property

110. Plaintiff incorporates herein all the allegations stated in paragraphs 1 to 109, for relief against Defendant Spitzer and the Defendant Sham LLC requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

111.    Diversity jurisdiction exists for this claim for relief, (i) since the 69 Property value involved exceed the threshold of $75,000; (ii) since Defendant Spitzer and the Defendant Sham LLC are domiciled or located outside the State of New York, as delineated supra in ¶¶ 4 and 9, and (iii) all of the plaintiffs are domiciled or located in the State of New York, as delineated supra in ¶ 3.

112.    A live controversy exists begging the question whether the transfer of the title of the 69 Property to the Defendant Sham LLC is void ab initio.

113.    At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC or Plaintiff 69 LLC gifted the 69 Property to anyone.

114.    At all relevant times, Plaintiffs are in possession of the 69 Property.

115.    At all relevant times, Plaintiffs did not relinquish their possession of true title to the 69 Property.

116.    At all relevant times, Plaintiffs did not sell the 69 Property to anyone.

117.    At all relevant times, Plaintiffs did not receive any consideration for the transfer of the 69 Property to the Defendant Sham LLC.

118.    Neither Plaintiff Rabbi Braun nor Plaintiff 69 LLC or Plaintiff 67 LLC conveyed title of the 69 Property to the Defendant Sham LLC.

119.    The title to the 69 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

120.    At all relevant times, Plaintiff 69 LLC and Plaintiff 67 LLC's right to title in the 69 Property is superior to that of Defendant Spitzer and the Defendant Sham LLC.

121.    Plaintiffs request judgment declaring that the transfer of the 69 Property to the Defendant Sham LLC is void ab initio with no legal effect.

122.     Plaintiffs request judgment directing the City Register to strike CRFN 2019000306603 the transfer of the 69 Property to the Defendant Sham LLC from the record of registered deeds.

123.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer and the Defendant Sham LLC from any claim to title of the 69 Property.

124.     As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiffs right to clean title of the 69 Property was slandered.

125.     As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiffs suffered damages.

126.     Plaintiff requests a money judgment for the injuries incurred by the slander of title.

127.     Plaintiff Rabbi Braun requests a money judgment for the personal injuries caused to him.

128.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.


## THIRD CLAIM FOR RELIEF

Declaratory Relief for the Mortgage of the 67 Property

129.     Plaintiff incorporates herein all the allegations stated in paragraphs 1 to 128, for relief against Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

130.     Diversity jurisdiction exists for this claim for relief, (i) since the 67 Property involved exceed the threshold value of $75,000; (ii) since Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant BSD, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding are domiciled or addressed outside the State of New York as delineated *supra* in ¶¶ 4 through 15; and (iii) all of the Plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

131.     A live controversy exists begging the question whether the mortgage on the 67 Property is void ab initio.

132.     At all relevant times, Plaintiff Rabbi Braun and Plaintiff 67 LLC are in possession of the 67 Property.

133.     At all relevant times, Plaintiff 67 LLC did not relinquish its possession of true title to the 67 Property.

134.     At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC gifted the 67 Property to anyone or any entity.

135.     At all relevant times, Plaintiff 67 LLC did not sell the 67 Property to anyone or any entity.

136.     At all relevant times, Plaintiff 67 LLC did not receive any consideration for the transfer of the 67 Property to the Defendant Sham LLC.

137.     Defendant PS Funding presents itself as the holder of the mortgage on the 67 Property.

138.     Defendant Rosa Funding presents itself as the originator of the mortgage on the 67 Property.

139.     Defendant Dekel, Teitelbaum, and Defendant Weisz present themselves as the title agent of the mortgage on the 67 Property.

140.     Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC conveyed title of the 67 Property to the Defendant Sham LLC.

141.     The title to the 67 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

142.     At all relevant times, Plaintiff 67 LLC's right to title of the 67 Property is superior to that of any of the Defendants.

143.     Plaintiffs request judgment declaring that the encumbrances of the 67 Property created by the Defendant Sham LLC and Defendant Rosa Funding are void ab initio with no legal effect.

144.     Plaintiffs request judgment directing the City Register to strike CRFN 2019000306592 and 2019000306593 the encumbrance of the 67 Property to the Defendant Sham LLC from the record of registered mortgages.

145.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, Defendant PS Funding, Inc., Defendant Dekel, Teitelbaum, and Defendant Weisz from any claim of title to the 67 Property.

146.     As a direct of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 67 Property was slandered.

147.     As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

148.     As a direct of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun suffered physical damages.

149.     Plaintiffs request a money judgment for the injuries incurred by virtue of and encumbrance of the property with an invalid mortgage.

150.     Plaintiffs have no other adequate remedy at law available to redress and remedy this controversy for relief.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief for the Mortgage of the 69 Property

151.     Plaintiff incorporates herein all the allegations stated in paragraphs 1 to 128, for relief against Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

152.     Diversity jurisdiction exists for this claim for relief, (i) since the 69 Property involved exceed the threshold value of $75,000; (ii) since Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant BSD, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding are domiciled or addressed outside the State of New York as delineated *supra* in ¶¶ 4 through 15; and (iii) all of the Plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

153.     A live controversy exists begging the question whether the mortgage on the 69 Property is void ab initio.

154.     At all relevant times, Plaintiffs are in possession of the 69 Property.

155. At all relevant times, Plaintiffs did not relinquish its possession of true title to the 69 Property.

156. At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 69 LLC nor Plaintiff 67 LLC gifted the 69 Property to anyone or any entity.

157. At all relevant times, Plaintiffs did not sell the 69 Property to anyone or any entity.

158. At all relevant times, Plaintiffs did not receive any consideration for the transfer of the 69 Property to the Defendant Sham LLC.

159. Defendant PS Funding presents itself as the holder of the mortgage on the 69 Property.

160. Defendant Rosa Funding presents itself as the originator of the mortgage on the 69 Property.

161. Defendant Dekel, Defendant Teitelbaum and Defendant Weisz present themselves as the title agent of the mortgage on the 69 Property.

162. Neither Plaintiffs conveyed title of the 69 Property to the Defendant Sham LLC.

163. The title to the 69 Property was fraudulently transferred to Plaintiff 67 LLC utilizing the forged signatures of Plaintiff Rabbi Braun.

164. At all relevant times, Plaintiffs right to title in the 69 Property is superior to that of any of the Defendants.

165. Plaintiffs request judgment declaring that the encumbrances of the 69 Property created by the Defendant Sham LLC and Defendant Rosa Funding are void ab initio with no legal effect.

166. Plaintiffs request judgment directing the City Register to strike CRFN 2019000306604 and 2019000306605 the encumbrance of the 69 Property to the Defendant Sham LLC from the record of registered mortgages.

167. Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, 1567 56 NY LLC, Defendant Rosa Funding LLC, Defendant PS Funding Inc., Defendant Dekel, Teitelbaum, and Defendant Weisz from any claim of title to the 69 Property.

168. As a direct of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 69 LLC and Plaintiff 67 LLC's right to clean title of the 69 Property was slandered.

169. As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

170. As a direct of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun suffered physical health damages.

171. Plaintiffs request a money judgment for the injuries incurred by virtue of and encumbrance of the property with an invalid mortgage.

172. Plaintiffs have no other adequate remedy at law available to redress and remedy this controversy for relief.

## FIFTH CLAIM FOR RELIEF
Relief Against Notary for the Deed Forgery of the 67 Property

173. Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 172, for relief against Defendant Weisz requesting money damages for each remedy available at law.

174.    N.Y. Exec. Law § 135 provides that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them."

175.    Defendant Weisz committed misconduct in notarizing the forged signatures of Plaintiff Rabbi Braun on the deeds transferring title for the 67 Property from Plaintiff 67 LLC to Defendant Sham LLC.

176.    The misconduct is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any notary services from him.

177.    As a direct result, Defendant Weisz is individually liable for all damages sustained by the Plaintiffs.

## SIXTH CLAIM FOR RELIEF
Relief Against Notary for the Deed Forgery of the 69 Property

178.    Plaintiffs incorporate herein all the allegations stated in paragraphs 1 to 177, for relief against Defendant Weisz requesting money damages for each remedy available at law.

179.    N.Y. Exec. Law § 135 provides that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them."

180.    Defendant Weisz committed misconduct in notarizing the forged signatures of Plaintiff Rabbi Braun on the deeds transferring title to the 69 Property from Plaintiff 67 LLC to Defendant Sham LLC.

181.    Defendant Weisz committed misconduct in notarizing the forged signatures of Plaintiff Rabbi Braun on the deeds transferring title from and Plaintiff 67 LLC to Defendant Sham LLC.

182.    The misconduct is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any notary services from him.

183.    As a direct result, Defendant Weisz is individually liable for all damages sustained by the Plaintiffs.

## SIXTH CLAIM FOR RELIEF

Damages Against Title Agents for False Acknowledgement of the 67 Property

184.    Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 183, for relief against Defendant Dekel, Teitelbaum, and Defendant Weisz requesting money damages for each remedy available at law.

185.    N.Y. Real Prop. Law § 330 provides that "An officer authorized to take the acknowledgment or proof of a conveyance or other instrument, or to certify such proof or acknowledgment, or to record the same, who is guilty of malfeasance or fraudulent practice in the execution of any duty prescribed by law in relation thereto, is liable in damages to the person injured."

186.    Defendant Weisz breached Real Property Law § 303 and committed malfeasance or engaged in fraudulent practice in creating an acknowledgement of forged signatures of Plaintiff Rabbi Braun conveying title of real property for the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC in the absence of Plaintiff Rabbi Braun.

187.    The malfeasance or engagement in fraudulent practice is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any acknowledgement from him.

188.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 67 Property

without there being a corporate acknowledgment or resolution by a corporate officer on behalf of the Plaintiff 67 LLC.

189. Defendant Dekel and Teitelbaum, holding themselves out to be a title insurance agent, committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 67 Property without doing any title search. For instance, as delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred to the Plaintiff 67 LLC 60% of the title to the 69 Property and retained 40% title to the 69 Property. It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the forgery transferred 100% of the title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC. Yet, the Plaintiff 67 LLC only held only 60% of the title, not 100%. This omission by Defendant Teitelbaum and Defendant Dekel illustrate the fact that no title search was done at all on either the 67 Property or the 69 Property. Since a title search of the 67 Property should have alerted the consciousness and awareness that the Plaintiff 67 LLC did not transfer any title to anyone. Defendant Teitelbaum with Defendant Dekel presented a false image as if they did a title search prior to encumbering the property.

190. Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering deed transfers of a forgery together with mortgages despite there being no closing in which Plaintiffs were present.

191. Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that Plaintiff Rabbi Braun and the Plaintiff 67 LLC were still in possession as the owners of the 67 Property to such degree that Defendant Dekel and Defendant Teitelbaum knew or should have known that no conveyance was made by Plaintiff Rabbi Braun and the Plaintiff 67 LLC to

Defendant Spitzer and the Defendant Sham LLC. The awareness arises from the fact that there was no closing on the 67 Property where Plaintiff Rabbi Braun and Plaintiff 67 LLC appeared.

192.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that there was no contract of sale on the 67 Property.

193.    In particular, at all relevant times, Defendant Teitelbaum was acquainted with Defendant Weisz, knowing that Defendant Weisz lives and works in Lakewood, New Jersey, and has no business or authority to notarize a deed by Plaintiff Rabbi Braun who resides and lives in Brooklyn. Defendant Teitelbaum knew that Defendant Weisz is an employee of Defendant Dekel and should have not omitted due diligence prior to affecting the real property.

194.    As a direct result, Defendant Weisz is individually liable for damages sustained by the Plaintiff Rabbi Braun and Plaintiff 67 LLC.

195.    As a direct result, Defendant Dekel and Defendant Teitelbaum are jointly and severally liable for damages sustained by the Plaintiff Rabbi Braun and Plaintiff 67 LLC.

196.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.


**SEVENTH CLAIM FOR RELIEF**

Damages Against Title Agents for False Acknowledgement for the 69 Property

197.    Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 196, for relief against Defendant Dekel, Teitelbaum, and Defendant Weisz requesting money damages for each remedy available at law.

198.    N.Y. Real Prop. Law § 330 provides that "An officer authorized to take the acknowledgment or proof of a conveyance or other instrument, or to certify such proof or

acknowledgment, or to record the same, who is guilty of malfeasance or fraudulent practice in the execution of any duty prescribed by law in relation thereto, is liable in damages to the person injured."

199.    Defendant Weisz breached Real Property Law § 303 and committed malfeasance or engaged in fraudulent practice in creating an acknowledgement of forged signatures of Plaintiff Rabbi Braun conveying title of real property to the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC in the absence of Plaintiff Rabbi Braun.

200.    The malfeasance or engagement in fraudulent practice is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any acknowledgement from him.

201.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 69 Property without there being a corporate acknowledgment or resolution by a corporate officer member on behalf of the Plaintiff 69 LLC and Plaintiff 67 LLC.

202.    Defendant Dekel and Teitelbaum, holding themselves out to be a title insurance agent, committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 69 Property without doing any title search. For instance, as delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred to the Plaintiff 67 LLC 60% of the title to the 69 Property and retained 40% title to the 69 Property. It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the forgery transferred 100% of the title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC. Yet, the Plaintiff 67 LLC only held only 60% of the title, not 100%. This omission by Defendant Teitelbaum and Defendant Dekel illustrate the fact that no title search was done at all, and

Defendant Teitelbaum with Defendant Dekel presented a false image as if they did a title search prior to encumbering the property.

203.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering deed transfers of a forgery together with mortgages despite there being no closing in which Plaintiffs were present.

204.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that Plaintiff Rabbi Braun and the Plaintiff 67 LLC were still in possession as the owners of the 69 Property to such degree that Defendant Dekel and Defendant Teitelbaum knew or should have known that no conveyance was made by Plaintiff Rabbi Braun and the Plaintiff 67 LLC to Defendant Spitzer and the Defendant Sham LLC. The awareness arises from the fact that there was no closing on the 67 Property where Plaintiff Rabbi Braun and Plaintiff 67 LLC appeared.

205.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forgery deed together with a mortgage despite knowing that there was no contract of sale on the 69 Property.

206.    In particular, at all relevant times, Defendant Teitelbaum was acquainted with Defendant Weisz, knowing that Defendant Weisz lives and works in Lakewood, New Jersey, and has no business for notarizing a deed of Plaintiff Rabbi Braun who resides and lives in Brooklyn. Defendant Teitelbaum knew that Defendant Weisz is an employee of Defendant Dekel and should have not omitted due diligence prior to affecting the real property.

207.    As a direct result, Defendant Weisz is individually liable for damages sustained by the Plaintiffs.

208.     As a direct result, Defendant Dekel and Defendant Teitelbaum are jointly and severally liable for damages sustained by the Plaintiffs.

209.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## SEVENTH CLAIM FOR RELIEF

### Civil Conspiracy Against All Defendants

210.     Plaintiff incorporates herein all the allegations stated in paragraphs 1 to 209, for relief against all the Defendants requesting money damages and treble damages for each remedy available at law, including, as a tort for civil conspiracy to convert property—as well to commit fraud—and under the Civil Racketeer Influenced And Corrupt Organizations Act ("RICO"), as a violation of RICO section 18 U.S.C. §1962(c).

A.  *Civil Conspiracy to Convert Property—As Well to Commit Fraud*

211.     Plaintiffs have a superior right to the 67 Property and 69 Property.  Plaintiff Rabbi Braun owned title to each of these properties going back to the 1970s.  As delineated above, on February 2, 2014, the 69 Property was placed in the Plaintiff 69 LLC.  On June 15, 2016, the Plaintiff 69 LLC transferred 60% interest of the title of the 69 Property to the Plaintiff 67 LLC.  On August 4, 2014, the Plaintiff 67 LLC received clear title to the 67 Property.  At all relevant times, Plaintiff Rabbi Braun was the sole member of the Plaintiff 67 LLC and Plaintiff 69 LLC.  As such Plaintiff Rabbi Braun has a superior right to the 67 Property and 69 Property.

212.     In particular, the 67 Property and the 69 Property is the primary residence of Plaintiff Rabbi Braun and the primary residence of several of some family members of Plaintiff Rabbi Braun.  These family members bring joy and comfort to Plaintiff Rabbi Braun having them

close to his home. As such Plaintiff Rabbi Braun has a possessory right to the 67 Property and 69 Property.

213. At all relevant times, neither Defendant Spitzer nor the Defendant Sham LLC had any contract of sale nor any agreement with the Plaintiffs to transfer either the 67 Property or the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

214. On or about August 20, 2019, Defendant Spitzer exercised dominion over the Plaintiffs' properties by fabricating a deed for each, the 67 Property and the 69 Property, purporting that the Defendant Sham LLC received title to these properties in derogation of Plaintiffs right to enjoy title to the 67 Property and the 69 Property. These fabricated deeds for each, the 67 Property and the 69 Property, is an interference of Plaintiffs rights to title.

215. Each of these deeds claimed by the Defendant Sham LLC falsely purported that, (i) that Plaintiff Rabbi Braun and the Plaintiff 67 LLC "in consideration of ten dollars and other valuable consideration paid by [the Defendant Sham LLC] … grant[ed] and release[ed]" to the Defendant Sham LLC forever all "plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being" of the 67 Property and the 69 Property, (ii) the Plaintiff 67 LLC gives up "all right, title and interest" in any part attached to the 67 Property and the 69 Property, and (iii) each of these false deeds bore a forged signature of Plaintiff Rabbi Braun. Each of these representations were false. First, because at all relevant times, neither Plaintiff Rabbi Braun nor the Plaintiff 67 LLC had received any consideration, let alone the purported ten dollars, to commensurate the transfer of the 67 Property and 69 Property to the Defendant Sham LLC. Second, Plaintiff Rabbi Braun did not sign either of these purported deeds manufactured by the Defendants. Third, each of the signatures on these purported deeds, falsely purporting to be that of Plaintiff Rabbi Braun, were notarized by Defendant Weisz but at no time

did Plaintiff Rabbi Braun appear before Defendant Weisz; neither did Plaintiff Rabbi Braun ask Defendant Weisz to notarize these signatures falsely purporting to be signatures of Plaintiff Rabbi Braun.

216.    Conversion of property is a tort in the State of New York. See *Westbury Recycling, Inc. v Westbury Transfer & Recycling*, *LLC*, 209 AD3d 929, 932 [2d Dept 2022].

217.    Defendant Spitzer intentionally used the Defendant Sham LLC to take title to the 67 Property and the 69 Property without authority from Plaintiff Rabbi Braun.  This was an act of conversion.

218.    In the period of September 23, 2019, Plaintiffs were unaware of the title of transfers created by Defendants.  In particular, it was in that period of September 23, 2019, that unknown perpetrator broke into the mailbox of Plaintiffs.  Thus, if the City Register had mailed any letter to Plaintiffs exhibiting a transfer of title, Plaintiffs never received such notice timely, presumably because such mail was stolen.

219.    A few months later in November 2019, Plaintiff Rabbi Braun learned about the fraudulent deed transfers. Over a period from November 2019 through November 2020, Plaintiff Rabbi Braun made multiple demands of Defendant Spitzer, by phone calls, demanding the return of title to the 67 Property and 69 Property and for the extinguishing of the mortgages by Defendant PS Funding on these properties.  Each time Defendant Spitzer profusely apologized to Plaintiff Rabbi Braun for the conversion, promising the return of title, insisting that he needed the approval of his superior Defendant Weinfeld.

220.    Over a period from November 2019 through November 2020, Plaintiff Rabbi Braun met four times with Defendant Spitzer in person, demanding the return of title to the 67 Property and 69 Property and the extinguishing of the mortgages by Defendant PS Funding on

these properties. Each time Defendant Spitzer profusely apologized to Plaintiff Rabbi Braun for the conversion promising the return of title, claiming that he needed the approval of his superior Defendant Weinfeld.

221. In response to Defendant Spitzer's assertion that he needs the approval of Defendant Weinfeld, over a period from November 2019 through November 2020, Plaintiff Rabbi Braun went to Defendant Weinfeld's office at Defendant Rosa Funding, at the address listed supra in paragraph 11, and explained to Defendant Weinfeld that he is a victim of a forgery, asking that the mortgages on the 67 Property and the 69 Property be extinguished and title to these properties returned to him. At the first meeting, Defendant Weinfeld imparted the impression as if he is serious about rectifying his concerns and promised Plaintiff Rabbi Braun that he would have Defendant Spitzer immediately return clean title to Plaintiffs. After a few weeks passed, as nothing progressed, Plaintiff Rabbi Braun went for a second meeting, Defendant Weinfeld promised to Plaintiff Rabbi Braun that he is working with Defendant Spitzer to first pay off one mortgage of the two properties so he can return title to Plaintiffs, and Defendant Weinfeld promised that afterwards he would work on returning the second property to Plaintiffs. After a few weeks passed, as nothing had progressed, Plaintiff Rabbi Braun went for a third meeting, Defendant Weinfeld informed Plaintiff Rabbi Braun that Defendant Spitzer owes money to Defendant Weinfeld and Defendant Bleier that takes precedence, and after Defendant Spitzer will satisfy the debts owed to Defendant Weinfeld and Defendant Bleier, he would work with Defendant Spitzer to return the 67 Property and 69 Property to Plaintiffs. It was at the third meeting, Defendant Weinfeld mocked Plaintiff Rabbi Braun, telling him that he would need to buy back title to the 67 Property and 69 Property because Defendant Spitzer owes money to Defendant Weinfeld and Defendant Bleier.

222.    The Defendants conspired by agreement to collaborate with Defendant Spitzer to commit an unlawful act or commit a series of lawful acts by unlawful means. The following supports this allegation: both fraudulent deeds granting title to the Defendant Sham LLC are dated August 20, 2019. Neither of these deeds were filed with the City Register prior to September 23, 2019. Registering a forged deeds with the City Registering in itself is an unlawful act.

223.    The element of agreement to commit a lawful act by unlawful means are as follows:

    a.    Defendant Dekel agreed and used its access to the City Register, as a title insurance agent, to register the forged deeds with the City Register.

    b.    Defendant Teitelbaum agreed and used his license as a title insurance agent to provide title insurance on the forgery of Plaintiff Rabbi Braun's signature falsely transferring the deeds of the 67 Property and 69 Property to the Defendant Sham LLC.

    c.    Defendant Weisz agreed and used its notary stamp to notarize the forgeries of Plaintiff Rabbi Braun's signatures of title to the 67 Property and the 69 Property.

    d.    Defendant Rosa Funding agreed and created a mortgage on each forgery of title on the 67 Property and the 69 Property.

    e.    Defendant PS Funding agreed and funded the mortgages created by Defendant Rosa Funding encumbering the forgery of title on the 67 Property and the 69 Property.

    f.    Defendant Bleier agreed and secured the mortgages created by Defendant Rosa Funding encumbering the forgery of title on the 67 Property and the 69 Property. The security provided by Defendant Bleier was to satisfy an element common in the table funding business that the person who originates a mortgage must secure the mortgage for the first three months of its life, in the event the mortgage is recalled for whatever reason.

    g.    Defendant Weinfeld as an agent for PS Funding agreed and facilitated all the paperwork to originate mortgages from Defendant Rosa Funding and Defendant PS Funding on the forgery of title on the 67 Property and the 69 Property.

h. Defendant BSD Realty agreed to accept all funds for each mortgage created by Defendant Rosa Funding encumbering the forgery of title on the 67 Property and the 69 Property, and to redistribute the funds to various different shell companies.

224. The element of conspiring intentionally to support an unlawful act of conversion are as follows:

a. At all relevant times, Defendant Weinfeld was an agent for Defendant PS Funding. Defendant Weinfeld also acted as a superior to Defendant Spitzer, guiding Defendant Spitzer on how to master the art of conversion. As delineated above in paragraph 220, Defendant Spitzer would repeatedly refer to Defendant Weinfeld as his superior and that he needed to consult with Defendant Weinfeld about returning title to Plaintiffs on the 67 Property and the 69 Property. As delineated above in paragraph 221, Plaintiff Rabbi Braun met with Defendant Weinfeld, and at these meetings Defendant Weinfeld acknowledged having superiority over Defendant Spitzer.

b. At the time the mortgage was created by Defendant Rosa Funding and table funded by Defendant PS Funding, there was no record in the City Register transferring title from Plaintiff to the Defendant Sham LLC for the 67 Property and the 69 Property. The only reliance the Defendants had for creating the mortgages on the 67 Property and the 69 Property were the unrecorded deeds that Defendant Spitzer presented and notarized by Defendant Weisz. It was not until after the mortgage were funded that the forged deeds were recorded simultaneously with the mortgages, as delineated above in paragraphs 57 and 83. As such, each of the Defendants knew or should have known, that at the best, Defendant Spitzer had presented an unrecorded deed. This should have caused each Defendant to exercise due diligence and inquire into the circumstances how it was that Defendant Spitzer claimed title to Plaintiffs properties for ten dollars without verifying with Plaintiffs that such transfers are genuine, prior to manufacturing mortgages of $1.2 million each.

c. At all relevant times, Defendant Weisz was an employee of Defendant Dekel and was being supervised by Teitelbaum. The fact Defendant Dekel operates as a title insurance agent under the professional license of Defendant Teitelbaum also supports element of supervision on Weisz.

d. At the time Defendant Weisz notarized the forgeries of Plaintiff Rabbi Braun's signature, Defendant Weisz was present at the office of Defendant Dekel and the notarization of the forgeries were ordained by Defendant Teitelbaum. In particular, Defendant Teitelbaum knew or should have

known that Plaintiff Rabbi Braun never visited the office of Defendant Dekel.

e.    At the time that Defendant Bleier undertook to secure the mortgages originated on Plaintiffs properties, Defendant Bleier knew or should have known that Plaintiff never conveyed title to the Sham Defendants. Defendant Bleier agreed to secure mortgages by Defendant Sham LLC in exchange of ten dollars without inquiring as to what circumstances lead Plaintiffs to give away valuable property to Defendant Spitzer and Defendant Sham LLC for a purported exchange of ten dollars. If the recording of ten dollars was to evade city or state taxes, that in itself was an unlawful act. If the recording of ten dollars was merely nominal under the presumption that an actual sale had occurred for a more substantive amount, then Defendant Bleier should have known that no such sale occurred, as there was no proof that Plaintiffs sold their rights to the Sham LLC. Regardless, Defendant Bleier knew that no closing occurred where either of Plaintiffs were present.

f.    At the time that Defendant PS Funding undertook to fund the mortgages originated on Plaintiffs properties, Defendant PS Funding knew or should have known that Plaintiff never conveyed title to the Sham Defendants. Defendant PS Funding agreed to fund mortgages by Defendant Sham LLC in exchange of ten dollars without inquiring as to what circumstances lead Plaintiffs to give away valuable property to Defendant Spitzer and Defendant Sham LLC for a purported exchange of ten dollars. If the recording of ten dollars was to evade city or state taxes, that in itself was an unlawful act. If the recording of ten dollars was merely nominal under the presumption that an actual sale had occurred for a more substantive amount, then PS Funding should have known that no such sale occurred, as there was no proof that Plaintiffs sold their rights to the Sham LLC. Regardless, Defendant PS Funding knew that no closing occurred where either of Plaintiffs were present.

g.    At all relevant times, each of the Defendants knew or should have known that Defendant Spitzer had no relationship with Plaintiff Rabbi Braun. As such, there was no considerable reason as to why Plaintiff Rabbi Braun would transfer the residence of his family and himself for no consideration, and indeed Plaintiff Rabbi Braun did not transfer the 67 Property and 69 Property to the Defendant Sham LLC.

225.    The RICO statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

226.    Plaintiffs are a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

227.    Defendants are each a "person" as defined in 18 U.S.C. §1961 (3) and 1962(c).

228.    The Association In Fact Enterprise (hereinafter, the "AIF Enterprise") consists of the factual mission by the Defendants, to unjustly enrich themselves at the expense of its victims, by taking real property that is owned exclusively by the victim and milking it through various schemes and fraudulent mortgages.

229.    The AIF Enterprise functions with a sophisticated scheme that conceals the dual appearance, to conceal the appearance of doing a series of lawful acts by unlawful means. Each Defendant uses the front end of a legitimate business or presenting themselves as bona fide businessperson operating a genuine business, to conceal the unlawful acts of the AIF Enterprise. In its front appearance, each Defendant present themselves at a distance from the wrongs they commit by pretending to be independent businesspersons independent from each other.  Yet, in its backend concealment, the AIF Enterprise members are enriched through acts of racketeering.

230.    Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Teitelbaum, and Defendant Weisz were each individually knowingly employed by or associated with the AIF Enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through committing unlawful acts that unravel a pattern of racketeering activity.  The AIF Enterprise also consists of Defendants, that are legal entities Defendant Rosa Funding, Defendant PS Funding, Defendant Dekel, Defendant BSD, and the Sham Entity (1567 56 NY LLC).  Each

entity is a defendant which is distinct from the AIF Enterprise as a whole, the natural persons are distinct from the entities of the AIF Enterprise, and distinct from corporations they control, legal entities with different rights and responsibilities due to their different legal status.[1]

231.     As delineated further below in greater detail, the hierarchy of the AIF Enterprise began sometime in 2018 or 2019 when Defendant PS Funding Inc., a hedge fund operating as a nonbank lending company, lost money and investors started to distance from Defendant PS Funding. That is because at the time, nonbank lending companies were struggling to attract customers at high interest rates, since the traditional banks were offering mortgages at 2-4%.  In order to boost investor confidence, Defendant PS Funding entered into a confidential agreement with Defendant Weinfeld and Defendant Bleier, using the name Defendant Rosa Funding and 703 Funding A LLC ("703 Funding"), to rack up the portfolio of Defendant PS Funding with mortgages that will accumulate interest at 16% or more. The scheme was to claim title to multiple real estate properties regardless of whether the AIF Enterprise had genuine title. Under the confidential agreement Defendant PS Funding was to advance money for the AIF Enterprise.  Defendant Weinfeld and Defendant Bleier will bring forth property with equity regardless of whether Defendants have genuine title.   Defendant PS Funding would then be able to show its investors the opportunity of a handsome return.   Defendant PS Funding would materialize its return upon the foreclosure of each mortgage.

232.     The following is a list of mortgages that Defendant Spitzer received from PS Funding, every other mortgage was funded by Defendant PS Funding through Defendant

---

[1] *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (finding an individual defendant is distinct from a corporation (enterprise) wholly owned and operated by the individual).

Weinfeld and secured by Defendant Bleier. Most of these mortgages were processed by Defendant Dekel, while Universal Abstract, LLC processed the other mortgages. The following mortgages:

a. 64 S 13th St Newark, NJ 07107 under loan number #6000143666 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

b. 57 Cedar Avenue, Newark, NJ 07106 under loan number #1365600346 and under the legal entity 10 PCKG LLC, a New Jersey limited liability company;

c. 64 Chelsea Ave, Newark, NJ 07106 under loan number #8460451873 under the legal entity of 54 CHELSEA LLC, a New Jersey limited liability company;

d. 23-25 Chelsea Ave, Newark, NJ 07106 under loan number #9106305466 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

e. 1567 56th St, Brooklyn NY 11210 under loan number #4406560713 under the legal entity of 1567 56 NY LLC, a New York limited liability company;

f. 1567 50th St Brooklyn NY 11210 under loan number #4614665033 under the legal entity of 1567 56 NY LLC, a New York limited liability company;

g. 1412 College Avenue, Bronx, NY 10456 under loan number #0671400235 under the legal entity of 1412 COLL AVE LLC, a New York limited liability company;

h. 136 Nobility Court, Toms River, NJ 06756 under loan number #3025187436 under the legal entity of 136 NOBILITY LLC, a New Jersey limited liability company;

i. 131 Division Avenue, Apt 6A, Brooklyn, NY 11211 under loan number #2335463616 under the legal entity of 131 Division LLC, a New York limited liability company;

j. 624 15th Avenue, Newark, NJ 07103 under loan number #3655133406 under the legal entity of 624 15 LLC a New Jersey limited liability company;

k. « N Maple Ave, East Orange, NJ 07017 under loan number #6461510300 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

l. 808 South 14th St, Newark, NJ 07108 under loan number #0616963054 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

m.   440 S 10th St Newark, NJ 07103 under loan number #7681411435 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company;

n.   38 Headley Ter, Irvington, NJ 07111 under loan number #5037416600 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

o.   118 Bread St, Newark, NJ 07104 under loan number #103545463117 under the legal entity of 116 BROAD LLC, a New Jersey limited liability company;

p.   106 Sunset Ave 8,466-467 Ferry St Newark, NJ 07106 under loan number #4066571013 under the legal entity of SUNSET 106 LLC, a New Jersey limited liability company; 465 FERRY LLC, a New Jersey limited liability company;

q.   80-82 Millington Avenue, Newark, NJ 07108 under loan number #7691410435 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company;

r.   370-383 S 20th St Newark, NJ 07103 under loan number #8405463117 under the legal entity of ISM Holdings LLC, a New Jersey limited liability company;

s.   240 Amherst St, East Orange, NJ 07018 under loan number #7618263054 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

t.   225-227 Hawthorne Ave, Newark, NJ 07112 under loan number #9116973454 under the legal entity of ISM Holdings LLC, a New Jersey limited liability company;

u.   223 12th Avenue, Newark, NJ 07107 under loan number #4467501213 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company;

v.   201 South 11th St Newark, NJ 07107 under loan number #6471051443 under the legal entity of ISM HOLDINGS LLC a New Jersey limited liability company;

w.   20 Girard Ave, East Orange NJ 07017 under loan number #6370045941 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company;

x.   153-155 S 7th St Newark, NJ 07103 under loan number #1461510374 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company;

y.   134 N 15th St East Orange, NJ 07017 under loan number #4960506213 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company; and

z.   115 Chadwick Ave, Newark, NJ 07108 under loan number #6047143651 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company.

233.   Defendant Weinfeld and Defendant Bleier together with Defendant Spitzer, using the name Defendant Rosa Funding and 703 Funding as field agents of Defendant PS Funding were the instrumentals of the AIF Enterprise.  In that, Defendant Weinfeld would function as the formal agent of Defendant PS Funding, Defendant Bleier would secure each mortgage that were originated by Weinfeld for its first three months, and Defendant Spitzer functioned as the salesperson and/or field agent for Defendant Weinfeld.  In that sense, Defendant Weinfeld was answerable to both Defendant PS Funding and Defendant Bleier, and Defendant Spitzer was answerable to both Defendant Weinfeld and Defendant Bleier.

234.   In order to create the false appearance that the conduct of Defendant Weinfeld and Defendant Bleier are independent from Defendant PS Funding, Defendant Weinfeld and Defendant Bleier would use entities like Defendant Rosa Funding and 703 Funding A to originate each mortgage.  Defendant Rosa Funding would use its equipment to receive and transmit the forgery deeds to PS Funding and Dekel.

235.   Defendant Spitzer was the field agent for Defendant Weinfeld and Defendant Bleier to target a property and forge title.  Each property targeted by Defendant Spitzer was at the direction of Defendant Weinfeld and Defendant Bleier.

236.   Defendant Weinfeld and Defendant Bleier would divert much of the capital of each mortgage to themselves through various schemes and shell corporations, including Defendant BSD, and other corporations.

237. In order to polish the AIF Enterprise as bona fide businesspeople, Defendant Teitelbaum was a title insurance agent used to create false insurance for each deed forgery and mortgage, Dekel would use its equipment to register and distribute the fraudulent title, and Defendant Weisz whenever were necessary would notarize the forgery of the victim's signature.

238. As delineated further below in greater detail, the Defendants as members of the AIF Enterprise functioned together as a continuing unit, with a common purpose (*i.e.*, to devise schemes to defraud Plaintiffs and other victims of real property and illegally further the monetary interests of Defendants all to the financial detriment of Plaintiffs and other victims).

239. As delineated further below in greater detail, each Defendant member of the AIF Enterprise was involved in the operation and management of the AIF Enterprise, whose members function with a common purpose and with confidential relationships to each other. Thus, the activities of the AIF Enterprise members are separate and apart from the racketeering activity consisting of mail and wire fraud, robbery, and extortion predicate crimes.

240. As delineated further below in greater detail, the AIF Enterprise has longevity sufficient to permit other AIF Enterprise members to pursue the Enterprise's purposes. Each of the RICO Defendants' participation in the AIF Enterprise was necessary for the successful operation of the fraudulent scheme.

241. The activities of the AIF Enterprise affected interstate commerce and engaged in interstate banking transactions by wire that crossed state lines in connection with the sale/transfer of properties, all in furtherance of the racketeering scheme as alleged in this Second Amended Complaint.

*Roles of Corporations Utilized to Advance the AIF Enterprise and Relationships*

242. In 2010, Congress enacted the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), in response to predatory lending by banks, which had led to a major economic crash in 2008 and many ordinary people were losing their homes.

243. Amongst the chief evils that Dodd-Frank sought to end were subprime mortgages. "In general, subprime mortgages are loans that have more costly terms and conditions than "prime" mortgages (e.g., they may have higher interest rates, additional fees, prepayment penalties, or other features). Many subprime loans were made to borrowers who, due to weakened credit histories, pose higher credit risks. These borrowers may have lower credit scores than prime borrowers or higher debt to income ratios on their properties." *Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 146–47 (2d Cir. 2022).

244. Large nonbank lending companies making real estate loans have emerged in disregard to Dodd-Frank, as the new way to get higher interest rates, a serious risk to the U.S. economy. Nonbank lending companies are imprudent and pose major problems for the broader financial system. They involve hard money lenders and cash advance schemes, all with the same purpose, the return of principal with at least 16% interest.

245. These nonbank lending companies are not licensed like banks.

246. The mortgages issued by nonbank lending companies are too often brokered by individuals who are not licensed mortgage brokers.

247. Both the nonbank lending companies and the person brokering the mortgages are also referred as "originator" (or "originators" in plural).

248. These nonbank lending companies could cause the next financial crisis. They are significantly evasive of regulatory oversight compared to banks. And they are raising

red flags to regulators, central bankers, and law enforcement, who view the industry as helping fuel a global credit bubble leaving ordinary people increasingly vulnerable, since they elude the regulatory process.

1. Defendant PS Funding, Inc.

249.    Enter: Defendant PS Funding, Inc. ("Defendant PS Funding") a subsidy of Peer Street Inc. also operating as Peer Street Funding, LLC ("PeerStreet").

250.    PeerStreet was created in the aftermath of the economic crash of 2008.

251.    The stated purpose of PeerStreet is to level the "playing field between Wall Street and Main Street." Meaning, PeerStreet levels Main Street by eluding the parameters of Dodd–Frank regulating Wall Street and other regulations enacted to prevent mortgage fraud.

252.    In order to level the playing field, Defendant PS Funding requires transferring the property to an LLC, meaning that a borrower cannot use its own name for a mortgage even for a residential home. An LLC can easily be assigned without registering so with the State, the ownership of the LLC can be concealed from the public eye, and people signing on behalf of an LLC are seldom asked to show the authorization to do so. In particular, a lender can charge interest rates from an LLC above and beyond the ordinary usury caps that the law imposes. For instance, if the State has a usury cap of 16% to an individual[2], an LLC might be able to charge interest up to 50% interest.

253.    Defendant PS Funding serves as a large nonbank lending company.

254.    PeerStreet has a marketplace of mortgages originated by nonbank companies.

_____

[2] The cap interest rate permissible under State law, is 16% in many states, such as New York and New Jersey.

255.     The frontend face of PeerStreet is a portal where nonbank lending companies meet with private investors to front mortgages under table funding.  PeerStreet's business model is finding ordinary Americans to crowdfund real estate loans under the promise of high returns.  PeerStreet then takes a percentage of those loans.  That aspect of PeerStreet is registered with the SEC and is funded by accredited investors.  PeerStreet on its front end also provides a marketplace for investors to invest in fix-and-flip real estate loans.

256.     The backend face of PeerStreet is Defendant PS Funding, a subsidiary of PeerStreet.  Defendant PS Funding is a hedge fund promising its investors a hefty return on mortgages.  Defendant PS Funding has ordinary people as its investors with the minimum investment being as little as $500,000.  PeerStreet uses Defendant PS Funding as its way to fund mortgages under table funding.

257.     Table funding involves a loan that is created by an originator but is actually funded by the contemporaneous advance of loan funds by the lender.  At the same time, all the funder's rights and interests in the loan are then contemporaneously assigned to the lender.

258.     From its start until sometime in 2018, Defendant PS Funding represented itself to investors to be too good to be true, a real estate environment where its investors never lost money.

259.     Starting 2019, marked the first time that Defendant PS Funding investors lost money, since the interest rates of the prime market undercut the ability to generate mortgages in the marketplace at a lucrative interest rate.  Defendant PS Funding and its investors were experiencing even more losses.  Stopping this hemorrhaging was critical to Defendant PS Funding. It has already lost investors for this reason.

260.     As a direct result, Defendant PS Funding became desperate to expand its portfolio to mislead its investors into the image that investments are secured and profitable with a high yield of return.

261.     As a direct result, starting in 2019, Defendant PS Funding looked at creating mortgages with a high yield of interests.   These assets looked beefy at a first glance, notwithstanding being fraudulent.   The high interest was to improve the appearance of Defendant PS Funding's portfolio in the eyes of its investors.

262.     The scheme for Defendant PS Funding was as follows:

a.     In 2019, ordinary nonbank lending mortgages were going at about 6-10%, because traditional mortgages were available at about 2%-4%.

b.     A 6-10% return was not handsome enough for investors, Defendant PS Funding needed to show investors that the yield of return is high.

c.     In the hard money lending business, a default rate interest is where the lender increases the interest in nonpayment.

d.     Defendant PS Funding was looking for loans that are destined to trigger the default rate of 15-16% interest. Meaning, although the interest rates were at 9%, there was the opportunity in the event of default to generate at least 15-16% interest.

e.     In other words, the 6-10% rate together with 15-16% default rate, Defendant PS Funding was looking to have a slew of mortgages that yield the return of 25% interest.

f.     The minimum default rate of 15%-16% was necessary in order for Defendant PS Funding to show investors that it is able to generate mortgages with higher interest rates than the average hard money lender in the market.

g.     Given that in 2019 the nonbank lending market for mortgages was trending at 6-10% interest, Defendant PS Funding needed to create an artificial opportunity to generate a return of 15%-16%, this desperation gave birth to the AIF Enterprise.

h.     In order to create an artificial opportunity to generate a return of 15%-16%, Defendant PS Funding was looking to create mortgages that although its premium started at 9-10% interest but was destined to default and trigger the interest rate of 15%-16%.  In other words, that the borrower

had no intention of paying the mortgage, so the default rate would be the prevailing rate.

    i.    As delineated further below in greater detail, each mortgage funded by Defendant PS Funding to the AIF Enterprise had a duration of about one year and was also backed by a personal guarantee of Defendant Spitzer.

    j.    In particular, in 2019 alone, Defendant PS Funding funded at least ten (10) mortgages to the AIF Enterprise and each maturity date was about one (1) year from the date of the note. This served three expectations: (1) Defendant PS Funding knew that Defendant Spitzer would not be able to repay each mortgage by the maturity date, (2) Defendant PS Funding knew that the default rate was expected to be applied, and (3) Defendant PS Funding expected to begin foreclosure proceedings on each of the properties involving the AIF Enterprise within one year.

263.    At all relevant times, Defendant PS Funding acted as the financier of the mortgages that affected Plaintiffs.

264.    The mortgage by Defendant PS Funding on the 67 property is for a duration of one (1) year with interest rate of 9.5% and a default rate of 16%.

265.    The mortgage by Defendant PS Funding on the 69 property is for a duration of one (1) year with interest rate of 9.5% and a default rate of 16%.

266.    By referee report solicited by Defendant PS Funding, Defendant PS Funding is looking to collect $1,200,000 on the 67 Property together with interest from June 1, 2020, through March 31, 2022 at the rate of 9.500% per annum in the total amount of $209,000.00 and interest from July 1, 2020 through March 31, 2022 at the rate of 16.00% per annum $136,500.00. Totaling together with other fees at $1,599,223.38. *Defendant PS Funding, Inc. v. 1567 56 NY LLC et al*, 503623/2021 at #32 (Kings County).

267.    By referee report solicited by Defendant PS Funding, Defendant PS Funding was looking to collect $1,200,000 on the 69 Property together with interest from June 1, 2020, through March 31, 2022 at the rate of 9.500% per annum in the total amount of $251,433.33 and interest from July 1, 2020 through March 31, 2022 at the rate of 16.00% per annum

$165,533.34.  Totaling together with other fees at $1,635,321.20.  *Defendant PS Funding, Inc. v. 1567 56 NY LLC et al*, 503948/2021 at #38 (Kings County).

268.    As delineated above, at all relevant times, Defendant PS Funding knew that Plaintiffs have a superior right to the 67 Property and 69 Property.  In order to perfect the conversion under the color of legal means, Defendant PS Funding brought the 67 Foreclosure and 69 Foreclosure all the way to obtaining a referee report without Plaintiffs having any notice that its properties are subject to foreclosure.

### 2.    Defendant Rosa Funding LLC

269.    Defendant Rosa Funding is a nonbank lending company that originates mortgages, located in Lakewood, NJ owned by Defendant Belier and Defendant Weinfeld.

270.    Defendant Rosa Funding also operates under different names, such as 703 Funding, DB Holdings LLC ("DB Holdings"), and YGBY.

271.    The frontend purpose of Defendant Rosa Funding is to originate mortgages either as funded by its own or funded by table funding from a contemporaneous lender.

272.    In an ordinary mortgage originated by an average originator and table funded by Defendant PS Funding, the originator earns about $7,936 on a $396,800.00 mortgage. That is about 2% of the principal.

273.    At all relevant times, Defendant Rosa Funding acted as the originator of the mortgages that affected Plaintiffs.

274.    In each of the mortgages affecting Plaintiffs properties that were funded by Defendant PS Funding, Defendant Rosa Funding collected $30,000 on each $1,200,000 mortgage. That is about 2.5% of the principal.  This commission was for the front-end activities of Defendant Rosa Funding in originating the mortgages on Plaintiffs' properties.

275.     The backend purpose of Defendant Rosa Funding serves as the vehicle to use the frontend to convert equity from properties that at a glance seems like a genuine mortgage, but in reality, encumbers property through a racketeering gamesmanship. Such as in this case involving forgery, fraud and deceit, Defendant Rosa Funding took a lion stake share of the equity in each property either as a direct disbursement from each mortgage or through various shell corporations laundering the equity of the mortgages into different pockets of Defendant Weinfeld and Defendant Bleier.

276.     In particular as related to Plaintiffs, besides the 2.5% commission which combined on the 67 and 69 properties are $60,000, Defendant Rosa Funding collected the lion size stake of $253,000 for the mortgage on the 67 Property and an additional $60,000 for the mortgage on the 69 Property. The reason for these extra commissions is the partnership that Defendant Rosa Funding has in the AIF Enterprise.

277.     As delineated above, Defendant Rosa Funding originated a mortgage for each, the 67 Property and the 69 Property, despite knowing that Defendant Spitzer is not a bona fide recipient of title to Plaintiffs real property.  This knowledge, in part, is imputed by the fact that there was no contract of sale between the Plaintiffs and Defendant Spitzer or the Sham LLC. It is for this reason that, Defendant Rosa Funding was willing to originate a mortgage on the forged deeds of Plaintiffs that Defendant Rosa Funding received the additional $253,000 and $60,000.

3.   Defendant Dekel Abstract LLC,

278.     At all relevant times, Defendant Teitelbaum owns Defendant Dekel Abstracts, LLC.

279.     Defendant Dekel fronts as a title search company.

280. At all relevant times, as in particular as it relates to Plaintiffs, Defendant Dekel was the entity that registered the fraudulent deeds on the 67 and 69 Property.

281. At all relevant times, as in particular as it relates to Plaintiffs, Defendant Dekel was the entity that registered the mortgages at issue.

282. At all relevant times, as in particular as it relates to Plaintiffs, Defendant Dekel was the entity that recorded the forged deeds of the 67 Property and the 69 Property.

283. The key role by Defendant Dekel, is serving the AIP Enterprise with camouflaging activity to the public as if the mortgages and deeds procured by the AIF Enterprise are valid. In return, Defendant Spitzer provided promissory notes on other properties as a reward for the frauds perpetrated. The following facts support these allegations:

    a. In or about January 28, 2019, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $185,000, and dated December 24, 2018, and recorded on March 7, 2019 against the property addressed at 277 Washington Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel. The maturity date of the note was May 28, 2019, and was discharged on October 6, 2020.

    b. On or about August 20, 2019, Defendant Weisz, an employee of Defendant Dekel, notarized the forged signatures of Plaintiff Rabbi Braun transferring title to the Defendant Sham LLC.

    c. On or about August 27, 2019, Defendant Dekel received the $1,191,611.65 from Defendant PS Funding representing the mortgage for the forgery on the 67 Property.

    d. On or about August 27, 2019, Defendant Dekel received the $1,191,611.65 from Defendant PS Funding representing the mortgage for the forgery on the 69 Property.

    e. On or about September 23, 2019, Defendant Dekel registered the forged deeds on the 67 Property and 69 Property together with its mortgages.

    f. As such, at all relevant times, Defendant Dekel knew that Defendant Spitzer is the purported personal guarantee of the mortgages for the forgeries of title on the 67 Property and 69 Property.

g.  Parallel, on or about October 4, 2019, Defendant Dekel registered a deed for 54 Chelsea, for a property located on 52-54 Chelsea Avenue, Newark, NJ. The same day, Defendant Dekel also processed for the same property a mortgage for $280,000.00 originated by 703 Funding, a subsidiary of Defendant Rosa Funding. On the same day, Defendant Dekel also processed an assignment of that mortgage to Defendant PS Funding. on January 14, 2020, Defendant PS Funding assigned the mortgage to a concealed entity as U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Fidelity & Guaranty Life Mortgage Trust 2018-1.

h.  On August 3, 2020, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Fidelity & Guaranty Life Mortgage Trust 2018-1 sued 54 Chelsea and Defendant Spitzer for default on the mortgage registered by Defendant Dekel.

i.  Despite Dekel having the full requisite knowledge that Defendant Spitzer is in default on 54 Chelsea, on or about December 2020, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 287-297 Brunswick Avenue a/k/a 381 Oak Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

j.  In or about December 2020, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020, and recorded on January 11, 2021, against the property addressed at 220-224 Washington Street, Perth Amboy, New Jersey.  This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

k.  In or about December 2020, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 4, 2021 against the property addressed at 194-196 Johnson Ave, Newark, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

l.  Each of these mortgages advanced by Art Holdings LLC were rewards that Defendant Dekel received for their role in the AIF Enterprise. Indeed, as delineated further below, approximately two weeks after Art Holdings LLC received the three promissory notes of $500,000, DB Holdings LLC

(another corporation owned by Defendant Bleier) received a subordinate promissory note on the same property 220-224 Washington Street for $600,000.

m.   An ordinary lender does not advance money to a party subject to a lawsuit for the collection of a delinquent debt.  It follows that neither Art Holdings nor DB Holdings conveyed any money as a subordinate mortgage when the borrower is already a debtor to a lawsuit. Rather each of these mortgages advanced by Art Holdings LLC were rewards that Defendant Dekel received for its role in the AIF Enterprise. Art Holdings nor DB Holdings would be able to collect on their mortgages when such property is sold.

n.   Indeed, although the legal entity 224 Washington Street, LLC that is the registered owner of the property addressed at 220-224 Washington Street, Perth Amboy, New Jersey, belongs to Mendel Deutsch and Defendant Spitzer is not a member or authorized agent of 224 Washington Street, LLC, Defendant Dekel registered the mortgage on behalf of Art Holdings as a reward for recording the forged deeds to Plaintiffs properties.

4.   Defendant BSD Realty Holdings Inc.,

284.   At all relevant times, Defendant Spitzer held a substantial interest in Defendant BSD Realty Holdings Inc.

285.   Defendant BSD served as the vehicle to redistribute all the equity received from Defendant PS Funding.

286.   On August 28, 2019, Defendant BSD received $850,250.00 from the equity received from Defendant PS Funding on the mortgage of the 67 Property.

287.   On August 28, 2019, Defendant BSD received $20,391.11 from the equity received from Defendant PS Funding on the mortgage of the 67 Property.

288.   On August 28, 2019, Defendant BSD received $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

289.   On August 28, 2019, Defendant BSD received an additional $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

290.     On August 28, 2019, Defendant BSD received an additional $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

291.     On August 28, 2019, Defendant BSD received an additional $8,193.11 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

292.     On September 4, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for the purchase of 52-54 Chelsea Avenue, Newark New Jersey, in the amount of $305,000.

293.     On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 134 N. 15th Street, East Orange New Jersey, in the amount of $290,000.

294.     On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 240 Amherst Street, East Orange New Jersey, in the amount of $259,000.

295.     On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 38 Headley Street, Irvington New Jersey, in the amount of $340,000.

296.     On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 23-25 Chelsea Avenue, Newark New Jersey, in the amount of $290,000.

297.     On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 20 Girard Avenue, Newark, New Jersey, for $259,000.

298.    On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 62 South 13th Street, East Orange New Jersey, for $249,000.

299.    On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 96 North Maple Avenue, East Orange New Jersey, in the amount of $259,000.

300.    On September 11, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 808 South 14th Street, Newark New Jersey, in the amount of $290,000.

301.    On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 57 Cedar Avenue, Newark New Jersey, in the amount of $315,000.

302.    On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 64 South 13th Street, Newark New Jersey, in the amount of $249,000.

303.    Each of these eleven (11) aforementioned properties, listed in paragraphs 292 through 302, were also encumbered by a promissory note to 703 Funding or Defendant Rosa Funding at approximately 75% of the purchase price. Defendant Spitzer signed each of these promissory notes, and then the note was assigned to Defendant PS Funding.

304.    As delineated further below, on October 10, 2019, Defendant BSD satisfied a mortgage of $450,000.00, on the property 1303 Hickory Street, Toms River, NJ, which was, at least in part gifted, to Defendant Weisz in the value of $640,000.00 as compensation for notarizing the forgeries.

5.    Defendant Spitzer

305.    Defendant Spitzer is a natural person.

306.    On November 7, 2016, Defendant Spitzer filed for bankruptcy in the Eastern District of New York. In *Re Defendant Spitzer*, 1-16-45038-ess.  In the petition for bankruptcy, Defendant Spitzer declared that the entirety of his assets is below $50,000. The proceeding was terminated on April 13, 2017.

307.    Miraculously, starting from 2018 and going 2020, Defendant Spitzer began claiming title to a host of properties without having advanced any of his own money to purchase those properties.

308.    Defendant Spitzer served the AIF Enterprise as the front man for all acts of racketeering.  In this capacity, Defendant Spitzer served as a hunter for equity in properties that have no encumbrances similar to Plaintiffs.  Defendant Spitzer would then convert title and turn to Defendant Weinfeld for borrowing against the equity.

309.    Defendant Spitzer also served the AIF Enterprise as the front man to purchase property with the funds advanced by Defendant PS Funding against the equity of property that Defendant Spitzer forged title. The following are some of the titles to which Defendant Spitzer claimed title through forgery:

    a.    Defendant Spitzer through the Defendant Sham LLC had claimed title to the 67 Property.  The forgery occurred on or about August 20, 2019. Defendant Spitzer had forged Plaintiff Rabbi Braun's signature without consent.  Defendant Weisz notarized the forgery.

    b.    Defendant Spitzer through the Defendant Sham LLC had claimed title to the 69 Property.  The forgery occurred on or about August 20, 2019. Defendant Spitzer had forged Plaintiff Rabbi Braun's signature without consent. Defendant Weisz notarized the forgery.

      c.      Defendant Spitzer through another shell LLC, 138 Nobility LLC, had claimed title to the property addressed as 138 Nobility Court, Toms River, New Jersey. The forgery occurred on or about August 1, 2019. Defendant Spitzer had forged Rivka Braun's[3] signature without consent. Defendant Weisz notarized the forgery.

      d.      Defendant Spitzer through another shell LLC, 78 Parkville LLC, had claimed title to the property addressed as 78 Parkville Avenue, Brooklyn, NY. The forgery occurred on or about December 30, 2019. Defendant Spitzer had forged the signatures without the consent of Elliot Brociner and Helen Brociner.

      e.      Defendant Spitzer claimed title to the property addressed as 625 Bedford Avenue, Brooklyn, NY 11211. Defendant Spitzer created false documentation claiming to be the interest holder of the genuine owner, 625 Bedford LLC. The creation of false instruments occurred on or about October 16, 2019.

      f.      Defendant Spitzer claimed title to the property addressed as 1223 East 34th Street, Brooklyn. Defendant Spitzer created false documentation claiming to be the genuine owner of Wyona Street 293 Corporation. The creation of false instruments occurred on or about July 20, 2018.

310.      In particular, as delineated further below, Defendant Spitzer on behalf of the AIF Enterprise engaged with the gambling of property that was either obtained through the forgery of title or purchased with the equity drawn against fraudulent title. The following is a list of properties obtained by Defendant Spitzer, placed into a shell LLC, the mortgage was originated by the partnership of Wienfeld and Defendant Bleier using either Defendant Rosa Funding or 703 Funding, assigned to Defendant PS Funding, and subsequently became subject to foreclosure proceedings:

      a.      On or about August 20, 2019, Defendant Spitzer forged title to the 67 Property and placed into the shell Defendant Sham LLC. On or about August 27, 2019, a mortgage for $1,200,000 was originated by Defendant Rosa Funding and assigned to Defendant PS Funding. On February 15, 2021, Defendant PS Funding brought suit against Defendant Spitzer and the Defendant Sham LLC for defaulting on the mortgage.

---

[3] Rivka Braun is a daughter in law of Rabbi Braun.

b.  On or about August 20, 2019, Defendant Spitzer forged title to the 69 Property and placed into the shell Defendant Sham LLC. On or about August 27, 2019, a mortgage for $1,200,000 was originated by Defendant Rosa Funding and assigned to Defendant PS Funding. On February 18, 2021, Defendant PS Funding brought suit against Defendant Spitzer and the Defendant Sham LLC for defaulting on the mortgage.

c.  On or about August 1, 2019, Defendant Spitzer forged Rivka Braun's signature to transfer title of the property addressed as 138 Nobility Court, Toms River, New Jersey into a shell LLC, 138 Nobility LLC. On or about August 1, 2019, a mortgage for $427,000 was originated by 703 Funding and, on August 14, 2019, assigned to Defendant PS Funding. On September 18, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

d.  On or about September 26, 2019, Defendant Spitzer transferred title to the property 131 Division Avenue, Brooklyn, NY and placed into the shell LLC, 131 Division LLC. On or about September 27, 2019, a mortgage for $997,500 was originated by Defendant PS Funding. On December 8, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

e.  On or about September 16, 2019, Defendant Rosa Funding originated for Defendant Spitzer a mortgage for $300,000 under the shell LLC, 59 Davenport Avenue LLC. The same day the mortgage was assigned to Defendant PS Funding. On March 1, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

f.  On September 4, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for the purchase of 52-54 Chelsea Avenue, Newark New Jersey, in the amount of $305,000. The same day, 703 Funding generated a mortgage for $280,000 and assigned it too Defendant PS Funding. On August 3, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

g.  On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 134 N. 15th Street, East Orange New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage of $243,750 and assigned the mortgage to Defendant PS Funding. On December 28, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

h.   On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 38 Headley Street, Irvington New Jersey, in the amount of $340,000. The same day, Defendant Rosa Funding generated a mortgage for $225,000 and assigned the mortgage to Defendant PS Funding.  On December 29, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

i.   On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 240 Amherst Street, East Orange New Jersey, in the amount of $259,000. The same day, Defendant Rosa Funding generated a mortgage for $240,000 and assigned the mortgage to Defendant PS Funding.  On March 22, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

j.   On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 23-25 Chelsea Avenue, Newark New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage for $247,500 and assigned the mortgage to Defendant PS Funding.  On December 14, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

k.   On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 20 Girard Avenue, Newark, New Jersey, for $259,000.  The same day, Defendant Rosa Funding generated a mortgage for $234,000 and assigned the mortgage to Defendant PS Funding.  On January 4, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

l.   On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 62 South 13th Street, East Orange New Jersey, for $249,000. The same day, Defendant Rosa Funding generated a mortgage of $247,500 and assigned the mortgage to Defendant PS Funding.  On April 27, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

m. On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 96 North Maple Avenue, East Orange New Jersey, in the amount of $259,000. The same day, Defendant Rosa Funding generated a mortgage for $235,500 and assigned the mortgage to Defendant PS Funding. On September 21, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

n. On September 11, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 808 South 14th Street, Newark New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage of $285,000 and assigned the mortgage to Defendant PS Funding. On September 21, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

o. On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 57 Cedar Avenue, Newark New Jersey, in the amount of $315,000. The same day, Defendant Rosa Funding generated a mortgage of $262,500 and assigned the mortgage to Defendant PS Funding. On January 27, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

p. On September 12, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 64 South 13th Street, Newark New Jersey, in the amount of $249,000. The same day, Defendant Rosa Funding generated a mortgage of $247,500 and assigned the mortgage to Defendant PS Funding. On April 27, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

q. Each of the aforementioned mortgages triggered for Defendant PS Funding the ability to collect a default rate of 15-16% interest within six (6) months the mortgage was generated.

311. The AIF Enterprise also accumulated, mostly through Defendant Spitzer, a host of title to other properties throughout New Jersey and New York. Each of these properties were acquired between 2018 and 2022.

6. Defendant Weinfeld

312. Defendant Weinfeld is a natural person.

313. At all relevant times, Defendant Weinfeld was a partner in Defendant Rosa Funding and 703 Funding.

314. At all relevant times, Defendant Weinfeld managed all the affairs of Defendant Rosa Funding and 703 Funding.

315. At all relevant times, Defendant Spitzer was the servant of Defendant Weinfeld and followed all the directives provided by Defendant Weinfeld to advance the goals of the AIF Enterprise.

316. Defendant Weinfeld also goes by the "Schia," "Shia," "Schia Na", "Josh J Wein", "Jay Wein", "Josh Weinfeild", "Jox", "Shia A", "Joshua", "Shia Weinseld", and "S Defendant Weinfeld".

317. Defendant Weinfeld and Defendant Spitzer are business partners in their partnership for the AIF Enterprise. For instance, the knowledge that Defendant Weinfeld and Defendant Spitzer are business partners is the legal entity solidified in Zapper, Inc. a corporation registered in the State of Nevada, in which both Defendant Weinfeld and Defendant Spitzer are partners.

318. Zapper Inc. is corporation registered under the names of Schia Defendant Weinfeld and Defendant Spitzer.

319. The management of Zapper Inc. is under Defendant Teitelbaum and Defendant Dekel, with the same address of "485 Oak Glen Road, Howell, NJ", as registered with the Secretary of State of Nevada.

320. Zapper was registered on or about June 30, 2020, to solidify the AIF Enterprise and funnel funds through out of state bank accounts.

7. <u>Defendant Bleier</u>

321. Isidor Defendant Bleier is a natural person.

322. Defendant Bleier is a partner with Defendant Weinfeld in everything regarding the AIF Enterprise.

323. Defendant Bleier is a partner with Defendant Weinfeld in Defendant Rosa Funding and 703 Funding.

324. At all relevant times, Defendant Bleier acted as the senior advisor for the AIF Enterprise in maneuvering and disbursing the equities of Plaintiffs properties through the use of promissory notes.

325. In particular, that Defendant Bleier serves as the front man to secure to secure the mortgages originated by Defendant Weinfeld.

326. The security provided by Defendant Bleier was to satisfy an element common in the table funding business that the person who originates a mortgage must secure the mortgage for the first three months of its life, in the event the mortgage is recalled for whatever reason.

327. Given that Defendant Weinfeld was an agent for Defendant PS Funding, Defendant Bleier would act as the third party to secure the mortgages originated by Defendant Weinfeld through entities like Defendant Rosa Funding and 703 Funding.

328. DB Holdings LLC ("DB Holdings") is a corporation owned by Defendant Bleier.

329.    On December 27, 2019, the AIF Enterprise through Defendant Spitzer, utilizing ISM Holdings LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $400,000 on the properties 201 South 11 Street, Newark, New Jersey. Defendant Dekel did this registration.

330.    On January 28, 2021, the AIF Enterprise through Defendant Spitzer, utilizing 418 Central NJ LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $225,000 on the properties 418 Central Avenue, Orange, New Jersey.

331.    On January 19, 2021, the AIF Enterprise through Defendant Spitzer, utilizing 224 Washington Street LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $600,000 on the properties 227, 220-224 Washington Street, Perth Amboy, NJ. Defendant Dekel did the registration.

332.    On January 21, 2021, the AIF Enterprise through Defendant Spitzer, utilizing 224 Washington Street LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $225,000 on the properties 227, 220-224 Washington Street, Perth Amboy, NJ. Defendant Dekel did the registration.

333.    On January 29, 2021, the AIF Enterprise through Defendant Spitzer, utilizing DES Partners Group LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $300,000 on the properties 227, 220-224 Washington Street, Perth Amboy, NJ.

334.    On June 11, 2021, the AIF Enterprise through Defendant Spitzer, utilizing 465 Ferry LLC, rewarded DB Holdings with title to the property 465-467 Ferry Street, Newark, New Jersey

8. Defendant Teitelbaum

335.    Abraham Defendant Teitelbaum is a natural person.

336.    At all relevant times, Defendant Teitelbaum was a licensed title insurance agent working as the title agent for the AIF Enterprise.

337.    Defendant Teitelbaum is the owner of Defendant Dekel together with his wife Riki Teitelbaum.

338.    Defendant Teitelbaum is also the owner of ART Holdings together with his wife Riki Teitelbaum, which is an acronym for Abraham Riki Teitelbaum.

339.    At all relevant times, Defendant Teitelbaum also uses the name "Avroham Teitelbaum" to conceal being the same person doing the title insurance and cashing in on the AIF Enterprise.

340.    Defendant Teitelbaum served the AIF Enterprise by perfecting the treasures acquired by the AIF Enterprise.

341.    Defendant Teitelbaum used his license as a title insurance agent, to create title insurance on the deeds that bore the forged signatures of Plaintiff Rabbi Braun.

342.    In return, the AIF Enterprise through Defendant Spitzer provided promissory notes on other properties as compensation for the frauds perpetrated. The following facts support these allegations:

    a.   In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 287-297 Brunswick Avenue a/k/a 381 Oak Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel. Nonetheless, the AIF Enterprise owned this property.

    b.   In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, to register a subordinate mortgage of $500,000, and

dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 220-224 Washington Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel. Nonetheless, the AIF Enterprise owned this property.

c.   In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 4, 2021 against the property addressed at 194-196 Johnson Ave, Newark, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel. Nonetheless, the AIF Enterprise owned this property.

343.    Each of these mortgages advanced by Art Holdings LLC were rewards that Defendant Teitelbaum received for his role in the AIF Enterprise. Indeed, as delineated *supra*, approximately two weeks after Art Holdings received the three promissory notes of $500,000, DB Holdings also received subordinate promissory notes, including a promissory note on the same property 220-224 Washington Street for $600,000.

9.    Defendant Weisz

344.    Defendant Weisz is a natural person.

345.    At all relevant times, Defendant Weisz was an employee of Defendant Dekel.

346.    At the same time, Defendant Weisz was also a partner with Teitelbaum. For instance, Cross County MDS LLC is an entity registered as doing title search. Defendant Weisz is not licensed to do title insurance agent, but Cross County MDS LLC is registered in the name of Defendant Weisz. Interestingly, on June 21, 2021, "Avroham" Defendant Teitelbaum issued a promissory note of $400,000 to Cross County MDS LLC. The address for the lender Cross County MDS LLC is "485 Oak Glen Road, Howell, NJ", the same address as Defendant Dekel.

347.     As delineated *supra*, Defendant Weisz notarized the forged the signatures of Plaintiff Rabbi Braun on the deeds belonging to Plaintiffs.

348.     The AIF Enterprise rewarded Defendant Weisz for notarizing the forgeries with title to his residence.  The following facts support this allegation:

    a.    On April 18, 2019, Defendant Spitzer purchased 1303 Hickory Street, Toms River for $600,000. Defendant Dekel registered the deed.

    b.    On June 6, 2019, Defendant Spitzer deeded 1303 Hickory Street to 1303 Hickory LLC, a corporation owned by Defendant Spitzer.  Defendant Dekel registered the deed.

    c.    On September 27, 2019, 1303 Hickory LLC, granted title to Defendant Weisz for the property 1303 Hickory Street.  Defendant Dekel registered the deed.

    d.    The transfer of 1303 Hickory by Defendant Spitzer to Defendant Weisz involved consideration by the AIF Enterprise to reward Defendant Weisz for notarizing the forgeries of title by Defendant Weisz to Plaintiffs properties.

### C.  AIF Enterprise in Action

349.     At relevant times, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding, and Defendant Spitzer to fraudulently obtain properties from unsuspecting vulnerable victims.

350.     The common pattern is almost always the same, the prize being a property that has no encumbrance on it, making the property a prime target for conversion.

351.     The relationships of the members of the AIF Enterprise are as follows: Defendant Spitzer hunts for the property, such as creating a forged deed transferring title of a property to an LLC, as a shell corporation (referred to as the "Shell LLC").  The placing of the property into a Shell LLC is done at the direction of Defendant Weinfeld and Defendant Bleier (*i.e.*, Defendant Rosa Funding, 703 Funding) to present itself at a distance from the victim(s) and exert a maximum interest rate above the usury rate capped for an individual.  Defendant Weinfeld

and Defendant Bleier, under the guise of Defendant Rosa Funding together with its personnel, create an encumbrance on the property based on forged deeds. Defendant Weisz as an associate of Defendant Dekel notarizes the forged deed, so the forgery would seem legitimate and be acceptable for filing with local government offices. Defendant Dekel with its personnel and Defendant Teitelbaum function as the title insurance agents to give the false appearance under CPLR 4523 of a legitimate title and to transmit the forged deed to the County Clerk or City Register to ruse the forgery. Defendant Dekel with its owner Defendant Teitelbaum expedite the mortgage and transmit the forged documents to the County Clerk or City Register to ruse the forgery. The expedition happens swiftly, as was in this case, the forgery was dated August 20, 2019, and by August 26, 2019, Defendant PS Funding had delivered the funds to Defendant Dekel. Defendant Dekel with Defendant Teitelbaum facilitated the assignment of the mortgage from Defendant Rosa Funding to Defendant PS Funding. Defendant PS Funding together with its personnel presents itself as the vehicle to the foreclose on the false encumbrance even when knowing that the deed is a bald forgery. Defendant PS Funding would either do the foreclosure by themselves or through an assignee.

352. Members and associates of the AIF Enterprise present themselves as bona fide businesspersons conducting a routine "innocent" transaction and blame Defendant Spitzer as the fall guy, a scapegoat for all wrongdoing. By blaming Defendant Spitzer for all the wrong, the remainder of the AIF Enterprise attempt to brand themselves as victims, distance themselves from the blame, and avoid any responsibility of the wrongs committed. This is despite the fact that it would have been impossible for Defendant Spitzer to mastermind and perfect the same pattern multiple times without the entire AIF Enterprise having its commitment for the common purpose. At a first glance, the AIF Enterprise might seem to be blameless but as delineated supra, each

individual and entity in the AIF Enterprise is so entangled and involved with each other, that it is not possible to separate anyone in the AIF Enterprise without there being a failure to incorporate an indispensable party. The following facts support these allegations:

a. Professional standards in the title industry guide against the title agent having any financial incentive with either party to a transaction that conveys or encumbers title to property. This is for many reasons, in particular, the title agent is a fiduciary to the insurance provider, who relies on the title agent to exercise due diligence and care to protect the parties conveying or encumbering title to property. Here, as delineated *supra*, Defendant Dekel and Defendant Teitelbaum use various shell corporations to receive the quid pro quo for doing title work on the forged properties.

b. Defendant Spitzer created title to LLCs for multiple properties throughout 2018 and 2022 all properties received "financing" from Defendant Rosa Funding or 703 Funding, almost all were handled by Defendant Dekel with Teitelbaum, all were then assigned to Defendant PS Funding, and almost all ended in foreclosure (objectively speaking that Defendant Spitzer defaulted on so many mortgages) that were filed throughout 2018, 2019, 2020, 2021 and 2022.

c. It follows that at some point either Defendant Rosa Funding or Defendant PS Funding would have exercised due diligence and stopped advancing more money to Defendant Spitzer, given his pattern of defaulting on mortgages.

d. It follows that at some point either Defendant Rosa Funding or Defendant PS Funding would have exercised due diligence and examined the basis of multiple mortgages and its defaults.

e. It follows that at some point either Defendant Rosa Funding would have exercised due diligence and recalled the faulty mortgages, or that Defendant PS Funding would cease pursing foreclosure, on any property which Defendant Spitzer illegitimately claimed title, and Defendant PS Funding would first seek declaratory judgment to clear any cloud on title or to rescind such mortgages.

f. It follows that at some point that Defendant Weisz would have exercised due diligence and the conscious to cease advancing his notary stamp for every deed presented by Defendant Spitzer in the absence of the signee.

g. It follows that at some point either Defendant Dekel or Defendant Teitelbaum would exercise due diligence and do a title search and ask how it is that Defendant Spitzer received title of multiple real property in a short period of time without a contract of sale and without having tendered any

consideration. In particular after Defendant Spitzer having filed bankruptcy claiming that his assets are below $50,000.

353.     Neither Defendant exercised the due diligence entrusted to them by law and common sense necessary to have prevented the injury that Plaintiffs are now facing. The Defendants did not exercise due diligence because these duties do not follow the common purpose of the AIF Enterprise of converting title of property they are not entitled to and enriching themselves at the behest of unsuspecting victims. Rather it is the omission of due diligence that enables the enterprise of converting title of property they are not entitled to and enriching themselves at the behest of unsuspecting victims.

354.     At all relevant times, Defendant Weinfeld and Defendant Bleier, controlling Defendant Rosa Funding, paid Defendant Spitzer for each property that was swindled from its true owners.

355.     The acts of the AIF Enterprise members included forging the signature of the victim to fabricate title to real property under the name of a Shell LLC belonging to one of the perpetrators, Defendant Weinfeld, Defendant Bleier, or Defendant Spitzer. Then the perpetrators encumber the stolen property through using shell corporations, such as Defendant Rosa Funding LLC, to create an instrument of funding with the false appearance of lending money.

356.     Defendant Weinfeld and Defendant Bleier, when asked about the mortgages created on a property involving Defendant Spitzer, play ignorant as if Defendant Spitzer purchased the property from the unsuspecting victim.

357.     At all relevant times, Defendant Teitelbaum was a licensed insurance agent in the State of New York, operating under Defendant Dekel Abstract LLC. Defendant Teitelbaum and Defendant Dekel presented themselves as title insurance agents, as if they did a title search, assisted the perpetrators with preparing closing documents to pass the appearance of clear title on

properties that are deeded for no consideration to the Shell LLC. Meanwhile, neither Defendant Teitelbaum nor Defendant Dekel did any title search. For instance, as delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred to Plaintiff 67 LLC, 60% of the title to the 69 Property and retained 40% of its title. It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the forgery transferred 100% of the title of the 69 Property from 1567 56th Street LLC (Plaintiff 67 LLC) to 1567 56 NY LLC (Defendant Sham LLC). Yet, Plaintiff 67 LLC held only 60% of the title, not 100%. This omission by Defendant Teitelbaum and Defendant Dekel illustrates and further evidences the fact that no title search was done at all.

358.    Likewise, Defendant PS Funding failed to exercise its own due diligence by looking at the NYC ACRIS to verify the genuineness of title. Defendant PS Funding could have spotted easily, that Plaintiff 67 LLC held only 60% of the title, not 100%.

359.    Indeed, Defendant PS Funding disbursed the $1,191,611.65 to encumber 69 Property prior to Defendant Spitzer registering the forged deed. As such, Defendant PS Funding omitted verifying whether the purported deed represented by Defendant Spitzer and Defendant Dekel could be authenticated with the chain of title.

360.    In particular, because Defendant PS Funding was so eager to inflate its portfolio with mortgages that are destined to collect the default rate of at least 16%, Defendant PS Funding disregarded the due diligence necessary to verify the chain of title.

361.    In particular, an encumbrance on property, like on Plaintiffs property can have the dire consequences of crippling a person. It is for that reason, the law and common sense require the due diligence, such as a meeting at closing, where there is a meeting of the eyes and all the parties to the encumbrance can be confident that such encumbrances are genuine and not under duress or fraud. Neither the conveyance of the forged deeds of property belonging to Plaintiffs,

nor the encumbrance that Defendant PS Funding and Defendant Rosa Funding placed on Plaintiffs properties were as a result of a closing let alone an in-person meeting at closing.

362.     Indeed, it is the omission of due diligence that enabled the AIF Enterprise to achieve its goals, and thus the fact that no one in the AIF Enterprise spotted the obvious fact that Plaintiff 67 LLC only owned 60% of the 69 Property, confirming that the AIF Enterprise was functioning on the omission of due diligence in reckless disregard to the rights of others such as Plaintiffs.

363.     Furthermore, Defendant Weisz avails himself to the perpetrators as an associate of Defendant Dekel and Defendant Teitelbaum to notarize each forgery to lend an appearance that the deed transfer is legitimate.

364.     Then Defendant Weinfeld assign the mortgage on forged title to Defendant PS Funding as a vehicle to ruse the forgery.

365.     Neither Defendant Spitzer, nor Defendant Weinfeld, Defendant Bleier, Teitelbaum, Defendant Dekel or Defendant PS Funding Funding fronted any money to purchase the property from Plaintiffs. Rather the members and associates of the AIF Enterprise are provided funding by Defendant PS Funding under the method of "table funding", where Defendant PS Funding holds itself as if the loan was funded by Defendant PS Funding as a contemporaneous "bona fide" lender advancing the funds for a purchase. Meanwhile, there were no funds advanced to purchase the property from the unsuspecting victim. Rather, the money advanced by Defendant PS Funding was to enable the AIF Enterprise to acquire more property that is destined to head to foreclosure, so that Defendant PS Funding can collect the default rate of at least 16% interest. Indeed, as delineated above, the equity drawn on the forged deeds were the collateral for

investment in more real property that also ended in foreclosure with the default rate of at least 16% interest.

366.     Defendant PS Funding is aware that mortgages originating with Defendant Rosa Funding and 70 Funding through Defendant Teitelbaum and Defendant Dekel are faulty. Rather than rescinding the faulty mortgages to Defendant Rosa Funding, Defendant PS Funding is happily pursuing foreclosures on properties where the title is void in a concentrated effort to profit off from the fraudulent mortgages which originated from Defendant Rosa Funding and 703 Funding.

### D. *The Victims of the AIF Enterprise*

367.     Each member of the AIF Enterprise played a role in the Racketeering Activity alleged in this Amended Complaint and acted in mutual reliance on one another for the common purpose of defrauding Plaintiffs, and other victims, out of millions of dollars.

368.     The victim is unaware that their real property has been stolen and encumbered.  Under this blindness, Defendant PS Funding works to swiftly enforce the mortgage in a foreclosure proceeding, doing the foreclosure themselves or through other entities. The pattern is almost always the same, the victim is never named as a party to the foreclosure proceeding nor served with the foreclosure lawsuit.  By the time the victim learns of the foreclosure, there is already a judgment for default, the victim is caught off guard, leaving the victim with the uphill battle to catch the rare discretion of an overworked state court judge to intervene and vacate the default judgment in a foreclosure proceeding in which the victim was not named as a party. By the time the victim can grasp what has befallen, the property is in foreclosure, and the victim is at that point at the mercy of survival without a roof over their head, and not even having the money to hire attorneys to hire attorneys to litigate restoring title.

369.     The following are several of the victims of the AIF Enterprise:

a.     As delineated above, Plaintiff Rabbi Braun and the Plaintiff 67 LLC are the victims of the AIF Enterprise conversion of title to the 67 Property. Defendant PS Funding pursued foreclosure against the Defendant Sham LLC and Defendant Spitzer, without naming or serving Plaintiff 67 LLC or Plaintiff Rabbi Braun as a party.

b.     Defendant PS Funding obtained a default judgment of foreclosure against the Defendant Sham LLC.

c.     After Defendant PS Funding was served with this lawsuit, instead of seeking to declaratory judgment to clarify the cloud on title on the 67 Property or to rescind the mortgage, Defendant PS Funding brought a motion in State court seeking to retroactively amend the default judgment to include Plaintiff Rabbi Braun as a defaulting party.

d.     Never mind the due process blunder that a judgment cannot be retroactively extended against a nonparty to a suit, the activity of Defendant PS Funding demonstrates its commitment to protecting the AIF Enterprise by continuing to ruse the victim.

e.     As delineated above, Plaintiff Rabbi Braun, Plaintiff 69 LLC and the Plaintiff 67 LLC are the victims of the AIF Enterprise conversion of title to the 69 Property. Defendant PS Funding pursued foreclosure against the Defendant Sham LLC and Defendant Spitzer, without naming or serving Plaintiff 67 LLC, Plaintiff 69 LLC or Plaintiff Rabbi Braun as a party.

f.     Defendant PS Funding obtained a default against the Defendant Sham LLC and Defendant Spitzer.

g.     After Defendant PS Funding was served with this lawsuit, instead of seeking to declaratory judgment to clarify the cloud on title on the 69 Property or to rescind the mortgage, Defendant PS Funding brought a motion in State court seeking to retroactively amend the default to include Plaintiff Rabbi Braun as a defaulting party.

h.     Never mind the due process blunder that a default cannot be retroactively extended against a nonparty to a suit, the activity of Defendant PS Funding demonstrates its commitment to protecting the AIF Enterprise by continuing its ruse against the innocent victim.

i.     On or about August 1, 2019, Defendant Spitzer forged Rivka Braun's signature to transfer title of the property addressed as 138 Nobility Court, Toms River, New Jersey into a shell LLC, 138 Nobility LLC, owned by Defendant Spitzer.  On or about August 1, 2019, a mortgage for $427,000 was originated by 703 Funding and, on August 14, 2019, assigned to Defendant PS Funding.

j.   On September 18, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

k.   On March 9, 2022, Aharon Braun sought to vacate the default the judgment claiming that the deed is forgery. The assignee of Defendant PS Funding objected that Rivka Braun had "notice" of the lawsuit, even though she was never named as a party. The state judge denied the motion to vacate, stating that the vacatur of the default would be past one year of the default.

l.   On or about February 21, 2023, the Ocean County Sherriff auctioned the property for $625,024.92 and sold the property for $651,000.

m.   In such instance, Defendant PS Funding stands to recover $198,024 on a mortgage of $427,000, in a span of less than four years.

n.   On or about December 18, 2019, Defendant Spitzer forged title to the property 78 Parkville Avenue, Brooklyn, NY.

o.   The forgery of the deeds forged the signatures of the elderly couple Elliot and Helen Brociner.

p.   The forgery transferred title to 78 Parkville LLC. On December 30, 2019, 703 Funding issued a mortgage on the forgery for $1,995,000.00. The mortgage was then assigned to Defendant PS Funding.

q.   Defendant Dekel perfected all the paperwork and filings of this conversion.

r.   Upon learning of forged title, the Brociners began contacting all players in the conversion to return the title to 78 Parkville Avenue, Brooklyn, NY.

s.   On May 7, 2020, the Brociners received back the title to 78 Parkville Avenue.

t.   Despite that Defendant PS Funding learned from the Brociners that Defendant Spitzer forged title to the property 78 Parkville Avenue, Defendant PS Funding did not seek any audit of all the other mortgages that Defendant PS Funding had from Defendant Spitzer as to whether they are based on genuine title.

u.   Rather, starting in August 2020, Defendant PS Funding began its line of foreclosures against much of the properties of the AIF Enterprise, including those that had questionable title, in an effort to cash in the default rate of at least 16% interest. For Defendant PS Funding, everything was going forward according to the confidential agreement of the AIF Enterprise.

v.  On or about September 26, 2019, Defendant Spitzer transferred title to 131 Division Avenue, Brooklyn, NY. The title was transferred from Isaac Matyas to 131 Division LLC. The same day, Defendant PS Funding created a mortgage of $997,500.00. Defendant Dekel did the registry of title and mortgage.

w.  An assignee of Defendant PS Funding has since sought to foreclose on 131 Division Avenue.

x.  Isaac Matyas has since brought suit claiming that it had only agreed to borrow $90,000 and was conned with a mortgage of $997,500.00.

y.  Joseph Polastek had genuine title to 625 Bedford Avenue, Brooklyn, NY free from any encumbrances, under the name 625 Bedford LLC. On or about October 16, 2019, Defendant Rosa Funding originated a mortgage signed by Defendant Spitzer, encumbering 625 Bedford LLC with a mortgage for $1,995,000.00. On October 23, 2019, the mortgage was assigned to Defendant PS Funding. The title and paperwork were done by Defendant Dekel.

z.  Had Defendant Dekel or Defendant PS Funding done its basic due diligence, it would have noticed that 625 Bedford LLC belongs to an irrevocable trust incapable of conveying its property without a distribution of the trust to all its beneficiaries in accordance with the terms of that trust.

aa.  Had Defendant Dekel or Defendant PS Funding done its basic due diligence, it would have noticed that neither Joseph Polastek nor Malka Templer or Joseph Templer assigned 625 Bedford LLC to Defendant Spitzer.

E.  *The Racketeering Violations*

370.  From September 2019 and continuing up through the date of the filing of this Second Amended Complaint, Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Teitelbaum, and Defendant Weisz knowingly and unlawfully conducted or participated, directly or indirectly, in the AIF Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

371.  As alleged in detail below, the actions of the Defendants constitute racketeering activity within the meaning of 18 U.S.C. § 1961(1) because they constituted criminal offenses that are indictable as violations of the federal mail fraud statute 18 U.S.C. § 1341; and the

federal wire fraud statute 18 U.S.C. § 1343; the federal extortion statute 18 U.S.C. § 1951, and the predicate crime prohibiting the engaging in monetary transactions in property derived from specified unlawful activity, 18 U.S.C. § 1957. The actions constitute a pattern of racketeering activity because each individual of the Defendant committed at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity" criteria described below.

372. Over the course of years, from September 2019 and continuing to the present, Defendants knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c). To accomplish his schemes, artifices, and conspiracies Defendants and AIF Enterprise members used the United States mails and interstate wires to send and receive checks, send and receive documents relating to fraudulent schemes, described below.

373. Months after the forgery was registered, upon learning of the fraud, Plaintiff Rabbi Braun confronted Defendant Spitzer over this ordeal. Defendant Spitzer admitted to Plaintiff Rabbi Braun that he forged the signature of Plaintiff Rabbi Braun to transfer the property but exclaimed that he was "forced" to do it. Defendant Spitzer did not say who forced him to forge Plaintiff Rabbi Braun's signature, but in a quest for answers, all leads led to information and belief that Defendant Spitzer is a faithful servant who follows orders of Defendant Weinfeld and Defendant Bleier, and they all are members of the AIF Enterprise.

374. Defendant Weisz notarized the fraudulent transfer of the deeds bearing the forged signatures of "Shlomo Braun." Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC, nor Plaintiff 69 LLC ever appeared before Defendant Weisz to notarize any of the forged deeds. Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC, nor Plaintiff 69 LLC ever entered into a contract sale of the 67 Property or 69 Property. Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC,

nor Plaintiff 69 LLC ever appeared before Defendant Dekel, Teitelbaum, Defendant Rosa Funding, or Defendant PS Funding to consummate a closing. All the acts were committed by the Defendants amongst themselves in the absence of Plaintiffs and without the knowledge of Plaintiffs. All the acts committed by the Defendants against Plaintiffs occurred between 2019 and the present day. The properties of Plaintiffs were transferred to a Defendant Sham LLC in conformity with the AIF Enterprise requirement that the forgery of the deed be registered in the name of a Shell LLC owned by one of the perpetrators. The properties of Plaintiffs became encumbered with a mortgage through the Defendant Sham LLC in conformity to the practice of the AIF Enterprise where Defendant Weinfeld, Defendant Bleier, and Defendant Rosa Funding create an encumbrance of the property to make it appear as if Defendant Spitzer or Sham/Shell LLC was a bona fide purchaser. The mortgages were assigned to Defendant PS Funding for the purposes of enforcing the encumbrance. Defendant Dekel and Defendant Teitelbaum created the mock process of a title search, clear title, and registered the fraudulent documents with the City Register.

375. The 67 Foreclosure action was commenced by Defendant PS Funding against the 67 Property without Plaintiff Rabbi Braun and Plaintiff 67 LLC being named as a party.

376. The 69 Foreclosure action was commenced by Defendant PS Funding against the 69 Property without Plaintiff Rabbi Braun and Plaintiff 69 LLC or Plaintiff 67 LLC being named as a party.

377. Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC was served with the 67 Foreclosure action.

378. Neither Plaintiff Rabbi Braun nor Plaintiff 69 LLC nor Plaintiff 67 LLC were served with the 69 Foreclosure action.

379.     It is elementary that lenders would not proceed to lend money on a property without a closing in the presence of the sellers and borrowers. This elementary step serves as a meeting of the minds and to verify the identity of the sellers and borrowers. Yet, Defendant Rosa Funding and Defendant PS Funding purportedly proceeded to finance property from Plaintiff 67 LLC to the Defendant Sham LLC and encumber the 67 Property and 69 Property without a closing where Plaintiff Rabbi Braun and Plaintiff 67 LLC were to be present. It follows that both Defendant Rosa Funding and Defendant PS Funding knew and had sufficient information that they should have known that the transfer of the deeds from Plaintiff 67 LLC to the Defendant Sham LLC is not legitimate, and that both Defendant Rosa Funding and Defendant PS Funding knew and had sufficient information that they should have known that no legitimate funding was advanced to purchase the 67 Property and 69 Property.

### F.  The Racketeering Activity - Extortion

380.     Plaintiffs' plea that the individual Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum committed violations of Extortion.

381.     Defendants are engaged in racketeering activity by extorting and attempting to extort money from Plaintiff, namely having stolen title to Plaintiffs property and using foreclosure proceedings to extort money from Plaintiffs to save losing the property in foreclosure despite that each Defendant is knowingly aware that there is no valid transfer of title of from Plaintiff to the Defendant Sham LLC and consequently that the mortgage on Plaintiffs properties are unenforceable.

382.     The first acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Teitelbaum, and

non-defendants Defendant Rosa Funding Funding LLC, and Defendant PS Funding, Defendant

Dekel Abstract LLC, are as follows:

a. As delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred 60% of the title of the 69 Property to Plaintiff 67 LLC and Plaintiff 69 LLC retained 40% of the interest in that title.

b. Defendants stole 100% title of the 69 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer, transferring 100% of the title of the 69 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

c. Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding, and Defendant PS Funding knowingly used the theft to create a mortgage on the 69 Property.

d. Defendant PS Funding knowingly makes use of the theft to foreclose on the 69 Property by way of the 69 Foreclosure.

e. Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that Plaintiff 67 LLC could not grant 100% title of the 69 Property and that Plaintiffs are the genuine owners of the 69 Property.

f. The extortion is brought to life by the 69 Foreclosure, wherein Defendants are threatening to have the 69 Property auctioned off in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 at 9.5% in interests plus a default interest of 15% and fees albeit that Plaintiffs did not incur either obligation.

g. Defendants operating with a unified mindset to mastermind the extortion: by enabling Defendant Spitzer to initiate the extortion through the forgery that was notarized by Defendant Weisz who is also a servant of Defendant Dekel and Teitelbaum. The extortion was conceived by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that of which the Defendant Sham LLC did not have genuine title.

h. The extortion was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

i. The extortion is realized by Defendant PS Funding with its prosecution of the 69 Foreclosure.

j. Defendants extort money from Plaintiffs in the State of New York in seeking deliverance of payment in commerce by way of Defendant PS Funding being located in Delaware and California; Defendant Weinfeld,

Defendant Bleier and Defendant Rosa Funding, Teitelbaum, Defendant Dekel and Defendant Weisz are profiteering in the State of New Jersey.

k. The extortion to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), N.Y. Penal Law § 135.65(A)(1).

l. The second acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Teitelbaum, and non-defendants Defendant Rosa Funding Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

m. Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun or Plaintiff 67 LLC to purchase the 67 Property.

n. Defendants stole title of the 67 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

o. The theft was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

p. Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the theft to create a mortgage on the 67 Property.

q. Defendant PS Funding knowingly makes use of the theft to induce payment in return for title to the 67 Property by way of the 67 Foreclosure.

r. Each of the Defendants knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC issued a contract of sale, received any consideration, or had any reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

s. The extortion is brought to life by the 67 Foreclosure, wherein Defendants are threatening to have the 67 Property belonging to Plaintiffs auctioned off to induce Plaintiffs to pay a ransom of $1,200,000.00 at 9.5% interest plus a default rate of 15% and fees albeit neither sum was incurred by Plaintiffs.

t. Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel); the extortion was commenced by Defendant Weinfeld, Defendant

Bleier and Defendant Rosa Funding in creating a mortgage on a property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the extortion is enforced by Defendant PS Funding with its prosecution of the 67 Foreclosure.

u. Defendants extort money from Plaintiffs in the State of New York when seeking deliverance of payment in commerce by way of Defendant PS Funding being situated in Delaware and California; Defendant Spitzer, Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding, Teitelbaum, Defendant Dekel and Defendant Weisz profiteering in the State of New Jersey.

v. The extortion is to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), N.Y. Penal Law § 135.65(A)(1).

w. The third acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Teitelbaum, and non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

x. Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun and the Plaintiff 67 LLC to purchase the 67 Property.

y. Defendants stole title of the 67 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

z. The theft was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

aa. Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the theft to create a mortgage on the 67 Property.

bb. Defendant PS Funding knowingly makes use of the theft to seek payment for the mortgage on the 67 Property.

cc. Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC nor the Plaintiff 67 LLC issued a contract of sale,

received any consideration, or had any reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

dd.   The attempt of extortion is brought to life by maintaining the mortgage on the 67 Property and refusing to remove the mortgage in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 of 9.5% interest plus a default rate of 15% and fees albeit Plaintiffs did not incur either obligation.

ee.   Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel and Teitelbaum); the extortion was commenced by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the attempt of extortion is realized by Defendant PS Funding refusing to remove the encumbrance of the 67 Property despite knowing that the mortgage is based on a forged deed.

ff.   Defendants attempt to extort money from Plaintiffs in the State of New York when seeking deliverance of payment in commerce by way of Defendant PS Funding being situated in Delaware and California; Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC, Teitelbaum, Defendant Dekel and Defendant Weisz profiteering in the State of New Jersey.

gg.   The attempt of extortion is the efforts to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), and N.Y. Penal Law § 135.65(A)(1).

hh.   The fourth acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Teitelbaum, and non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

ii.   Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun, the Plaintiff 67 LLC and the Plaintiff 69 LLC to purchase the 69 Property.

jj.   Defendants stole title of the 69 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

kk.   The theft was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

ll.   Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the theft to create a mortgage on the 69 Property.

mm.   Defendant PS Funding knowingly makes use of the theft to seek payment for the mortgage on the 69 Property.

nn.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 67 LLC nor the Plaintiff 69 LLC issued a contract of sale, received any consideration, or had any reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

oo.   The attempt of extortion is brought to life by maintaining the mortgage on the 69 Property and refusing to remove the mortgage in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 of 9.5% interest plus a default rate of 15% and fees albeit Plaintiffs did not incur either obligation.

pp.   Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel and Teitelbaum); the extortion was commenced by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the attempt of extortion is realized by Defendant PS Funding refusing to remove the encumbrance of the 69 Property despite knowing that the mortgage is based on a forged deed.

qq.   Defendants attempt to extort money from Plaintiffs in the State of New York when seeking deliverance of payment in commerce by way of Defendant PS Funding being situated in Delaware and California; Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC, Teitelbaum, Defendant Dekel and Defendant Weisz profiteering in the State of New Jersey.

rr.   The attempt of extortion is the efforts to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), and N.Y. Penal Law § 135.65(A)(1).

### G. _Monetary Transactions in Property Derived from Specified Unlawful Activity – 18 U.S.C. § 1957._

383.    Plaintiffs' plea that the individual Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum committed violations of conducting Monetary Transactions in Property Derived from Specified Unlawful Activity.

384.    Individual Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, and Defendant Teitelbaum are engaged in racketeering activity by knowingly engaging in monetary transactions in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, i.e., extortion, and mail and wire fraud (see below).  Defendants stole title to Plaintiffs properties and used them to realize money through mortgages despite each Defendant knowingly aware that there is no valid title transfer of title of Plaintiffs properties.

385.    The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and non-defendant Defendant Dekel Abstract LLC:

a.    Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

b.    The forgery of a deed is a financial transaction under 18 USC 1956(c)(4), Defendants unlawful taking of Plaintiffs title to the 67 Property was brought into effect by transmitting the forgery from the State of New Jersey to the City Register located in the City of New York and was initiated by Defendant Rosa Funding and progressed by Defendant PS Funding Inc. both who are financial institutions located outside the State of New York and affecting transactions within the State of New York.

c.    Forgery in this case is a criminal offense under N.Y. Penal Law 170.10, 170.25 and is also federal offense 18 USC 495 to the extent that

Defendants are representing the forged deed to the Court in claiming that the Defendant Sham LLC is the genuine owner of the 67 Property.

d.  The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

e.  Defendants Defendant Weinfeld, Defendant Bleier and non-defendant Defendant Rosa Funding engaged in a monetary transaction of criminal derived property of at least $1.2 million derived from specified unlawful activity (mail and wire fraud, extortion) by knowingly creating a mortgage on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

f.  Defendant PS Funding knowingly makes use of the criminal derived transaction to foreclose the 67 Property by way of the 67 Foreclosure despite knowing that the Defendant Sham LLC does not have valid title. The knowledge is confirmed by the fact that Defendant PS Funding has not sought to rescind any of the mortgages issued to the AIF Enterprise and instead continued to seek compounded interest on each of the mortgages.

g.  Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

h.  Defendants operating with a unified mindset to mastermind the criminal activity, by enabling Defendant Spitzer to initiate the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC); the forgery was advanced to a monetary transaction by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding as a financial institution creating a mortgage on a property despite knowing that the Defendant Sham LLC did not have genuine title; the monetary transaction was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC; and the monetary transaction was made a reality with the assignment of the mortgage to Defendant PS Funding, a financial institution, and Defendant PS Funding Inc. knowingly advancing the monetary transaction with its prosecution of the 67 Foreclosure.

i.  Defendants' acts are chargeable as probable cause of a crime under 18 USC 1957.

j.  The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and non-defendant Defendant Dekel Abstract LLC:

k.  Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 69 LLC to the Defendant Sham LLC.

l.  The forgery of a deed is a financial transaction under 18 USC 1956(c)(4), Defendants unlawful taking of Plaintiffs title to the 69 Property was brought into effect by transmitting the forgery from the State of New Jersey to the City Register located in the City of New York and was initiated by Defendant Rosa Funding and progressed by Defendant PS Funding Inc. both who are financial institutions located outside the State of New York and affecting transactions within the State of New York.

m.  Forgery in this case is a criminal offense under N.Y. Penal Law 170.10, 170.25 and is also federal offense 18 USC 495 to the extent that Defendants are representing the forged deed to the Court in claiming that the Defendant Sham LLC is the genuine owner of the 69 Property.

n.  The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

o.  Defendants Defendant Weinfeld, Defendant Bleier and non-Defendant Rosa Funding engaged in a monetary transaction of criminal derived property of financing $1.2 million derived from specified unlawful activity by knowingly creating a mortgage on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

p.  Defendant PS Funding knowingly makes use of the criminal derived transaction to foreclose the 69 Property by way of the 69 Foreclosure despite knowing that the Defendant Sham LLC does not have valid title. The knowledge is confirmed by the fact that Defendant PS Funding has not sought to rescind any of the mortgages issued to the AIF Enterprise and instead continued to seek compounded interest on each of the mortgages.

q.  Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 69 LLC nor Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

r.    Defendants operating with a unified mindset to mastermind the criminal activity, by enabling Defendant Spitzer to initiate the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC); the forgery was advanced to a monetary transaction by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding as a financial institution creating a mortgage on a property despite knowing that the Defendant Sham LLC did not have genuine title; the monetary transaction was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC; and the monetary transaction was made a reality with the assignment of the mortgage to Defendant PS Funding, Inc., a financial institution, and Defendant PS Funding Inc. knowingly advancing the monetary transaction with its prosecution of the 69 Foreclosure.

s.    Defendants' acts are chargeable as probable cause of a crime under 18 USC 1957.

t.    The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and non-defendant Defendant Dekel Abstract LLC:

u.    Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

v.    The forgery of a deed is a security as a certificate of interest in property under 18 USC 2311.

w.    Defendants unlawful taking of Plaintiffs title to the 67 Property was transmitted from the State of New Jersey to the City Register located in the City of New York.

x.    The forgery was made possible by Defendant Weisz to notarize the forgery.

y.    Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

z.    The forged deed with the mortgages were transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

aa. Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

bb. Defendants are attempting to obtain money for the forgery by way of the 67 Foreclosure in an amount exceeding $5,000 in value.

cc. Defendants are attempting to obtain money for the forgery by way of claiming a security on the 67 Property in an amount exceeding $5,000 in value.

dd. The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, non-defendants Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and non-defendant Defendant Dekel Abstract LLC:

ee. Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 69 LLC to the Defendant Sham LLC.

ff. The forgery of a deed is a security as a certificate of interest in property under 18 USC 2311.

gg. Defendants unlawful taking of Plaintiffs title to the 69 Property was transmitted from the State of New Jersey to the City Register located in the City of New York.

hh. The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

ii. Defendants Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

jj. The forged deed with the mortgages were transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

kk. Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 69 LLC nor the Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

ll.    Defendants are attempting to obtain money for the forgery by way of the 69 Foreclosure in amount exceeding $5,000 in value.

mm.    Defendants are attempting to obtain money for the forgery by way of claiming a security on the 69 Property in an amount exceeding $5,000 in value.

### H.  *Mail and Wire Fraud - 18 U.S.C. § 1341 and § 1343*

386.    Plaintiffs' plead that the individual Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum committed violations of Mail and Wire Fraud.

387.    The individual Defendants referenced above are engaged in racketeering activity by taking committing mail and wire fraud, namely creating a forgery of stolen title to Plaintiffs property and transmitting them to the internet and inducing the City Register to mail the forged deed through the United States Postal Services.

a.    The following facts illustrate the mail and wire fraud acts committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

b.    Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

c.    The forgery of the deed was the means by which to place a mortgage on the 67 Property.

d.    Defendants unlawful taking of Plaintiffs title to the 67 Property was transmitted through the wires of the internet from the State of New Jersey to the City Register located in the City of New York.

e.    The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

f.    Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

g.  The forged deed with the mortgages was transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

h.  Defendant Teitelbaum and Defendant Dekel directed the City Register to use the United States Postal Services to return the forged deed accompanied with the mortgage.

i.  Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC nor Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

j.  These acts in totality support the charge of criminality under 18 USC 1341, 1343, and 1952 and were also committed to accomplish a state crime prohibited under N.Y. Real Prop. Law § 430.

k.  The following facts illustrate the mail and wire fraud acts committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

l.  Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from the Plaintiff 69 LLC to the Defendant Sham LLC.

m.  The forgery of the deed was the means by which to place a mortgage on the 69 Property.

n.  Defendants unlawful taking of Plaintiffs title to the 69 Property was transmitted through the wires of the internet from the State of New Jersey to the City Register located in the City of New York.

o.  The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

p.  Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

q.  The forged deed with the mortgages was transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

r.  Defendant Teitelbaum and Defendant Dekel directed the City Register to use the United States Postal Services to return the forged deed accompanied with the mortgage.

s.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 69 LLC nor the Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

t.   These acts in totality support the charge of criminality under 18 USC 1341, 1343, and 1952 and were also committed to accomplish a state crime prohibited under N.Y. Real Prop. Law § 430.

388.   As a direct result of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun and the Plaintiff 67 LLC's right to clean title of the 67 Property was slandered. As a direct of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and the Plaintiff 69 LLC and the Plaintiff 67 LLC's right to clean title of the 69 Property was slandered. As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

### I.   _Pattern of Racketeering_

389.   The actions constitute a pattern of racketeering activity because each Defendant committed at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity" criteria described below. The acts of wire fraud, mail fraud, money laundering (§ 1957); and interference with interstate commerce by means of extortion (18 U.S.C. § 1951) set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

390.   The closed-ended continuity test is satisfied as there is proof of the commission of a series of related predicates extending over a substantial period of time, since about year 2019 to the present time. Moreover, there is closed-ended continuity as this was not just one continuous mail and wire fraud scheme but involved schemes to defraud multiple victims, and multiple schemes involving the commission of multiple different predicate acts, including extortion and monetary transactions in criminally derived property.

391. The "threat of continuity" test is demonstrated as the predicates can be attributed to Defendants operating as part of long-term association that exists for criminal purposes. The continuity requirement is likewise satisfied for the additional reason that the predicate acts were a regular way of conducting Defendants ongoing business and of conducting or participating in the ongoing RICO enterprise. The criminal and predicate acts of Defendants have been related and continuous and have evidenced a pattern of racketeering.

392. Defendants are continuing to defraud Plaintiffs and others to this day and thus there is a continuing threat of continuity. Upon information and belief, identical, similar, or derivative acts have been committed in the years from November 1, 2018 through 2022 by the key Defendants against Plaintiffs and other victims based upon Defendant Spitzer purportedly borrowing money from Defendant Rosa Funding LLC, or its affiliates, and Defendant PS Funding Inc., followed by a blindfold foreclosure, against the following properties:

    a) 138 Nobility Court, Toms River, NJ,

    b) 1412 Collage Avenue, Bronx, NY,

    c) 23-25 Chelsea Avenue, Newark NJ,

    d) 62 S 13th Street, Newark, NJ,

    e) 240 Amherst St, East Orange, NJ,

    f) 96 Sussex Avenue, Newark, NJ,

    g) 134 N. 15th Street, East Orange, NJ,

    h) 106 Sunset Avenue, Newark, NJ,

    i) 64 S. 13th Street, Newark, NJ,

    j) 54 Chelsea Avenue, Newark, NJ,

    k) 625 Bedford Avenue, Brooklyn, NY,

l) 38 Headley Terrace, Irvington, NJ,

m) 808 South 14th Street, Newark, NJ,

n) 624 15th Avenue, Newark, NJ,

o) 94 North Maple Avenue, East Orange, NJ,

p) 59 Davenport Avenue, Newark, NJ,

q) 57 Cedar Avenue, Newark, NJ, and

r) 20 Girard Avenue, East Orange, NJ.

393. With regard each of these properties, Plaintiffs can provide in discovery sufficient detail to show that Plaintiffs, and other non-Plaintiffs were injured by the same and similar conduct committed by the subject Defendants regarding the specific properties that are the subject of this First Amended Complaint. For example:

a. Defendant Spitzer through another shell LLC, 138 Nobility LLC, had claimed title to the property addressed as 138 Nobility Court, Toms River, New Jersey. The forgery occurred on or about August 1, 2019. Defendant Spitzer had forged Rivka Braun's signature without consent. Defendant Weisz notarized the forgery.

b. Defendant Spitzer through another shell LLC, 78 Parkville LLC, had claimed title to the property addressed as 78 Parkville Avenue, Brooklyn, NY. The forgery occurred on or about December 30, 2019 and continued until May 2020. Defendant Spitzer had forged the signatures without consent of Elliot Brociner and Helen Brociner.

c. Defendant Spitzer claimed title to the property addressed as 625 Bedford Avenue, Brooklyn, NY 11211. Defendant Spitzer created false documentation claiming to be the interest holder of the genuine owner, 625 Bedford LLC. The creation of false instruments occurred on or about October 16, 2019.

d. Defendant Spitzer claimed title to the property addressed as 1223 East 34th Street, Brooklyn. Defendant Spitzer created false documentation claiming to be the genuine owner of Wyona Street 293 Corporation. The creation of false instruments occurred on or about July 20, 2018.

*J.*  *Injury*

394.    Plaintiffs have suffered injury to its person and property within the meaning of 18 U.S.C. §1964(c) by reason of Defendants' violations of 18 U.S.C. §1962(c), in an amount to be determined at trial, but no less than the minimum jurisdictional limit of this court.

395.    In particular, Plaintiff Rabbi Braun has suffered an injury to its health and well-being.

396.    Plaintiffs are entitled to recover treble damages and the costs of this action, including reasonable attorney's fee, under the provisions of 18 U.S.C.A. § 1964(c).

397.    By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $10,000,000.00, plus punitive damages in the amount of $30,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

398.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## JURY DEMAND

399.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully asks the Court to enter judgment in Plaintiffs' favor:

a.    declaring that any conveyance from 1567 56th Street, LLC to 1567 56 NY LLC is void ab initio;

b.    declaring that any conveyance from 1569 56th Street, LLC to 1567 56 NY LLC is void ab initio;

c.    injunctive relief striking the deeds of 1567 56 NY LLC on the 67 Property;

d.    injunctive relief striking the deeds of 1567 56 NY LLC on the 69 Property;

e.     injunctive relief striking the mortgages created by Defendant Rosa Funding on the 67 Property;

f.     injunctive relief striking the mortgages created by Defendant Rosa Funding on the 69 Property;

g.     declaring that, Arthur Defendant Spitzer, Josh Defendant Weinfeld, Isidore Defendant Bleier, 1567 56 NY LLC, Defendant Dekel Abstract LLC, Abraham Teitelbaum, Defendant BSD Realty Holdings Inc., Defendant Rosa Funding LLC, Defendant PS Funding, Inc., and Jehuda Defendant Weisz are divested from any claim to the 67 Property;

h.     declaring that, Arthur Defendant Spitzer, Josh Defendant Weinfeld, Isidore Defendant Bleier, 1567 56 NY LLC, Defendant Dekel Abstract LLC, Abraham Teitelbaum, Defendant BSD Realty Holdings Inc., Defendant Rosa Funding LLC, Defendant PS Funding, Inc., and Jehuda Defendant Weisz are divested from any claim to the 69 Property;

i.     awarding money damages;

j.     awarding punitive damages;

k.     awarding treble damages, and awarding attorney fees with legal costs, and

l.     together with such other and further relief available at law to make the Plaintiffs whole.

Dated: Brooklyn, NY
       June 9, 2023

Respectfully submitted,

Levi Huebner & Associates PC

/s/ Levi Huebner

488 Empire Boulevard, Suite 100
Brooklyn, NY 11225
Tell: (212) 354-5555

*Attorneys for Plaintiffs*