UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1567 56TH STREET, LLC, 1569 56TH STREET, LLC, and SHLOMO BRAUN, | Case No: 22-cv-04873 (KAM-RML) |
| *Plaintiffs,* | **THIRD AMENDED COMPLAINT** |
| - against - | |
| ARTHUR SPITZER, JOSH WEINFELD, ISIDORE BLEIER, BSD REALTY HOLDINGS INC., 1567 56 NY LLC, DEKEL ABSTRACT LLC, ABRAHAM TEITELBAUM, ROSA FUNDING LLC, PS FUNDING, INC., and JEHUDA WEISZ, | |
| *Defendants.* | |

Plaintiffs Shlomo Braun, 1567 56th Street, LLC, and 1569 56th Street, LLC by their counsel Levi Huebner & Associates PC, pleads their case for quiet title and for a money judgment against Defendants, Arthur Spitzer, Josh Weinfeld, Isidore Bleier, BSD Realty Holdings Inc., 1567 56 NY LLC, Dekel Abstract LLC, Abraham Teitelbaum, Rosa Funding LLC, PS Funding, Inc., and Jehuda Weisz, and states as follows:

## SYNOPSIS

Plaintiff Rabbi Shlomo Braun ("Plaintiff Rabbi Braun") has had title to two adjacent properties going back to the 1970s. These two properties are the primary residence of Plaintiff Rabbi Braun and several of his immediate family members. The Defendants created forgeries, fraud, and deceit to convert Plaintiffs title in these two properties. There was no closing, no contract of sale, no consideration, and no transfer of title by the Plaintiffs to the Defendants.

Plaintiffs are not the only victims. Each of the other victims has a common theme, that the Defendants converted or eroded title to real property. As more victims are coming forward, the Plaintiffs are able to better articulate the Defendants common scheme.

## JURISDICTIONAL and PARTY ALLEGATIONS

1.       Pursuant to 28 U.S.C. 1332, the diversity subject matter of this case arises from a combined $2,400,000 mortgage fraud perpetrated by Defendants, all domiciled and operating in the State of New Jersey, and of whom orchestrated the fraud causing damages to Plaintiffs, whose sole member is a resident of the State of New York.

2.       Pursuant to 18 U.S.C. 1964, the subject matter of this case arises from Defendants fraud and conversion of property exceeding the value of $2,400,000 through acts of racketeering orchestrated as an enterprise operating in interstate commerce following a pattern of the same or similar criminal acts committed against Plaintiffs and others.

3.       At all times material to this lawsuit, Plaintiffs, Shlomo Braun (referred to as "Plaintiff Rabbi Braun"), 1567 56th Street, LLC and 1569 56th Street, LLC (referred to together as collectively "Plaintiffs") are domiciled or located in Brooklyn, New York, County of Kings.

4.       At all times material to this lawsuit, the defendant Arthur Spitzer ("Defendant Spitzer") is domiciled at 2370 Forest Circle in the Township of Toms River in the State of New Jersey.

5.       At all times material to this lawsuit, the defendant Josh Weinfeld ("Defendant Weinfeld") is domiciled at 54 Gudz Road in the Township of Lakewood in the State of New Jersey.

6.       At all times material to this lawsuit, the defendant Isidore Bleier ("Defendant Bleier") is domiciled at 10 Teaberry Court in the Township of Lakewood in the State of New Jersey with a secondary address as New Jersey as 213 2nd Street, Lakewood, New Jersey. (Client Provided, Exhibit 4).

7.      At all times material to this lawsuit, the defendant BSD Realty Holdings Inc. ("Defendant BSD") is a corporation in the State of New Jersey with an address located at 123 Bayview Avenue, in the City of Jersey City in the State of New Jersey. (Exhibit 5

8.      At all times material to this lawsuit, the defendant 1567 56 NY LLC, is a corporation in the State of New York and its sole member is domiciled at 2370 Forest Circle in the Township of Toms River in the State of New Jersey.

9.      At all times material to this lawsuit, the defendant Dekel Abstract LLC ("Defendant Dekel") is a corporation in the State of New Jersey with an address located at 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

10.     At all times material to this lawsuit, the defendant Abraham Teitelbaum ("Defendant Teitelbaum") is domiciled at 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

11.     At all times material to this lawsuit, the defendant Rosa Funding LLC ("Defendant Rosa Funding") is registered with an address as 213 2nd Street in Lakewood of the State of New Jersey and works as a consortium between Defendant Weinfeld and Defendant Bleier.  The business operation of Defendant Rosa Funding is located at 485 Oak Glen Road in the Township of Howell in the State of New Jersey in the same office as Defendant Dekel.

12.     At all times material to this lawsuit, the defendant PS Funding, Inc. ("Defendant PS Funding") is a corporation in the State of Delaware located at Incorporating Services, Ltd. at 3500 S Dupont Hwy in the City of Dover in the State of Delaware.

13.     At all times material to this lawsuit, the defendant Jehuda Weisz ("Defendant Weisz") is domiciled at 1303 Hickory Street in Toms River in the State of New Jersey.

14.     Upon information and belief, each individual defendant is a citizen of the United States.  The bases for this belief are derived from the facts of this case, by virtue of the corporation such defendant owns, the license such person holds, the manner of real estate that was handled by each defendant, or the manner the processing of mortgage documents that was handled by each defendant.

15.     The acts necessary or precedent to bringing this lawsuit were calculated to swindle and defraud a resident of the State of New York.

16.     Pursuant to N.Y. Real Prop. Acts. Law § 1515[b] it appears from the public records and from the allegations set forth in this third amended complaint that the defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, 1567 56 NY LLC, Defendant BSD, Defendant Rosa Funding, and Defendant PS Funding, claims, or might claim, an interest in the real property, adverse to the interest of the Plaintiffs.  The nature of such claims as delineated below appears from the title belonging to 1567 56th Street, LLC and 1569 56th Street, LLC that were fraudulently transferred to 1567 56 NY LLC and from the mortgages that Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding, Inc., falsely claiming to be secured lenders on the properties belonging to 1567 56th Street, LLC and 1569 56th Street, LLC.

17.     Pursuant to N.Y. Real Prop. Acts. Law § 1515[c] Plaintiffs do not have sufficient knowledge to state whether any of the defendants are mentally retarded, mentally ill or an alcohol abuser, but upon information and belief no Defendant is an infant.

18.     Pursuant to N.Y. Real Prop. Acts. Law § 1515[d] Plaintiffs have named all known parties who might claim an interest in this action.

19.     At all relevant times, Plaintiffs are unaware about other individuals or corporations involved in the underlying swindle that should be named as a party.

20.     This Court has full jurisdiction.

**RELEVANT FACTS**

21.     At all relevant times, Plaintiff Rabbi Braun was above the age of 70.

22.     Plaintiff Rabbi Braun has had title to two adjacent properties going back to the 1970s and held together with his late wife.  These properties are addressed as 1567 56th Street ("67 Property") and 1569 56th Street ("69 Property"), in Brooklyn, NY.

23.     These two properties, right next to each other, are the primary residence of Plaintiff Rabbi Braun and several of his immediate family members.

24.     Plaintiff Rabbi Braun is the sole member of Plaintiff 1567 56th Street LLC (the "Plaintiff 67 LLC").

25.     Plaintiff Rabbi Braun is the sole member of Plaintiff 1569 56th Street LLC (the "Plaintiff 69 LLC").

## I.  The 69 Property

26.     On February 2, 2014, Plaintiff 69 LLC received from Plaintiff Rabbi Braun clear title and ownership to the property addressed as 1569 56th Street ("69 Property") located in Brooklyn, New York, County of Kings, which grant is registered with the City Register as CRFN 2014000057977.

27.     The 69 Property is described at the City Registrar under Block 5488 and Lot number 49 with the following description:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, City of New York, bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 100 feet

westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue; RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches; THENCE westerly parallel with 56th Street, 20 feet; THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING. NOTE: Being Lot(s) Lot: 49, Block: 5488; Tax Map of the Borough of Brooklyn, County of Kings, State of New York. NOTE: Lot and Block shown for informational purposes only.

28.     On June 15, 2016, Plaintiff 69 LLC granted the Plaintiff 67 LLC, 60% of the title and ownership to the property addressed as 1569 56th Street (the "69 Property") located in Brooklyn, New York, County of Kings registered with the City Register as CRFN 2016000221114.

29.     The 69 Property is described at the City Registrar under Block 5488 and Lot number 49 with the following description:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, City of New York, bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th A venue; RUNNING THENCE northerly parallel with 16th A venue 100 feet 2 inches; THENCE westerly parallel with 56th Street, 20 feet; THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING.

30.     At all relevant times, the Plaintiff 67 LLC together with the Plaintiff 69 LLC had title to the 69 Property clear from any defects.

31.     At all relevant times, there were no encumbrances on the 69 Property.

## II.    The 67 Property

32.     On August 4, 2014, the Plaintiff 67 LLC received from Plaintiff Rabbi Braun clear title and ownership to the property with an address known as 1567 56th Street (the "67

Property") located in Brooklyn New York, County of Kings registered with the City Register as

CRFN 2014000313033.

33.     The 67 Property is described at the City Registrar under Block 5488 and

Lot 50 with the following description:

> ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, known as Block 5, Lot 221 on map entitled, "Map No. 1 of 918 lots. Cowenhoven Farm, New Utrecht, drawn by B.L. Williams, C.E., November 1890 fled July 17, 1891 as Map No. 1013 and which said lot, according to said map is bounded and described as follows: BEGINNING at a point on the northerly side of 56th Street, distant 120 feet westerly from the corner formed by the intersection of the northerly side of 56th Street and the westerly side of 16th Avenue; RUNNING THENCE northerly parallel with 16th Avenue and part of the distance through a party wall, 100 feet 2 inches; THENCE westerly parallel with 56th Street 20 feet; THENCE southerly parallel with 16th Avenue, 100 feet 2 inches to the northerly side of 56th Street; THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING. SAID PREMISES KNOWN AS 1567 56th Street, BROOKLYN, N.Y.

34.     At all relevant times, the Plaintiff 67 LLC has had clear title to the 67

Property.

35.     At all relevant times, there were no encumbrances on the 67 Property.

## III.     **The Conversion**

36.     On August 20, 2019, Arthur Spitzer ("Defendant Spitzer") created

Defendant 1567 56 NY LLC, a sham entity in which he is listed as its sole member (the "Defendant

Sham LLC").

37.     Defendant Spitzer created the Defendant Sham LLC without knowledge of

the Plaintiffs.

38.     The Sham LLC served as the vehicle to take title to the 67 Property and 69

Property through forgery and encumber title, without knowledge and consent from Plaintiffs.

39.     The Sham LLC also has a similar name as the Plaintiffs entities to disguise itself as being the same entity as Plaintiffs and defraud mail involving Plaintiffs as belonging to Defendant Sham LLC.

## IV.     The Forgery of Title to the 67 Property

40.     At some point in 2019, Defendant Spitzer, with the assistance of one or more of the other Defendants, forged the signature of Plaintiff Rabbi Braun to transfer the title of the 67 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

41.     The purported deed dated August 20, 2019, as the transfer of title of the 67 Property, was a forgery without the consent from Plaintiff Rabbi Braun ("67 Forgery").

42.     Defendant Weisz notarized the forged signature of Plaintiff Rabbi Braun transferring title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

43.     At all relevant times, Plaintiff Rabbi Braun never appeared before Defendant Weisz for any notary services.

44.     At all relevant times, Plaintiff Rabbi Braun did not request any notarization services from Defendant Weisz.

45.     The transfer of title of the 67 Property to the Defendant Sham LLC is registered in the City Register as CRFN 2019000306591.

46.     Defendant Dekel and Defendant Teitelbaum performed the transfer of title of the 67 Property.

47.     At all relevant times, Defendant Weisz was an associate of Defendant Dekel.

48.     Utilizing the umbrella of Defendant Rosa Funding LLC, Defendant Weinfeld and Defendant Bleier created an instrument, dated August 27, 2019, encumbering the 67

Property with a mortgage for $1,200,000 that was registered with the City Register as CRFN 2019000306592.

49.     On September 23, 2019, the fraudulent deed and mortgage of the 67 Property was recorded by Defendant Dekel and Defendant Teitelbaum.  Defendant Dekel and Defendant Teitelbaum also submitted an assignment of a mortgage from Defendant Rosa Funding to Defendant PS Funding upon the 67 Property registered with the City Register as CRFN 2019000306592.

50.     At all relevant times, there was no contract of sale for the 67 Property by either Plaintiff 67 LLC or Plaintiff Rabbi Braun.

51.     At all relevant times, there was no closing on the 67 Property where either Plaintiff Rabbi Braun or Plaintiff 67 LLC were participants prior to Defendant Rosa Funding encumbering the 67 Property registered with the City Register as CRFN 2019000306591, 2019000306592 and 2019000306593.

52.     Neither Plaintiff 67 LLC nor Plaintiff Rabbi Braun received any consideration for the transfer of title of the 67 Property to the Defendant Sham LLC.

53.     Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC gifted the 67 Property to either Defendant Spitzer or the Defendant Sham LLC.

54.     Neither of the Defendants performed the due diligence to ascertain the legitimacy for transferring title to the 67 Property for no consideration and simultaneously encumbering the 67 Property with a mortgage of $1,200,000.

55.     On February 9, 2021, Hugh Humphreys, the director of Asset Management for Defendant PS Funding Inc., wrote an email (from hhumphreys@peerstreet.com) to Defendant Spitzer stating that:

Good Afternoon.  Looks like a Braun Shlomo is owner of 1567 and 1569 56th.
Who knew!
I'm going through the motions, but:
Please let me know the nature of these transfers.  I'm sure you know that is a
default under the loan documents.

56. By an action commenced on February 18, 2021, Defendant PS Funding is attempting to foreclose upon the 67 Property by suing the Defendant Sham LLC, ARTHUR SPITZER, NEW YORK CITY – DEPARTMENT OF FINANCE, and JANE/JOHN DOE Nos. 1- 12, in the Supreme Court of Kings County under 503948/2021. ("67 Foreclosure").

57. At all relevant times, despite having actual knowledge that Plaintiff Rabbi Braun registered title to himself, Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC as a party to the 67 Foreclosure.

58. Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC regarding the 67 Foreclosure.

59. Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC in the 67 Foreclosure in furtherance of a sophisticated scam to execute a judgment of foreclosure against the 67 Property without Plaintiff Rabbi Braun or Plaintiff 67 LLC having any due process to challenge such illegitimate foreclosure. This statement is verifiable from statements made by counsel for Defendant PS Funding in open court.

60. Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC regarding the 69 Foreclosure.

61. At all relevant times, Defendant PS Funding did not deliver notice to Plaintiff Rabbi Braun as required under N.Y. Real Prop. Acts. Law § 1303 within 10 days of commencing the 67 Foreclosure.

62. Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC any notice regarding the 67 Foreclosure.

## V.     The Forgery of Title to the 69 Property

63.     At some point in 2019, Defendant Spitzer, with the assistance of one or more of the other Defendants, forged the signature of Plaintiff Rabbi Braun to transfer the title of 69 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

64.     The purported deed dated August 20, 2019, as the transfer of title of the 69 Property, was a forgery without the consent from Plaintiff Rabbi Braun ("69 Forgery").

65.     Defendant Weisz notarized the forged signature of Plaintiff Rabbi Braun transferring title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

66.     At all relevant times, Plaintiff Rabbi Braun never appeared before Defendant Weisz for any notary services.

67.     At all relevant times, Plaintiff Rabbi Braun did not request any notarization services from Defendant Weisz.

68.     The transfer of title of the 69 Property to the Defendant Sham LLC is registered in the City Register as CRFN 2019000306603.

69.     Defendant Dekel and Defendant Teitelbaum performed the transfer of title of the 69 Property.

70.     At all relevant times, Defendant Weisz was an associate of Defendant Dekel.

71.     Utilizing the umbrella of Defendant Rosa Funding LLC, Defendant Weinfeld and Defendant Bleier created an instrument, dated August 29, 2019, encumbering the 69 Property with a mortgage for $1,200,000 that was registered with the City Register as CRFN 2019000306604.

72.     On September 23, 2019, the fraudulent deed and mortgage of the 69 Property was recorded by Defendant Dekel and Defendant Teitelbaum.  Defendant Dekel and

Defendant Teitelbaum also submitted an assignment of the mortgage from Defendant Rosa Funding to Defendant PS Funding upon the 69 Property registered with the City Register as CRFN 2019000306605.

73.     At all relevant times, there was no contract of sale for the 69 Property by either Plaintiff 69 LLC, Plaintiff 67 LLC or Plaintiff Rabbi Braun.

74.     At all relevant times, there was no closing on the 69 Property where either Plaintiff Rabbi Braun, Plaintiff 67 LLC or Plaintiff 69 LLC were participants prior to Defendant Rosa Funding encumbering the 69 Property registered with the City Register as CRFN 2019000306603, 2019000306604 and 2019000306605.

75.     Neither Plaintiff received any consideration for the transfer of title of the 69 Property to the Defendant Sham LLC.

76.     Neither Plaintiff gifted the 69 Property to either Defendant Spitzer or the Defendant Sham LLC.

77.     Neither of the Defendants performed the due diligence to ascertain the legitimacy for transferring title to the 67 Property for no consideration and simultaneously encumbering the 67 Property with a mortgage of $1,200,000.

78.     On February 9, 2021, Hugh Humphreys, the director of Asset Management for Defendant PS Funding Inc., wrote an email (from hhumphreys@peerstreet.com) to Defendant Spitzer stating that:

> Good Afternoon.  Looks like a Braun Shlomo is owner of 1567 and 1569 56th.
> Who knew!
> I'm going through the motions, but:
> Please let me know the nature of these transfers.  I'm sure you know that is a
> default under the loan documents.

79.     By an action commenced on February 15, 2021, Defendant PS Funding is attempting to foreclose upon the 69 Property by suing the Defendant Sham LLC, ARTHUR SPITZER, NEW YORK CITY – DEPARTMENT OF FINANCE, and JANE/JOHN DOE Nos. 1-12, in the Supreme Court of Kings County under 503623/2021. ("69 Foreclosure").

80.     At all relevant times, despite having actual knowledge that Plaintiff Rabbi Braun registered title to himself, Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC as a party to the 69 Foreclosure.

81.     Defendant PS Funding did not name Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC in the 69 Foreclosure in furtherance of a willful attempt to execute a judgment of foreclosure against the 69 Property without Plaintiff Rabbi Braun or Plaintiff 67 LLC or Plaintiff 69 LLC having any due process to challenge such illegitimate foreclosure.  This statement is verifiable from statements made by counsel for Defendant PS Funding in open court.

82.     At all relevant times, Defendant PS Funding did not deliver notice to any tenant of the 69 Property as required under N.Y. Real Prop. Acts. Law § 1303 within 10 days of commencing the 69 Foreclosure.

83.     Defendant PS Funding did not serve Plaintiff Rabbi Braun or Plaintiff 67 LLC any notice regarding the 67 Foreclosure.


**FIRST CLAIM FOR RELIEF**
Recovery of Title to the 67 Property

84.     Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 83, for relief against Defendant Spitzer and the Defendant Sham LLC requesting declaratory relief and injunctive relief to quiet title, and money damages

pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

85.     Diversity jurisdiction exists for this claim for relief, (i) since the 67 Property value involved exceed the threshold of $75,000; (ii) since Defendant Spitzer individually and as the sole member of Defendant Sham LLC is domiciled outside the State of New York, as delineated *supra* in ¶¶ 4 and 14, and (iii) all of the plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

86.     A live controversy exists begging to resolve that the transfer of the title of the 67 Property to the Defendant Sham LLC is void ab initio.

87.     At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC gifted or transferred the 67 Property to anyone.

88.     At all relevant times, Plaintiff Rabbi Braun is in actual possession of the 67 Property for over 50 years.

89.     At all relevant times, Plaintiff Rabbi Braun and Plaintiff 67 LLC did not relinquish their possession of true title to the 67 Property.

90.     At all relevant times, Plaintiff 67 LLC did not sell the 67 Property to anyone.

91.     At all relevant times, Plaintiff 67 LLC did not receive any consideration for the transfer of the 67 Property to the Defendant Sham LLC.

92.     Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC conveyed title of the 67 Property to the Defendant Sham LLC.

93.     The title to the 67 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

94.     At all relevant times, Plaintiff 67 LLC's possession of the title in the 67 Property is superior to that of Defendant Spitzer and the Defendant Sham LLC.

95.     Plaintiffs request judgment declaring that the transfer of the 67 Property to the Defendant Sham LLC is void ab initio with no legal affect.

96.     Plaintiffs request judgment directing the City Register to strike CRFN 2019000306591 the transfer of the 67 Property to the Defendant Sham LLC from the record of registered deeds.

97.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer and the Defendant Sham LLC from any claim to title of the 67 Property.

98.     The recording of the 67 Forgery with the City Register for Defendant Spitzer and the Defendant Sham LLC was a false communication, falsely casting doubt on the continuation of Plaintiff's Rabbi Braun and Plaintiff 67 LLC right to title and possession to the 67 Property, calculated to cause harm to Plaintiffs by encumbering the 67 Property with a mortgage for $1,200,000, and resulting in special damages both in the cloud of title to the 67 Property and the physical health of Plaintiff Rabbi Braun. As a direct result of the foregoing deliberate acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 67 Property was slandered.

99.     As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 67 LLC suffered damages.

100.    Plaintiff Rabbi Braun and Plaintiff 67 LLC requests a money judgment for the injuries incurred by the slander of title.

101.    Plaintiff Rabbi Braun requests a money judgment for the personal injuries and emotional distress caused to him.

102.    Plaintiff Rabbi Braun and Plaintiff 67 LLC has no other adequate remedy at law available to redress and remedy this controversy for relief.

## SECOND CLAIM FOR RELIEF
### Recovery of Title of the 69 Property

103.    Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 102, for relief against Defendant Spitzer and the Defendant Sham LLC requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

104.    Diversity jurisdiction exists for this claim for relief, (i) since the 69 Property value involved exceed the threshold of $75,000; (ii) since Defendant Spitzer by himself and as the sole member of Defendant Sham LLC is domiciled outside the State of New York, as delineated supra in ¶¶ 4 and 14, and (iii) all of the plaintiffs are domiciled or located in the State of New York, as delineated supra in ¶ 3.

105.    A live controversy exists begging to resolve that the transfer of the title of the 69 Property to the Defendant Sham LLC is void ab initio.

106.    At all relevant times, neither Plaintiff gifted nor transferred the 69 Property to anyone.

107.    At all relevant times, Plaintiff Rabbi Braun is in actual possession of the 69 Property.

108.    At all relevant times, neither Plaintiff relinquished their possession of true title to the 69 Property.

109.    At all relevant times, Plaintiffs did not sell the 69 Property to anyone.

110.     At all relevant times, Plaintiffs did not receive any consideration for the transfer of the 69 Property to the Defendant Sham LLC.

111.     Neither Plaintiff Rabbi Braun nor Plaintiff 69 LLC or Plaintiff 67 LLC conveyed title of the 69 Property to the Defendant Sham LLC.

112.     The title to the 69 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

113.     At all relevant times, Plaintiff 69 LLC and Plaintiff 67 LLC's right to title in the 69 Property is superior to that of Defendant Spitzer and the Defendant Sham LLC.

114.     Plaintiffs request judgment declaring that the transfer of the 69 Property to the Defendant Sham LLC is void ab initio with no legal effect.

115.     Plaintiffs request judgment directing the City Register to strike CRFN 2019000306603 the transfer of the 69 Property to the Defendant Sham LLC from the record of registered deeds.

116.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer and the Defendant Sham LLC from any claim to title of the 69 Property.

117.     The recording of the 69 Forgery with the City Register for Defendant Spitzer and the Defendant Sham LLC was a false communication, falsely casting doubt on the continuation of Plaintiffs right to title and possession to the 69 Property, calculated to cause harm to Plaintiffs by encumbering the 69 Property with a mortgage for $1,200,000, and resulting in special damages both in the cloud of title to the 69 Property and the physical health of Plaintiff Rabbi Braun. As a direct result of the foregoing deliberate acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 69 Property was slandered.

118.     As a direct result of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiffs suffered damages.

119.     Plaintiff requests a money judgment for the injuries incurred by the slander of title.

120.     Plaintiff Rabbi Braun requests a money judgment for the personal injuries and emotional distress caused to him.

121.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## THIRD CLAIM FOR RELIEF
### Striking the Mortgage of the 67 Property

122.     Plaintiff 67 LLC and Plaintiff Rabbi Braun incorporates herein all the allegations stated in paragraphs 1 to 121, for relief against Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

123.     Diversity jurisdiction exists for this claim for relief, (i) since the 67 Property involved exceed the threshold value of $75,000; (ii) since Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant BSD, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding are domiciled or addressed outside the State of New York as delineated *supra* in ¶¶ 4 through 14; and (iii) all of the Plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

124.     A live controversy exists begging to resolve that the mortgage on the 67 Property is void ab initio.

125.     On August 27, 2019, at the time Defendants created the mortgage on the 67 Property, each Defendant knew or should have known that the Plaintiff 67 LLC did not deed the 67 Property to the Defendant Sham LLC by virtue that the 67 Forgery was not yet registered with the City Register.  Each Defendant had the duty to inquire into the circumstances of the transaction involving the 67 Forgery, (*i.e.,* to require a closing before issuing a mortgage on an unregistered deed or ascertain the circumstances as to why Plaintiffs would give away title to valuable properties to a stranger). Each Defendant did not make such an inquiry.  As such, no Defendant can claim to be an innocent purchaser for value.

126.     At all relevant times, Plaintiff Rabbi Braun is in actual possession of the 67 Property.

127.     At all relevant times, Plaintiff 67 LLC did not relinquish its possession of true title to the 67 Property.

128.     At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC gifted the 67 Property to anyone or any entity.

129.     At all relevant times, Plaintiff 67 LLC did not sell the 67 Property to anyone or any entity.

130.     At all relevant times, Plaintiff 67 LLC did not receive any consideration for the transfer of the 67 Property to the Defendant Sham LLC.

131.     As such, neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC conveyed title of the 67 Property to the Defendant Sham LLC.

132.     Defendant PS Funding presents itself as the holder of the mortgage on the 67 Property arising from the 67 Forgery.

133.     Defendant Rosa Funding presents itself as the originator of the mortgage on the 67 Property arising from the 67 Forgery.

134.     Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz present themselves as the title agent of the mortgage on the 67 Property arising from the 67 Forgery.

135.     The title to the 67 Property was fraudulently transferred to the Defendant Sham LLC using forged signatures of Plaintiff Rabbi Braun.

136.     At all relevant times, Plaintiff 67 LLC's right to title of the 67 Property is superior to that of any of the Defendants.

137.     Plaintiffs request judgment declaring that the encumbrances of the 67 Property created by the Defendant Sham LLC and Defendant Rosa Funding are void ab initio with no legal effect.

138.     Plaintiffs request judgment directing the City Register to strike CRFN 2019000306592 and 2019000306593 the encumbrance of the 67 Property to the Defendant Sham LLC from the record of registered mortgages.

139.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, Defendant PS Funding, Inc., Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz from any claim of title to the 67 Property.

140.     The recording of the 67 Forgery with the City Register by Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz for Defendant Spitzer and the Defendant Sham LLC was a false communication, falsely casting doubt on the continuation of Plaintiff's Rabbi Braun

and Plaintiff 67 LLC right to title to the 67 Property, calculated to cause harm to Plaintiffs by encumbering the 67 Property with a mortgage for $1,200,000 originated by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding, and funded by Defendant PS Funding without authorization of Plaintiffs, and resulting in special damages both in the cloud of title to the 67 Property and the physical health of Plaintiff Rabbi Braun. As a direct result of the foregoing deliberate acts committed by Defendants, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 67 Property was slandered.

141.    As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

142.    As a direct of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun suffered physical damages and emotional distress.

143.    Plaintiffs request a money judgment for the injuries incurred by virtue of and encumbrance of the property with an invalid mortgage.

144.    Plaintiffs have no other adequate remedy at law available to redress and remedy this controversy for relief.

## FOURTH CLAIM FOR RELIEF
### Striking the Mortgage of the 69 Property

145.    Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 144, for relief against Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding requesting declaratory relief and injunctive relief to quiet title, and money damages pursuant to Real Property Actions, Article 8, RPAPL Article 15, and Real Property Actions and Proceedings Law of the State of New York.

146.     Diversity jurisdiction exists for this claim for relief, (i) since the 69 Property involved exceed the threshold value of $75,000; (ii) since Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant BSD, the Defendant Sham LLC, Defendant Rosa Funding LLC, and Defendant PS Funding are domiciled or addressed outside the State of New York as delineated *supra* in ¶¶ 4 through 14; and (iii) all of the Plaintiffs are domiciled or located in the State of New York, as delineated *supra* in ¶ 3.

147.     A live controversy exists begging to resolve that the mortgage on the 69 Property is void ab initio.

148.     On August 27, 2019, at the time Defendants created the mortgage on the 69 Property, each Defendant knew or should have known that the Plaintiff 67 LLC did not deed the 69 Property to the Defendant Sham LLC by virtue that the 69 Forgery was not yet registered with the City Register.  Each Defendant had the duty to inquire further into the circumstances of the transaction involving the 69 Forgery, (*i.e.,* to require a closing before issuing a mortgage on an unregistered deed or ascertain the circumstances as to why Plaintiffs would give away title to valuable properties). Each Defendant did not make such an inquiry.  As such, no Defendant can claim to be an innocent purchaser for value.

149.     At all relevant times, Plaintiff Rabbi Braun is in possession of the 69 Property.

150.     At all relevant times, Plaintiffs did not relinquish its possession of true title to the 69 Property.

151.     At all relevant times, neither Plaintiff Rabbi Braun nor Plaintiff 69 LLC nor Plaintiff 67 LLC gifted the 69 Property to anyone or any entity.

152. At all relevant times, Plaintiffs did not sell the 69 Property to anyone or any entity.

153. At all relevant times, Plaintiffs did not receive any consideration for the transfer of the 69 Property to the Defendant Sham LLC.

154. Neither Plaintiff conveyed title of the 69 Property to the Defendant Sham LLC.

155. Defendant PS Funding presents itself as the holder of the mortgage on the 69 Property arising from the 69 Forgery.

156. Defendant Rosa Funding presents itself as the originator of the mortgage on the 69 Property arising from the 69 Forgery.

157. Defendant Dekel, Defendant Teitelbaum and Defendant Weisz present themselves as the title agent of the mortgage on the 69 Property arising from the 69 Forgery.

158. The title to the 69 Property was fraudulently transferred to Plaintiff 67 LLC utilizing the forged signatures of Plaintiff Rabbi Braun.

159. At all relevant times, Plaintiffs right to title in the 69 Property is superior to that of any of the Defendants.

160. Plaintiffs request judgment declaring that the encumbrances of the 69 Property created by the Defendant Sham LLC and Defendant Rosa Funding are void ab initio with no legal effect.

161. Plaintiffs request judgment directing the City Register to strike CRFN 2019000306604 and 2019000306605 the encumbrance of the 69 Property to the Defendant Sham LLC from the record of registered mortgages.

162.     Plaintiffs request judgment pursuant FRCP 70(b) divesting Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, 1567 56 NY LLC, Defendant Rosa Funding LLC, Defendant PS Funding Inc., Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz from any claim of title to the 69 Property.

163.     The recording of the 69 Forgery with the City Register by Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz for Defendant Spitzer and the Defendant Sham LLC was a false communication, falsely casting doubt on the continuation of Plaintiff's Rabbi Braun and Plaintiff 67 LLC right to title to the 69 Property, calculated to cause harm to Plaintiffs by encumbering the 69 Property with a mortgage for $1,200,000 originated by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding and funded by Defendant PS Funding without authorization of Plaintiffs, and resulting in special damages both in recovery of title to the 69 Property and the physical health of Plaintiff Rabbi Braun. As a direct result of the foregoing deliberate acts committed by Defendants, Plaintiff Rabbi Braun and Plaintiff 67 LLC's right to clean title of the 69 Property was slandered.

164.     As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

165.     As a direct of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun suffered physical health damages.

166.     Plaintiffs request a money judgment for the injuries incurred by virtue of and encumbrance of the property with an invalid mortgage.

167.     Plaintiffs have no other adequate remedy at law available to redress and remedy this controversy for relief.

## FIFTH CLAIM FOR RELIEF

### Relief Against Notary for the Deed Forgery of the 67 Property

168.    Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 167, for relief against Defendant Weisz requesting money damages for each remedy available at law.

169.    N.Y. Exec. Law § 135 provides that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them."

170.    Defendant Weisz committed misconduct in notarizing the forged signatures of Plaintiff Rabbi Braun on the deeds transferring title for the 67 Property from Plaintiff 67 LLC to Defendant Sham LLC.

171.    The misconduct is confirmed by the fact that Plaintiff Rabbi Braun did not appear before Defendant Weisz nor requested any notary services from him.

172.    As a direct result, Defendant Weisz is individually liable for all damages sustained by Plaintiff Rabbi Braun and Plaintiff 67 LLC.

## SIXTH CLAIM FOR RELIEF

### Relief Against Notary for the Deed Forgery of the 69 Property

173.    Plaintiffs incorporate herein all the allegations stated in paragraphs 1 to 172, for relief against Defendant Weisz requesting money damages for each remedy available at law.

174.    N.Y. Exec. Law § 135 provides that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them."

175.     Defendant Weisz committed misconduct in notarizing the forged signatures of Plaintiff Rabbi Braun on the deeds transferring title to the 69 Property from Plaintiff 67 LLC to Defendant Sham LLC.

176.     The misconduct is confirmed by the fact that Plaintiff Rabbi Braun did not appear before Defendant Weisz nor requested any notary services from him.

177.     As a direct result, Defendant Weisz is individually liable for all damages sustained by the Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
### Damages Against Title Agents for False Acknowledgement of the 67 Forgery

178.     Plaintiff Rabbi Braun and Plaintiff 67 LLC incorporates herein all the allegations stated in paragraphs 1 to 177, for relief against Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz requesting money damages for each remedy available at law.

179.     N.Y. Real Prop. Law § 330 provides that "An officer authorized to take the acknowledgment or proof of a conveyance or other instrument, or to certify such proof or acknowledgment, or to record the same, who is guilty of malfeasance or fraudulent practice in the execution of any duty prescribed by law in relation thereto, is liable in damages to the person injured."

180.     Defendant Weisz breached Real Property Law § 303 and committed malfeasance or engaged in fraudulent practice in creating an acknowledgement of forged signatures of Plaintiff Rabbi Braun conveying title of real property for the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC in the absence of Plaintiff Rabbi Braun.

181.     The malfeasance or engagement in fraudulent practice is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any acknowledgement from Defendant Weisz.

182.     Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 67 Property without there being a corporate acknowledgment or resolution by a corporate officer on behalf of the Plaintiff 67 LLC.

183.     Defendant Dekel and Teitelbaum, holding themselves out to be a title insurance agent, committed malfeasance or engaged in fraudulent practice in registering instruments affecting real title on the 67 Property without doing any title search.  For instance, as delineated earlier, in 2016, Plaintiff 69 LLC transferred to the Plaintiff 67 LLC 60% of the title to the 69 Property and Plaintiff 69 LLC retained 40% title to the 69 Property.  It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the 69 Forgery transferred 100% of the title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC. Yet, the Plaintiff 67 LLC only held only 60% of the title, not 100%.  This omission by Defendant Teitelbaum and Defendant Dekel illustrates the fact that no title search was done at all on either the 67 Property or the 69 Property.  Since a title search of the 67 Property should have alerted the consciousness and awareness of Defendant Teitelbaum and Defendant Dekel that the Plaintiff 67 LLC did not grant any title to the 67 Property to anyone.  Defendant Teitelbaum with Defendant Dekel presented themselves as title insurance agents presented a false image as if they did a title search prior to encumbering the 67 Property.

184.     Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering the 67 Forgery together with a mortgage despite there being no closing in which Plaintiffs were present to commence such conveyance.

185.     Defendant Dekel and Defendant Teitelbaum committed malfeasance, or engaged in fraudulent practice, in registering the 67 Forgery together with a mortgage despite knowing that Plaintiff Rabbi Braun and the Plaintiff 67 LLC were still in possession as the owners of the 67 Property to such degree that Defendant Dekel and Defendant Teitelbaum knew or should have known that no conveyance was made by Plaintiff Rabbi Braun and the Plaintiff 67 LLC to Defendant Spitzer and the Defendant Sham LLC. The awareness arises from the facts that there was no closing on the 67 Property where Plaintiff Rabbi Braun and Plaintiff 67 LLC appeared, the fact that Defendant Dekel and Defendant Teitelbaum employ Defendant Weisz and failed to ascertain if Defendant Weisz had obtained proof of identity from Plaintiff Rabbi Braun prior to notarizing the 67 Forgery, and the fact that when distributing the mortgage on the 67 Forgery Defendant Teitelbaum and Defendant Dekel knew that neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC received any of the proceeds of such mortgage on the 67 Forgery.

186.     Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that there was no contract of sale on the 67 Property.

187.     In particular, at all relevant times, Defendant Teitelbaum was acquainted with Defendant Weisz, knowing that Defendant Weisz lives and works in Lakewood, New Jersey, and has no business or authority to notarize a deed by Plaintiff Rabbi Braun who resides and lives in Brooklyn. Defendant Teitelbaum knew that Defendant Weisz is an associate of Defendant Dekel

and should have known that Defendant Weisz did not travel to Brooklyn on August 20, 2019, by virtue that Defendant Weisz has appeared that day at work.

188.    As a direct result, Defendant Weisz is individually liable for damages sustained by the Plaintiff Rabbi Braun and Plaintiff 67 LLC.

189.    As a direct result, Defendant Dekel and Defendant Teitelbaum are jointly and severally liable for damages sustained by the Plaintiff Rabbi Braun and Plaintiff 67 LLC.

190.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## EIGHT CLAIM FOR RELIEF

Damages Against Title Agents for False Acknowledgement for the 69 Forgery

191.    Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 190, for relief against Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz requesting money damages for each remedy available at law.

192.    N.Y. Real Prop. Law § 330 provides that "An officer authorized to take the acknowledgment or proof of a conveyance or other instrument, or to certify such proof or acknowledgment, or to record the same, who is guilty of malfeasance or fraudulent practice in the execution of any duty prescribed by law in relation thereto, is liable in damages to the person injured."

193.    Defendant Weisz breached Real Property Law § 303 and committed malfeasance or engaged in fraudulent practice in creating an acknowledgement of forged signatures of Plaintiff Rabbi Braun conveying title of real property to the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC in the absence of Plaintiff Rabbi Braun.  The

malfeasance or engagement in fraudulent practice is confirmed by the fact that Plaintiff Rabbi Braun never appeared before Defendant Weisz nor requested any acknowledgement from him.

194.    Defendant Dekel and Defendant Teitelbaum committed malfeasance, or engaged in fraudulent practice, in registering instruments affecting real title on the 69 Property without there being a corporate acknowledgment or resolution by a corporate officer on behalf of the Plaintiff 67 LLC.

195.    Defendant Dekel and Teitelbaum, holding themselves out to be a title insurance agent, committed malfeasance, or engaged in fraudulent practice, in registering instruments affecting real title on the 69 Property without doing any title search.  For instance, as delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred to the Plaintiff 67 LLC 60% of the title to the 69 Property and Plaintiff 69 LLC retained 40% title to the 69 Property.  It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the forgery purportedly transferred 100% of the title of the 69 Property from the Plaintiff 67 LLC to the Defendant Sham LLC. Yet, the Plaintiff 67 LLC only held only 60% of the title, not 100%.  This omission by Defendant Teitelbaum and Defendant Dekel illustrates the fact that no title search was done at all on the 69 Property.   A title search of the 69 Property should have alerted the consciousness and awareness of Defendant Teitelbaum and Defendant Dekel that the Plaintiff 67 LLC did not grant any title to the 69 Property to anyone.  Defendant Teitelbaum with Defendant Dekel presented themselves as title insurance agents presented a false image as if they did a title search prior to encumbering the 69 Property.

196.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering the 69 Forgery together with a mortgage despite there being no closing in which Plaintiffs were present to commence such conveyance.

197.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that Plaintiff Rabbi Braun and the Plaintiff 67 LLC were still in possession as the owners of the 69 Property to such degree that Defendant Dekel and Defendant Teitelbaum knew or should have known that no conveyance was made by Plaintiff Rabbi Braun and the Plaintiff 67 LLC to Defendant Spitzer and the Defendant Sham LLC. The awareness arises from the facts that there was no closing on the 69 Property where Plaintiff Rabbi Braun and Plaintiff 67 LLC appeared, the fact that Defendant Dekel and Defendant Teitelbaum employ Defendant Weisz and failed to ascertain if Defendant Weisz had obtained proof of identity from Plaintiff Rabbi Braun prior to notarizing the 69 Forgery, and the fact that when distributing the mortgage on the 69 Forgery Defendant Teitelbaum and Defendant Dekel knew that neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC received any of the proceeds of such mortgages.

198.    Defendant Dekel and Defendant Teitelbaum committed malfeasance or engaged in fraudulent practice in registering a forged deed together with a mortgage despite knowing that there was no contract of sale on the 69 Property.

199.    In particular, at all relevant times, Defendant Teitelbaum was acquainted with Defendant Weisz, knowing that Defendant Weisz lives and works in Lakewood, New Jersey, and has no business or authority to notarize a deed by Plaintiff Rabbi Braun who resides and lives in Brooklyn. Defendant Teitelbaum knew that Defendant Weisz is an associate of Defendant Dekel and should have known that Defendant Weisz did not travel to Brooklyn on August 20, 2019, by virtue that Defendant Weisz has appeared that day at work.

200.    As a direct result, Defendant Weisz is individually liable for damages sustained by the Plaintiffs.

201.     As a direct result, Defendant Dekel and Defendant Teitelbaum are jointly and severally liable for damages sustained by the Plaintiffs.

202.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## NINTH CLAIM FOR RELIEF
### Civil Conspiracy Against All Defendants

203.     Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 202, pleading for relief against all the Defendants—with each Plaintiff pleading for relief as appropriate in its own respect—requesting money damages and treble damages for each remedy available at state law, including, as a tort for civil conspiracy to convert property—as well to commit fraud.

204.     As delineated above in greater detail, Plaintiffs 67 LLC and 69 LLC have a superior right to the 69 Property.  Plaintiffs 67 LLC has a superior right to the 67 Property.  Plaintiff Rabbi Braun owned title to each of these properties going back to the 1970s.  On February 2, 2014, Plaintiff 69 LLC received clear title to the 69 Property.   On June 15, 2016, the Plaintiff 69 LLC transferred 60% interest of the title of the 69 Property to the Plaintiff 67 LLC.  On August 4, 2014, Plaintiff 67 LLC received clear title to the 67 Property.  At all relevant times, Plaintiff Rabbi Braun was the sole member of the Plaintiff 67 LLC and Plaintiff 69 LLC.  As such Plaintiff Rabbi Braun also has a superior right to the 67 Property and the 69 Property.  At all relevant times, neither the 67 Property nor the 69 Property had any encumbrances.

205.     In particular, the 67 Property and the 69 Property are the primary residences of Plaintiff Rabbi Braun and the primary residence of several immediate family members of Plaintiff Rabbi Braun.  These family members bring joy and comfort to Plaintiff Rabbi Braun

having them close to his home.  As such Plaintiff Rabbi Braun has a possessory right to the 67 Property and the 69 Property.

206.     At all relevant times, neither Defendant Spitzer nor the Defendant Sham LLC had any contract of sale nor any agreement with the Plaintiffs to receive title for the 67 Property or the 69 Property.

207.     On or about August 20, 2019, Defendant Spitzer exercised dominion over the Plaintiffs' title to the 67 Property and 69 Property by fabricating the 67 Forgery for the 67 Property and fabricating the 69 Forgery for the 69 Property, purporting that the Defendant Sham LLC received title to these properties in derogation of Plaintiffs respective right to enjoy title to the 67 Property and the 69 Property.  Thus, interfering with Plaintiffs respective rights to title to the 67 Property and the 69 Property.

208.     The 67 Forgery and the 69 Forgery identically represented falsely that, (i) Plaintiff Rabbi Braun and the Plaintiff 67 LLC "in consideration of ten dollars and other valuable consideration paid by [the Defendant Sham LLC] … grant[ed] and release[ed]" to the Defendant Sham LLC forever all "plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being" of the 67 Property and the 69 Property, (ii) the Plaintiff 67 LLC gives up "all right, title and interest" in any part attached to the 67 Property and the 69 Property, and (iii) each of the 67 Forgery and 69 Forgery bore forged signatures of Plaintiff Rabbi Braun. Meanwhile, each of these representations, in addition to the forgeries, in the 67 Forgery and 69 Forgery were false:

    a.    At all relevant times, neither Plaintiff Rabbi Braun nor the Plaintiff 67 LLC granted title to the Defendant Spitzer and Defendant Sham LLC.

    b.    Neither Plaintiff Rabbi Braun nor the Plaintiff 67 LLC received any consideration from Defendant Spitzer or Defendant Sham LLC to convey title of the 67 Property and 69 Property.

       c.      Plaintiff Rabbi Braun did not sign either of the 67 Forgery or the 69 Forgery manufactured by the Defendants.

       d.      Each of the signatures on the 67 Forgery and 69 Forgery, falsely purporting to be that of Plaintiff Rabbi Braun, were notarized by Defendant Weisz but at no time did Plaintiff Rabbi Braun appear before Defendant Weisz for any notary services; neither did Plaintiff Rabbi Braun ask Defendant Weisz to notarize these signatures falsely purporting to be signatures of Plaintiff Rabbi Braun.

209.      On or about February 25, 2020, Plaintiff Rabbi Braun learned about the fraudulent deed transfers.  Plaintiff Rabbi Braun made multiple demands of Defendant Spitzer by phone calls, demanding the return of title to the 67 Property and 69 Property and for the extinguishing of the mortgages by Defendant PS Funding.  Each time Defendant Spitzer profusely apologized to Plaintiff Rabbi Braun for the conversion, promising the return of title, insisting that he needed the approval of his superior Defendant Weinfeld.

210.      During that period of February 25, 2020, and onwards, Defendant Spitzer was seeking an innocent lender to refinance the mortgages on the 67 Property and 69 Property.  Defendant Spitzer was unable to achieve a refinance of the property due to Plaintiffs protest and demanding the return of title.   As a direct result, in order to pacify the Plaintiffs, on March 25, 2020, Defendant Spitzer forwarded to Plaintiffs two satisfaction of mortgages as executed by Defendant PS Funding, purportedly satisfying the mortgages on the 67 Property and 69 Property.  Over the period between March to November 2020, Defendant Spitzer would disclaim that the satisfaction of mortgages was not filed due to the government shutdowns that came with the pandemic of Covid-19.

211.      Rabbi Braun had a genuine fear that Arthur Spitzer was looking to refinance the mortgages on the 67 Forgery and 69 Forgery, either with Defendant PS Funding or a different lender.  The fear was based on the fact that the maturity dates for the mortgages on the 67 Property and 69 Property was September 1, 2020.  A refinancing by Defendant Spitzer of the 67 Property

or the 69 Property stood to complicate Plaintiffs struggle in restoring the genuineness of title to Plaintiffs and injure any third party who would do such refinancing.

212.    Frustrated by the game of Defendant Spitzer, on November 5, 2020, Plaintiff Rabbi Braun protested the conversion of title and registered title of the 67 Property and 69 Property in his own name to let the world know that Defendants 1567 56 NY LLC and Arthur Spitzer are not genuine owners of the 67 Property and 69 Property.

213.    Nonetheless, in response to Defendant Spitzer's assertion that he needs the approval of Defendant Weinfeld, over a period from November 2020 through mid-2022, Plaintiff Rabbi Braun interacted with Defendant Weinfeld and explained to Defendant Weinfeld that he is a victim of title fraud, asking that the mortgages on the 67 Property and the 69 Property be extinguished and title to the 67 Property and 69 Property returned to him unencumbered.

214.    The first meeting between Plaintiff Rabbi Braun and Defendant Weinfeld took place, on November 12, 2020, after 11:00 a.m., at the actual office of Defendant Rosa Funding which happens to be the same office of Defendant Dekel, at the address listed above in paragraph ¶ 9. Defendant Weinfeld imparted the impression on Plaintiff Rabbi Braun as if he is serious about rectifying the wrong and promised Plaintiff Rabbi Braun that he would have Defendant Spitzer immediately return clean title to Plaintiffs.

215.    After a few weeks passed, as nothing progressed, on December 10, 2020, Plaintiff Rabbi Braun wrote to Defendant Weinfeld: "I came to see you four weeks ago, Has there been any progress in removing the loans from my properties?" to which Defendant Weinfeld replied, "Making progress." Plaintiff Rabbi Braun asked, "Last time you predicted it should be resolved in 30 days, what's your current estimate?" On December 31, 2020, Defendant Weinfeld replied, "We should have an answer in the beginning of January."

216.    On January 10, 2021, Plaintiff Rabbi Braun wrote to Defendant Weinfeld again: "Are we in the beginning of January already?" No response was received.

217.    On January 13, 2021, Plaintiff Rabbi Braun wrote to Defendant Weinfeld again: "Hellos Mr. Weinfeld, I came to see you eight weeks ago, has there been any progress in removing the loans from my properties?" Defendant Weinfeld replied, "Yes will be in touch friday [sic]." On January 15, 2021, Plaintiff Rabbi Braun asked, "Did you mean today or a different FRIDAY?" No response was received.

218.    On January 18, 2021, Plaintiff Rabbi Braun wrote again to Defendant Weinfeld: "Hello Mr. Weinfeld, I came to see you nine weeks ago, has there been any progress in removing the loans from my properties? Anxiously waiting for a positive reply." Defendant Weinfeld replied, "Out of town for a few days either way ushi [pet name for Defendant Spitzer] will pay them off but I'll let you know as soon as I know for sure."

219.    On January 25, 2021, Plaintiff Rabbi Braun wrote to Defendant Weinfeld again: "Hello Mr. Weinfeld, I came to see you almost nine weeks ago, has there been any progress in removing the loans from my properties? Anxiously waiting for a positive reply." No response was received.

220.    On January 29, 2021, Plaintiff Rabbi Braun wrote to Defendant Weinfeld again: "Hello Mr. Weinfeld, I came to see you exactly 11 weeks ago, has there been any progress in removing the loans from my properties? Anxiously waiting for a positive reply." No response was received. Thereafter, Plaintiff Rabbi Braun wrote to Defendant Weinfeld, "Last request, can I accept your silence as zero action?" Defendant Weinfeld replied, "No."

221.    After some lagging by Defendant Weinfeld and persistence by Plaintiff Rabbi Braun, Defendant Weinfeld wrote to Plaintiff Rabbi Braun, "Mr [Herman] Meisels will call

you this week." On April 23, 2021, Mr. Meisels wrote to Plaintiff Rabbi Braun, "last we spoke we waiting for shie [pet name for Defendant Weinfeld] to buy the note." In response, Plaintiff Rabbi Braun forwarded this message to Defendant Weinfeld asking for his feedback, and Defendant Weinfeld left the following voice note to Plaintiff Rabbi Braun:

Translation of audio in Yiddish mixed with some English from (732)664-1000 - 0:24 length

I spoke to him yesterday; we are working on it. I tell you that the note has no relevance. God willing it is going to be straightened out. Either way it is going be straightened out. We need to sit down, God willing, next week again, to ensure the source of the money, there is one hundred percent a plan present. I am away this week, and my father is now in the hospital.    Next week it is going to be straightened out exactly and we will start to make payments.

איך האב גערעדט מיט אים נעכטען מ'ארבייט דערויף. איך זאג איך אז די note האט נישט קיין שייכות. אם ירצה השם עס גייט זיין Either way גייט עס זיין מסודר.  עס איז דא א פלאן, מ'דארף זיך אראפ זעצן אם ירצה השם נעקסטע וואך נאכאמאל מאכען זיכער זען פון ווי די געלט גייט קומען, עס איז הונדערט פארצענט דא א פלאן. סא איך בין געווען אוועק די וואך, און מיין טאטע איז אין שפיטאל יעצט. נעקסטע וואך גייט מען עס מסדר זיין פונקטליך אין אנהייבען צו מאכען Payments.

222.    Following this message, sometime in May 2021, Plaintiff Rabbi Braun met with Defendant Weinfeld for a second time.  This time Plaintiff Rabbi Braun visited Defendant Weinfeld to pay respect and offer condolences on the passing of his father, Harry (Jehicel) Weinfeld.  While at the shiva, someone in attendance asked Plaintiff Rabbi Braun what his relationship were with the deceased, to which Defendant Weinfeld interposed that Plaintiff Rabbi Braun is going through a "שוּוערע מצב" ("difficult ordeal") and that he [Defendant Weinfeld] is helping Plaintiff Rabbi Braun.

223.    Thereafter, in August 2021, the promises morphed.  Defendant Weinfeld now promised to Plaintiff Rabbi Braun that he is working with Defendant Spitzer to first pay off one mortgage of the two properties to restore title to Plaintiffs, and Defendant Weinfeld promised

that afterwards he would work on restoring title to the second property of Plaintiffs.   (This statement by Defendant Weinfeld did not provide which property would be paid off first).

224.     As time went on, no progress was made by either Defendant Spitzer or Defendant Weinfeld to expunge the mortgages on 67 Property and 69 Property.  On March 8, 2022, Plaintiff Rabbi Braun met Defendant Weinfeld for a third time, at the actual office of Defendant Rosa Funding which happens to be the same office of Defendant Dekel, at the address listed above in paragraph ¶ 9.

225.     This time, the conversation morphed again, Defendant Weinfeld informed Plaintiff Rabbi Braun that Defendant Spitzer owes money to Defendant Weinfeld and Defendant Bleier, and repayment of that debt that takes precedence over the ordeal of Plaintiffs, and after Defendant Spitzer will satisfy the debts owed to Defendant Weinfeld and Defendant Bleier, Defendant Weinfeld would work with Defendant Spitzer to return title of the 67 Property and 69 Property to Plaintiffs.

226.     It was at the third meeting, Defendant Weinfeld mocked Plaintiff Rabbi Braun, telling him that he would need to buy back title to the 67 Property and 69 Property.

227.     Each of the foregoing representations by Defendant Weinfeld, made to Plaintiff Rabbi Braun, were riddled with false promises, in particular as neither Defendant Spitzer nor Defendant Weinfeld had any intention of mutually rectifying the wrongs and expunging the mortgages on the 67 Property and 69 Property.

228.     Nonetheless, Several factual elements were revealed to Plaintiffs through the foregoing efforts by Plaintiff Rabbi Braun to mutually expunge the mortgages arising from the 67 Forgery and 69 Forgery:

a.   Defendant Spitzer, in forging and encumbering title, is not a lone actor but works hand-in-hand with other groups of individuals and entities, who enable Defendant Spitzer.

b.   Defendant Spitzer is an associate of Defendant Weinfeld and Defendant Bleier.

c.   Defendant Weinfeld and Defendant Rosa together with Defendant Bleier operate in the same office as Defendant Dekel, Defendant Teitelbaum, and Defendant Weisz to such extent of being organized internally in all affairs in a concentrated scheme, while outwardly giving an appearance of being independent from each other.  For example, despite that the address of Defendant Rosa is registered at 213 2nd Street, Lakewood, New Jersey, the actual operation of Defendant Rosa is at 485 Oak Glen Road, Howell, New Jersey the same office and suite as Defendant Dekel wherein Defendant Teitelbaum and Defendant Weisz operate.

d.   Despite Defendant Spitzer being an associate of Defendant Weinfeld, Defendant Weinfeld would claim that Defendant Spitzer owes money to him and his partner Defendant Bleier.

229.   Conversion of property is a tort in the State of New York.  See *Westbury Recycling, Inc. v Westbury Transfer & Recycling*, *LLC*, 209 AD3d 929, 932 [2d Dept 2022].

230.   Defendants intentionally used the Defendant Sham LLC to take title to the 67 Property and the 69 Property without authority from Plaintiffs.  This is two counts of an act of conversion.

231.   Both the 67 Forgery and the 69 Forgery are dated August 20, 2019.  Neither of these deeds were filed with the City Register prior to September 23, 2019.  As such, any act taken by any Defendant prior to September 23, 2019, cannot rely on the proposition of being a bona fide encumbrancer.

232.   The Defendants conspired and collaborated by an overt act with Defendant Spitzer to commit an unlawful act of conversion or commit a series of lawful acts by unlawful means of conversion.  The following supports this allegation:

a.   There was no closing where either Plaintiffs participated in the transfer of title on the 67 Property and the 69 Property to the Sham LLC or Defendant Spitzer.

b.   On or about August 27, 2019, Defendant Rosa Funding knowingly originated the mortgages on the 67 Forgery and the 69 Forgery.

c.   Defendant PS Funding knowingly funded the mortgages created by Defendant Rosa Funding encumbering the forgery of title on the 67 Property and the 69 Property.

d.   Defendant Weinfeld as the agent for PS Funding agreed and created the documents for the mortgages on the 67 Forgery and the 69 Forgery.

e.   Defendant Bleier agreed and financially secured the mortgages created by Defendant Rosa Funding for the 67 Forgery and the 69 Forgery, as the partner guaranteeing the mortgages originated by Defendant Rosa Funding.  The security provided by Defendant Bleier was to satisfy an element common in the table funding business that the entity who originates a mortgage secures the mortgage for the first three months of its life, in the event the mortgage is recalled for whatever reason.

f.   Defendant BSD Realty accepted and redistributed to various different shell companies the funds generated on the mortgages from the 67 Forgery and the 69 Forgery.

g.   Defendant Sham LLC assumed its role in being the holder of 67 Forgery and 69 Forgery.

h.   Although registering a valid deed is a lawful act, registering a forged deed with the City Registering in itself is an unlawful act.

i.   Defendant Dekel agreed and used its access to the City Register, as a title insurance agent, to register the 67 Forgery and 69 Forgery with the City Register.

j.   Defendant Teitelbaum agreed and used his license as a title insurance agent to provide title insurance on the 67 Forgery and 69 Forgery.

k.   Defendant Weisz agreed and used its notary stamp to notarize the 67 Forgery and 69 Forgery.

l.   Defendant Rosa, Defendant Weinfeld, Defendant Bleier and Defendant PS Funding knowingly registered mortgages with the City Register despite knowing that such mortgage was based on the 67 Forgery and 69 Forgery.

233.   The Defendants intentionally committed each of the aforementioned overt acts to support an unlawful act of conversion advanced by the 67 Forgery and 69 Forgery.  The

following supports this allegation that each of the Defendants had the requisite knowledge and

agreement to take part in an act of conversion:

    a.   At all relevant times, Defendant Weinfeld and Defendant Bleier were agents for Defendant PS Funding. Defendant Weinfeld and Defendant Bleier were associates of Defendant Spitzer, guiding Defendant Spitzer on the art of conversion. Defendant Spitzer would repeatedly refer to Defendant Weinfeld as his superior and that he needed to consult with Defendant Weinfeld about returning title to Plaintiffs on the 67 Property and the 69 Property. As delineated above in paragraphs 209 through 228, Plaintiff Rabbi Braun met with Defendant Weinfeld, and at these meetings Defendant Weinfeld acknowledged having superiority over Defendant Spitzer.

    b.   At the time the mortgages were created by Defendant Rosa Funding and table funded by Defendant PS Funding, there was no record in the City Register transferring title from Plaintiff 67 LLC to the Defendant Sham LLC for the 67 Property and the 69 Property. The only reliance the Defendants had for creating the mortgages on the 67 Property and the 69 Property were the unrecorded deeds that Defendant Spitzer presented and notarized by Defendant Weisz. It was not until after the mortgages were funded that the 67 Forgery and 69 Forgery were recorded simultaneously with the mortgages, as delineated above in paragraphs 49 and 7372. As such, each of the Defendants knew or should have known, that at the best, Defendant Spitzer had presented an unrecorded deed. This should have caused each Defendant to exercise due diligence and inquire into the circumstances how it was that Defendant Spitzer claimed title to Plaintiffs properties for ten dollars without verifying with Plaintiffs that such transfers are genuine, prior to manufacturing mortgages of $2.4 million on the 67 Forgery and 69 Forgery.

    c.   At all relevant times, Defendant Weisz was an associate of Defendant Dekel and was being supervised by Defendant Teitelbaum. The fact Defendant Dekel operates as a title insurance agent under the professional license of Defendant Teitelbaum also supports a showing that Defendant Dekel and Defendant Teitelbaum exercised supervision on Defendant Weisz.

    d.   At the time Defendant Weisz notarized the forgeries of Plaintiff Rabbi Braun's signature, Defendant Weisz was present at the office of Defendant Dekel, and the notarization of the forgeries were ordained by Defendant Teitelbaum, Defendant Weinfeld and Defendant Bleier. Defendant Dekel and Defendant Teitelbaum knew or should have known that throughout 2019 Plaintiff Rabbi Braun never visited the office of Defendant Dekel.

Page 41

Indeed, on August 20, 2019, the purported date when the 67 Forgery and 69 Forgery was signed and notarized, Plaintiff Rabbi Braun did not leave Brooklyn, NY that entire day.

e. At the time that Defendant Bleier undertook to secure the mortgages originated on Plaintiffs properties, Defendant Bleier knew or should have known that Plaintiff never conveyed title to the Sham Defendants. Defendant Bleier agreed to secure mortgages by Defendant Sham LLC in exchange of ten dollars without inquiring as to what circumstances led Plaintiffs to give away valuable property to Defendant Spitzer and Defendant Sham LLC for a purported exchange of ten dollars. If the recording of ten dollars was to evade city or state taxes, that in itself was an unlawful act. If the recording of ten dollars was merely nominal under the presumption that an actual sale had occurred for a more substantive amount, then Defendant Bleier should have known that no such sale occurred, as there was no basis for a reliance that Plaintiffs gave away their respective rights in the 67 Property and 69 Property to the Sham LLC. Regardless, Defendant Bleier knew that no closing occurred where either of Plaintiffs were present.

f. At the time that Defendant PS Funding undertook to fund the mortgages originated on the 67 Property and 69 Properties, Defendant PS Funding knew or should have known that Plaintiff never conveyed title to the Sham Defendants. Defendant PS Funding agreed to fund mortgages by Defendant Sham LLC in exchange of ten dollars without due diligence as to what circumstances lead Plaintiffs to give away valuable property to Defendant Spitzer and Defendant Sham LLC for a purported exchange of ten dollars. If the recording of ten dollars was to evade city or state taxes, that in itself was an unlawful act. If the recording of ten dollars was merely nominal under the presumption that an actual sale had occurred for a more substantive amount, then PS Funding should have known that no such sale occurred, as there was no proof that Plaintiffs sold their respective rights to the Sham LLC. Regardless, Defendant PS Funding knew that no closing occurred where either of Plaintiffs were present.

g. At all relevant times, each of the Defendants knew or should have known that Defendant Spitzer had no relationship with Plaintiff Rabbi Braun to the level of giving away valuable property without consideration. As such, each of the Defendants knew or should have known there was no considerable reason as to why Plaintiff Rabbi Braun would transfer the residence of his family and himself to a stranger, and indeed Plaintiff Rabbi Braun did not transfer the 67 Property and 69 Property to the Defendant Sham LLC or Defendant Spitzer.

h.  At all relevant times, each of the Defendants knew or should have known from the fact that there was no closing that Plaintiffs did not convey any title to Defendant Spitzer or Defendant Sham LLC.

234.   The 67 Forgery and 69 Forgery would not have occurred if not for each Defendant willingly advancing themselves to create mortgages for the 67 Forgery and 69 Forgery. In fact,

a.  Neither Defendant Spitzer nor Defendant Sham LLC ever sought to use the 67 Forgery or 69 Forgery to take possession of the 67 Property or 69 Property.

b.  Neither Defendant Spitzer nor Defendant Sham LLC ever collected rent on the 67 Property or 69 Property.

c.  Neither Defendant Spitzer, nor Defendant Sham LLC or Defendant PS Funding ever paid the property taxes and maintenance costs (i.e. insurance, water, electricity, etc.) on the 67 Property or 69 Property.

d.  The only act that Defendant Spitzer and Defendant Sham LLC ever exercised was to create a mortgage on the 67 Property and 69 Property and use the equity of the mortgages.

e.  Each of all the aforementioned acts by the Defendants together advanced the injury that Plaintiffs are now enduring arising from the 67 Forgery and 69 Forgery.  Otherwise, without each Defendant doing their part to advance mortgages, the 67 Forgery and 69 Forgery would have been useless to Defendant Spitzer and Defendant Sham LLC without the mortgages providing an opportunity of cash.

f.  Each Defendant willingly extended themselves to do each of the acts delineated above to make it possible for the Defendant Spitzer and Defendant Sham LLC to exert a mortgage on the 67 Forgery and 69 Forgery, creating an illegitimate encumbrance on Plaintiffs properties.

g.  Defendants received a substantial kickback by Defendant Spitzer for its participation in the 67 Forgery and 69 Forgery.

235.   As a direct result, each Defendant is individually, and jointly and severally, liable for all damages sustained by the Plaintiff Rabbi Braun, Plaintiff 69 LLC and Plaintiff 67 LLC.

236.   As a direct result, each Defendant is individually, and jointly and severally, responsible for the acts committed against each of the Plaintiffs and the public at large with

perverting the title process.  As such each Defendant must be held liable by a judgment of exemplary damages and punitive damages, including treble damages, and the costs of this action, including the recovery of attorney fees.

237.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## TENTH CLAIM FOR RELIEF
### Racketeering Violations Against All Defendants

238.    Plaintiffs incorporates herein all the allegations stated in paragraphs 1 to 237, for relief against all the Defendants—with each Plaintiff pleading for relief as appropriate in its own respect—requesting money damages and treble damages for each remedy available at law, including, punitive damages, and a violation of RICO section 18 U.S.C. §1962(c). This claim is also brought in the furtherance, or in the alternative under FRCP 8(d), under any legal theory capable of remedying the wrongful acts committed by Defendants.

239.    The Racketeer Influenced and Corrupt Organizations Act ("RICO") statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

240.    Plaintiffs are a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

241.    Defendants are each a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

242.    In 1969, when Congress enacted 18 USC §§ 1961, 1962 provided in its Statement Of Findings And Purpose:

The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact. It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

A. *The Association in Fact Enterprise (AIF)*

243.     The factual mission of Defendants, through the conduct of an Association In Fact Enterprise (hereinafter, the "AIF"), is to unjustly enrich themselves through a scheme of fraud of title, by knowingly encumbering stolen title to real property in order to later resell them for profit and to embezzle money from laymen investors to members of the AIF under the disguise of a legitimate business transaction.

244.     The fraud of title of real property begins with forgery and continues with a series of steps to materialize the fraud, which starts with a mortgage on stolen title to strip such real property from its equity; the intention is to eventually pass title to a buyer who may or may not know of the fraud.  The AIF tends to, gamble not with their own money, commit their acts by gambling with the money of other people in order to enrich themselves with stolen title to property.

245. Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Teitelbaum, and Defendant Weisz, are natural persons, each individually knowingly employed by or associated with the AIF to conduct or participate, directly or indirectly, in the affairs of the AIF through committing and unlawful pattern of racketeering activity. The AIF also consists of Defendants that are legal entities, Defendant Rosa Funding, Defendant PS Funding, Defendant Dekel, Defendant BSD, and the Sham Entity (1567 56 NY LLC). Each entity and natural person as a Defendant are distinct in their role within the AIF.[1]

246. The AIF functions with a sophisticated scheme that conceals its true appearance of fencing stolen title to real property by doing a series of predicate acts. Each Defendant disguises itself as a legitimate business or as a bona fide businessperson misrepresenting itself as operating a genuine business without disclosing the confidential agreement of the AIF.

247. Outwardly, each Defendant presents themselves at a distance from the wrongs they commit by pretending to be independent businesspersons independent from each other. For example, when Defendant Weinfeld is pressed about the resolving the encumbrance placed on the forgery of title, Defendant Weinfeld disclaimed that Defendant Spitzer also owes him money, as delineated supra in paragraph 209 and 225. Another example, Defendant Rosa Funding pretends in all its writings that its office is located at 213 2nd Street, Lakewood, New Jersey, but meanwhile the operation of Defendant Spitzer and Defendant Weinfeld were all in the same suite as Defendant Dekel at 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

---

[1] *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (finding an individual defendant is distinct from a corporation wholly owned and operated by the individual).

248.     At all relevant times, Defendant PS Funding Inc., a purported hedge fund, postulated itself as a lender on behalf PeerStreet Inc. ("PeerStreet"), a startup that began in late 2015.  The model of PeerStreet was to induce unsophisticated laymen to invest their life savings under the lucrative promises of generating yield high returns as profit from mortgages by nonbank lending companies.  To the nonbank lenders, PeerStreet misrepresented itself as offering a marketplace where nonbank lending companies can obtain funding for mortgages.  Meanwhile, these purported lenders were a crowdfunding group of laymen with no understanding of how mortgages work and the due diligence it entails ("laymen investors"). PeerStreet misrepresented to the laymen investors that its mortgages are legitimate as a product of its own due diligence and based on genuine title.  From its start, Defendant PS Funding misrepresented itself to laymen investors to be too good to be true, a real estate environment where its investors never lost money.

249.     In order to postulate itself as a legitimate business and attract laymen investors, PeerStreet desired an influx of mortgages to present to itself as being a lucrative investment opportunity.

250.     The AIF came into being with the focused mission of generating a portfolio of mortgages that would induce laymen investors to invest their life saving for the benefit of the AIF by way of investing with PeerStreet under the claim that Defendant PS Funding will use the money to fund mortgages by nonbank lending companies, and that Defendant PS Funding never lost money on its mortgages.

251.     The ponzi scam had two parts, a system to generate a portfolio of mortgages and a system to embezzle money from laymen investors through a series of phony mortgages.

252.     The scheme was by way of claiming title to multiple real estate properties regardless of whether the AIF had genuine title.  Under the confidential agreement Defendant PS

Funding was to take money from laymen investors and divert them to the AIF for the purpose of encumbering stolen title of real property and enriching members of the AIF. Defendant Weinfeld and Defendant Bleier will bring forth property with equity regardless of whether Defendants have genuine title. Defendant Spitzer would make payment on the mortgages for the first three to five months to prevent the mortgages from being recalled by its laymen investors, and so Defendant PS Funding can show laymen investors the illusion of a handsome return.

253.    Defendant Weinfeld and Defendant Bleier worked together with Defendant Spitzer, using the name Defendant Rosa Funding and 703 Funding as agents of Defendant PS Funding. Defendant Weinfeld functioned as the formal agent of Defendant PS Funding. Defendant Bleier functioned as the person ensuring that each member of the AIF do their part. In that vein, Defendant Bleier would secure each mortgage that were originated by Weinfeld for its first three months, and Defendant Bleier would ensure that Defendant Spitzer would pay the interest only on such mortgages for the first three to four months. Defendant Weinfeld was answerable to both Defendant PS Funding and his partner Defendant Bleier, and Defendant Spitzer was answerable to both Defendant Weinfeld and Defendant Bleier and Defendant PS Funding.

254.    In order to polish the AIF as bona fide owner of title, Defendant Teitelbaum was the title insurance agent used to create insurance for each forgery of title and mortgage, Defendant Dekel would use its equipment to register and distribute the fraudulent title. Defendant Weisz as an associate of Defendant Dekel would prepare the fictitious paper of genuine title and whenever called for would notarize the forgery of the victim.

255.    The Defendants as members of the AIF functioned together as a continuing unit, with a common purpose as applied to this case, to devise schemes to defraud Plaintiffs and other victims of real property and illegally further the monetary interests of Defendants all to the

financial detriment of Plaintiffs and other victims.  For instance, the AIF operated on a system of using alter egos to place fictitious promissory notes on various properties, to pay for their participation in the predicate acts of the AIF. These promissory notes were never funded but served as medium to ensure each AIF member that it would receive its compensation.

256.    The Defendants as members of the AIF also functioned together as a continuing unit for the purpose of diverting the money from its laymen investors through a series of mortgages. That is because the mortgages created by the AIF did not go to purchase real property, but plainly funded forgeries and the money of each mortgage was embezzled by members of the AIF.

257.    Each member of the AIF who is a named Defendant was involved in the operation and management of the AIF, whose members function with a common purpose and with confidential relationships to each other.  Thus, the activities of the AIF members are separate and apart from the racketeering activity consisting of mail and wire fraud, and other predicate crimes.

258.    The AIF has longevity sufficient to permit other AIF members to pursue the AIF's purposes.  Each of the RICO Defendants' participation in the AIF was necessary for the successful operation of the fraudulent scheme for a duration of at least three years that was started in 2018 and continued through mid-2023 when Defendant PS Funding filed for bankruptcy.[2] During this period, in at least one circumstance, Defendants successfully took title to real property through forgery, encumbered the title with a mortgage, and used that mortgage to foreclose on such title.

---

[2] In a sense, the bankruptcy of Defendant Ps Funding serves to impair laymen investors from pursuing litigation on the gravity of the ponzi scam as applied to them.

259.     The activities of the AIF affected interstate commerce and engaged in interstate banking transactions by wire that crossed state lines in connection with the sale/transfer of properties, as the Defendants operated in the States of California and New Jersey to affect title in the State of New York.

B.   *The AIF Agreement*

260.     In the years of 2018 and 2019, the years when Defendant PS Funding, were attempting to attract laymen investors, nonbank lending companies were struggling to create loans at high interest rates, since the traditional banks were offering mortgages at 2-4%.  Defendant PS Funding needed mortgages starting at 8% interest rates in order to offer the laymen investors the promise of a rate of return better than rate of return offered by banks.

261.     In order to obtain that influx of mortgages in the States of New York and New Jersey, Defendant PS Funding entered into a confidential agreement with members of the AIF to use a series of corporations to originate mortgages for the marketplace of PeerStreet.  These corporations by Defendant Bleier and Defendant Weinfeld include Defendant Rosa, 703 Funding A LLC, Sonic Capital LLC, and more. The need for a series of different corporations were intended to disguise the originator on mortgages and mislead the laymen investors to belief that the nonbank lending companies are distinct originators of mortgages.

262.     The goal of Defendant PS Funding was to make short term mortgages and pass on each mortgage to a successor lender within one (1) year.  The AIF had planned that either Defendant Spitzer would refinance each mortgage or Defendant PS Funding would assign the debt to a third-party creditor.  Each successor lender would be induced to rely on the title work created by a title insurance agent (i.e. Defendant Dekel, Defendant Teitelbaum, Defendant Weisz, etc.) and not question the genuineness of title.  The plan was by passing on each mortgage to a successor

lender, Defendant PS Funding would be able to deceive its laymen investors of a quick return on their investment and build a reputation for Defendant PS Funding as a hedge fund that never lost money.

263.    In the mortgage industry, it is common for lenders to refinance an original mortgage.  A refinance can involve either offering a better interest rate for the borrower or drawing more cash against the value of a property.  Either way, a lender offering the refinancing is most likely to rely on the title work and due diligence obtained by the original lender, if the refinancing happens within one (1) year of the original mortgage, and such practices for refinancing vary between banks.  The AIF's scheme involved creating an appearance of a legitimate mortgage, with paperwork that stood for the false proposition that the original lender (Defendant PS Funding) did the ordinary due diligence, and the mortgage was based on genuine title substantiated by Defendant Dekel.  The scheme by Defendants was to create mortgages at 40-60% value on properties for a duration of one (1) year.  With all the paperwork in play, a subsequent lender would most likely rely on the title search postulated by members of the AIF to refinance its mortgages. For this, the Defendants calculated that either Defendant PS Funding would find a third-party bank to either assume the mortgage as is, or Defendant Spitzer would refinance the property at 80-100% of the cash value.   Each of the Defendants played a substantial role in manufacturing mortgages on properties with the false appearance of genuine title, with the goal of passing on every other mortgage to third-party lenders.

264.    Because the Defendant PS Funding needed mortgages starting at 8% interest rates, in order to offer laymen investors, the promise of a rate of return better than the rate of return offered by banks at the time, the AIF could not easily create such mortgages on genuine title.  The AIF looked for opportunities such as stolen title, so Defendant PS Funding could fence

stolen title to property and at the same time induce the laymen investors to invest encumbering such stolen title with fronting the money for a mortgage.

265.    The influx of mortgages, per the confidential agreement of the AIF, would come from creating encumbrances on title to multiple real estate properties regardless of whether there is genuine title.  The only thing needed, regardless of whether the AIF had genuine title, is the appearance of genuine title in order to make the fencing of property look legitimate.  That is, all the paperwork needed to line up with the series of documents commonly required in the mortgage industry when trading mortgages.

C.  *How The AIF Functioned*

266.    Under the confidential agreement the AIF would generate mortgages on real property, with or without the consent of the genuine owner(s).  Each Defendant of the AIF knowingly joined the AIF with the purpose of advancing the goals of the AIF.  The roles of each member of the AIF are as follows:

a.    Defendant PS Funding would purportedly advance the funding or appearance of funding for each mortgage by inducing laymen investors to front each mortgage utilizing the method of table funding.

b.    Defendant Rosa would create the mortgage paperwork to give the appearance of a legitimate mortgage, and Defendant Rosa would provide its equipment to generate such paperwork.

c.    Defendant Weinfeld would coordinate all the AIF members to create the mortgage.

d.    Defendant Bleier would ensure that each AIF member did its part to fulfill the mission of the AIF and personally secured each mortgage for a period of at least three (3) months, in an effort to give to laymen investors the appearance that each mortgage created by the AIF is legitimate.

e.    Defendant Spitzer would be the butler for Defendant Weinfeld and Defendant Bleier to bring forth stolen title to real property that is attractive to the AIF and make the requisite payments necessary for the first three to five months to prevent the mortgage from being recalled by the laymen investors.

f.  Defendant BSD would function as the entity that receives equity from each mortgage and further distribute the money in accordance with the interests of the AIF.

g.  Defendant Dekel would function as the agent to register each mortgage with the local authorities and divide the funding of each mortgage according to the instructions of Defendant Weinfeld.

h.  Defendant Teitelbaum would function as the title insurance agent to give the appearance that a mortgage created by the AIF is legitimate.

i.  Defendant Weisz is an associate of Defendant Dekel and acted as the notary for many of the forgeries advanced as needed by the AIF and assist Defendant Teitelbaum with the creating the appearance of genuine of title.

267.  The AIF members who assisted Defendant PS Funding in California operated together at the same address as Defendant Dekel, 485 Oak Glen Road in the Township of Howell in the State of New Jersey.

268.  In this course, the AIF generated multiple mortgages within six (6) months totaling over $15 million.   The following mortgages are from a partial list, of which the first twenty-six (26) Defendant PS Funding logged in an email with Defendant Spitzer in mid-2020 to keep track of all the mortgages they concocted in the second half of the year 2019 and the first half of the year 2020:

a.  64 S 13th St Newark, NJ 07107, under the legal entity of 10 PCKG LLC, a New Jersey limited liability company, under loan number #6000143666 [originated by Defendant Rosa Funding in the amount of $247,500];

b.  62 South 13th St Newark, NJ 07107 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company, under loan number #660146935 [originated by Defendant Rosa Funding in the amount of $247,500];

c.  57 Cedar Avenue, Newark, NJ 07106 and under the legal entity 10 PCKG LLC, a New Jersey limited liability company, under loan number #1365600346 [originated by Defendant Rosa Funding in the amount of $262,500];

d.  23-25 Chelsea Ave, Newark, NJ 07106, under the legal entity of 10 PCKG LLC, a New Jersey limited liability company, under loan number

#9106305466 [originated by Defendant Rosa Funding in the amount of $247,500];

e.   The 67 Property under loan number #4406560713 under the Sham LLC [originated by Defendant Rosa in the amount of $1,200,000];

f.   The 69 Property under loan number #4614665033 under the Sham LLC [originated by Defendant Rosa in the amount of $1,200,000];

g.   1412 College Avenue, Bronx, NY 10456 under loan number #0671400235 under the legal entity of 1412 COLL AVE LLC, a New York limited liability company, [originated by Defendant Rosa Funding in the amount of $826,000];

h.   136 Nobility Court, Toms River, NJ 06756 under loan number #3025187436 under the legal entity of 136 NOBILITY LLC, a New Jersey limited liability company [originated by 703 Funding in the amount of $427,000];

i.   131 Division Avenue, Apt 6A, Brooklyn, NY 11211 under loan number #2335463616 under the legal entity of 131 Division LLC, a New York limited liability company [originated by Defendant PS Funding in the amount of $997,500];

j.   624 15th Avenue, Newark, NJ 07103 under loan number #3655133406 under the legal entity of 624 15 LLC a New Jersey limited liability company [originated by 703 Funding in the amount of $258,750];

k.   96 N Maple Ave, East Orange, NJ 07017 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company under loan number #6461510300 [originated by Defendant Rosa Funding in the amount of $235,500];

l.   808 South 14th St, Newark, NJ 07108 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company, under loan number #0616963054 [originated by Defendant Rosa Funding in the amount of $285,000];

m.   440 S 19th St Newark, NJ 07103 under loan number #7681411435 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $295,500];

n.   38 Headley Ter, Irvington, NJ 07111 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company under loan number #5037416600 [originated by Defendant Rosa in the amount of $225,000];

o.   118 Bread St, Newark, NJ 07104 under loan number #103545463117 under the legal entity of 116 BROAD LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $318,400];

p.   106 Sunset Ave 8,466-467 Ferry St Newark, NJ 07106 under loan number #4066571013 under the legal entity of SUNSET 106 LLC, a New Jersey limited liability company; 465 FERRY LLC, a New Jersey limited liability company [originated by Yellow Jacket Ventures in the amount of $1,181,250];

q.   80-82 Millington Avenue, Newark, NJ 07108 under loan number #7691410435 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $296,800];

r.   379-383 S 20th St Newark, NJ 07103 under loan number #8405463117 under the legal entity of ISM Holdings LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $396,800];

s.   240 Amherst St, East Orange, NJ 07018 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company, under loan number #7618263054 [originated by Defendant Rosa in the amount of $240,000];

t.   225-227 Hawthorne Ave, Newark, NJ 07112 under loan number #9116973454 under the legal entity of ISM Holdings LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $228,800];

u.   223 12th Avenue, Newark, NJ 07107 under loan number #4467501213 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $254,400];

v.   201 South 11th St Newark, NJ 07107 under loan number #6471051443 under the legal entity of ISM HOLDINGS LLC a New Jersey limited liability company [originated by Defendant Rosa in the amount of $240,400];

w.   20 Girard Ave, East Orange NJ 07017 under the legal entity of 10 PCKG LLC, a New Jersey limited liability company with a mortgage for g under loan number #6370045941 [originated by Defendant Rosa in the amount of $234,000];

x.   153-155 S 7th St Newark, NJ 07103 under loan number #1461510374 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $272,000];

y.   134 N 15th St East Orange, NJ 07017, under the legal entity of 10 PCKG LLC, a New Jersey limited liability company under loan number #4960506213 [originated by Defendant Rosa in the amount of $243,750];

z.   115 Chadwick Ave, Newark, NJ 07108 under loan number #6047143651 under the legal entity of ISM HOLDINGS LLC, a New Jersey limited liability company [originated by Defendant Rosa in the amount of $309,600];

aa.   78 Parkville Avenue, Brooklyn, NY 11230, under loan number #8169355407 under the legal entity of 78 Parkville LLC, a New York limited liability company [originated by Defendant Rosa in the amount of $1,995,000]; and

bb.   625 Bedford Ave, Brooklyn NY, 11211, under loan number #3266016254 under the legal entity of 625 Bedford LLC, a New York limited liability company [originated by Defendant Rosa for $1,995,000].

269.   In the same period that the mortgages on the 67 Forgery and 69 Forgery, Defendant PS Funding allegedly funded the foregoing mortgages of Defendant Spitzer, and every other mortgage was through Defendant Weinfeld and secured by Defendant Bleier.  In the same time period the AIF also created what is delineated below as the scams involving the Parksville Forgery, 625 Bedford, 131 Division, and the Nobility Forgery. Most of these mortgages were processed by Defendant Dekel, together with its alter ego Universal Abstract, LLC.

270.   In a similar fashion to the way the AIF operated in New York and New Jersey, Defendant PS Funding also operated the same way in other states.  For instance, Jax SFH Properties, LLC, an entity in Florida, has title to two groups of eighteen (18) different properties in the State of Florida:

a.   Sometime, in November 2016, a mortgage of $368,225 was registered by Defendant PS Funding against Jax SFH Properties, LLC and in January 2017 Defendant PS Funding provided a second mortgage for $423,600 all executed encumbering title of Jax SFH Properties, LLC.

b.   Each of these mortgages were table funded by laymen investors of Defendant PS Funding.

c.   The funding of the mortgages did not go to Jax SFH Properties, LLC.

d.   On August 10, 2020, Jax SFH Properties, LLC brought a lawsuit in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County Florida, challenging the mortgages of Defendant PS Funding as having

been signed by someone who was not authorized to act on behalf of Jax SFH Properties, LLC.

271.    The pattern of generating multiple mortgages on real property without the consent from the genuine owners and without a closing is the norm of the AIF as Defendant PS Funding kept pressing its nonbank lending companies to keep generating mortgages to lure in more laymen investors to invest with its hedge fund, and each of the Defendants knowingly participated in the scheme to generate an influx of mortgages for Defendant PS Funding.

D.   *The Members of the AIF*

1.   Defendant PS Funding, Inc.

272.    Defendant PS Funding is a nonbank lending company making real estate loans.  Instead of lending their own money, Defendant PS Funding was gambling with money of laymen investors.

273.    Defendant PS Funding is an affiliate of PeerStreet.  Defendant PS Funding served as a large nonbank lending company of PeerStreet.

274.    The stated purpose of PeerStreet is to level the "playing field between Wall Street and Main Street."

275.    In order to level the playing field, Defendant PS Funding requires transferring the property to an LLC, meaning that a borrower cannot use its own name for a mortgage even for a residential home.  One borrower can have multiple LLCs.  An LLC can easily be assigned without registering so with the State, the ownership of the LLC can be concealed from the public eye, and people signing on behalf of an LLC are seldom asked to show the authorization to do so.

276.    The gamble of Defendant PS Funding is that it plays with money of laymen investors and has no skin in the game of the money of its own executives.  PeerStreet offered a

marketplace for mortgages originated by nonbank companies.  On its portal, nonbank lending companies meet with laymen investors to front mortgages under table funding.  PeerStreet's business model is finding laymen investors to crowdfund real estate loans under the promise of high returns.  PeerStreet then takes a percentage of those loans.  Defendant PS Funding has ordinary people as its investors with the minimum investment being as little as $500,000.  Defendant PS Funding is the vehicle of PeerStreet for laymen investors to table fund mortgages.

277.    Table funding involves a loan that is created by an originator but is actually funded by the contemporaneous advance of loan funds by the lender.  At the same time, all the funder's rights and interests in the loan are then contemporaneously assigned to the actual lender.

278.    Starting 2019, Defendant PS Funding organized the AIF to expand its portfolio to mislead its laymen investors into the image that investments are secured and profitable with a high yield of return.

279.    At all relevant times, Defendant PS Funding functioned as the financier of the mortgages that affected Plaintiffs by inducing laymen investors to fund such mortgages.

280.    The mortgage by Defendant PS Funding on the 67 property is for a duration of one (1) year with an interest rate of 9.5% and a default rate of 16%.

281.    The mortgage by Defendant PS Funding on the 69 property is for a duration of one (1) year with an interest rate of 9.5% and a default rate of 16%.

2.  Defendant Weinfeld

282.    Defendant Weinfeld is a natural person.

283.    Defendant Weinfeld also goes by the "Schia," "Shia," "Schia Na", "Josh J Wein", "Jay Wein", "Josh Weinfeild", "Jox", "Shia A", "Joshua", "Shia Weinseld", and "S Weinfeld".

284.     At all relevant times, Defendant Weinfeld was a partner in Defendant Rosa Funding and 703 Funding.

285.     At all relevant times, Defendant Weinfeld managed all the affairs of Defendant Rosa Funding and 703 Funding.

286.     At all relevant times, Defendant Spitzer was the servant of Defendant Weinfeld and followed all the directives provided by Defendant Weinfeld to advance the goals of the AIF.

287.     Defendant Weinfeld and Defendant Spitzer are business partners in their partnership for the AIF.  For instance, Defendant Weinfeld and Defendant Spitzer are business partners is the legal entity solidified in Zapper, Inc. a corporation registered in the State of Nevada, in which both Defendant Weinfeld and Defendant Spitzer are listed as partners.

    a.    Zapper Inc. is corporation registered under the names of Schia Defendant Weinfeld and Defendant Spitzer.

    b.    The management of Zapper Inc. is the same office as Defendant Teitelbaum and Defendant Dekel, with the same address of "485 Oak Glen Road, Howell, NJ", as registered with the Secretary of State of Nevada.

    c.    Zapper was registered on or about June 30, 2020, to solidify the AIF and funnel funds through bank accounts across state lines.

    d.    Besides the operation of the AIF, Defendant Weinfeld and Defendant Spitzer have no legitimate business relationship to explain their partnership in Zapper.

288.     The partnership of Defendant Weinfeld and Defendant Spitzer is also confirmed by the personal experience that Plaintiff Rabbi Braun experienced in his interaction with Defendant Weinfeld as delineated above in great detail in paragraphs 209 through 228.

3.  <u>Defendant Bleier</u>

289.     Isidor Defendant Bleier is a natural person.

290.     Defendant Bleier is a partner with Defendant Weinfeld in everything regarding the AIF.

291.     Defendant Bleier is a partner with Defendant Weinfeld in Defendant Rosa Funding and 703 Funding.

292.     At all relevant times, Defendant Bleier acted as the senior advisor for the AIF in maneuvering and disbursing the equities of Plaintiffs properties through the use of promissory notes.

293.     In particular, Defendant Bleier served as the front man to secure the mortgages originated by Defendant Rosa Funding and its subordinates.  Defendant Bleier took the personal responsibility to ensure that each member of the AIF would follow through on its task to complete the mission of the AIF.

294.     The security provided by Defendant Bleier was to satisfy an element common in the table funding business that the person who originates a mortgage must secure the mortgage for the first three months of its life, in the event the mortgage is recalled for whatever reason by its laymen investors.

295.     Given that Defendant Weinfeld was an agent for Defendant PS Funding, Defendant Bleier would function as the personal guarantee to secure the mortgages originated by Defendant Weinfeld through entities like Defendant Rosa Funding and 703 Funding.

296.     The AIF and Defendant Bleier have an arrangement of how to pay Defendant Bleier, through DB Holdings LLC ("DB Holdings") a corporation owned by Defendant Bleier.

297.     On December 27, 2019, the AIF through Defendant Spitzer, utilizing ISM Holdings LLC, rewarded Defendant Bleier by using DB Holdings to register a subordinate

promissory note for DB Holdings in the amount of $400,000.   Defendant Dekel did this registration.  The Defendant PS Funding has the senior mortgage on the properties:  379-383 S 20th St Newark, NJ; 440 S 19th St Newark, NJ; 80-82 Millington Avenue, Newark, NJ; 115 Chadwick Ave, Newark, NJ; 153-155 S 7th St Newark, NJ; 225-227 Hawthorne Ave, Newark, NJ; 223 12th Avenue, Newark, NJ; and 201 South 11th St Newark.  The only basis for the subordinate on these properties, were part of the AIF's arrangement of compensating Defendant Bleier for its role in the AIF.

298.    On January 28, 2021, the AIF through Defendant Spitzer, utilizing 418 Central NJ LLC, rewarded Defendant Bleier by using DB Holdings to register a subordinate mortgage for DB Holdings in the amount of $225,000 on the property 418 Central Avenue, Orange, New Jersey.

299.    On January 19, 2021, the AIF through Defendant Spitzer, utilizing 224 Washington Street LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $600,000 on the properties 227, 220-224 Washington Street, Perth Amboy, NJ. Defendant Dekel did the registration.

300.    On January 21, 2021, the AIF through Defendant Spitzer, utilizing 224 Washington Street LLC, rewarded Defendant Bleier by using DB Holdings to register a promissory note for DB Holdings in the amount of $225,000 on the properties 227, 220-224 Washington Street, Perth Amboy, NJ. Defendant Dekel did the registration.

301.    Each of the foregoing subordinate mortgages listed in paragraphs 298 through 300 were issued after Defendant Bleier and Defendant Dekel were fully aware of Plaintiff's dispute with Defendant Spitzer over the 67 Forgery and 69 Forgery, as delineated above in paragraphs 209 though 228.   Yet, Defendant Bleier and Defendant Dekel created these

subordinate mortgages, not as an extension of legitimate credit, but as part of the process to enrich members of the AIF through the means of illegitimate mortgages.

4. <u>Defendant Spitzer</u>

302.   Defendant Spitzer is a natural person.

303.   Defendant Spitzer served the AIF as the face for all predicate acts of racketeering so the other members of the AIF can fence stolen title to real property.   In this capacity, Defendant Spitzer served as a hunter for equity in properties that have no encumbrances similar to Plaintiffs.   Defendant Spitzer would then convert title and turn to Defendant Weinfeld for borrowing against the equity.

304.   Defendant Spitzer also served the AIF as the face to purchase property with the funds advanced by Defendant PS Funding against the equity of the 67 Property and 69 Property.   The following are some of the titles to which Defendant Spitzer claimed title through forgery:

   a.   Defendant Spitzer through the Defendant Sham LLC had claimed title to the 67 Property.   The forgery occurred on or about August 20, 2019. Defendant Spitzer had forged Plaintiff Rabbi Braun's signature without consent.   Defendant Weisz notarized the forgery.

   b.   Defendant Spitzer through the Defendant Sham LLC had claimed title to the 69 Property.   The forgery occurred on or about August 20, 2019. Defendant Spitzer had forged Plaintiff Rabbi Braun's signature without consent. Defendant Weisz notarized the forgery.

   c.   Defendant Spitzer through another shell LLC, 138 Nobility LLC, had claimed title to the property addressed as 138 Nobility Court, Toms River, New Jersey.   The forgery occurred on or about August 1, 2019.   Defendant Spitzer had forged Rivka Braun's[3] signature without consent.   Defendant Weisz notarized the forgery.

   d.   Defendant Spitzer through another shell LLC, 78 Parkville LLC, had claimed title to the property addressed as 78 Parkville Avenue, Brooklyn,

_____

[3] Rivka Braun is a daughter in law of Rabbi Braun.

NY.  The forgery occurred on or about December 30, 2019.  Defendant Spitzer had forged the signatures without the consent of Elliot Brociner and Helen Brociner.

e.    Defendant Spitzer claimed title to the property addressed as 625 Bedford Avenue, Brooklyn, NY 11211.   Defendant Spitzer created false documentation claiming to be the interest holder of the genuine owner, 625 Bedford LLC.  The creation of false instruments occurred on or about October 16, 2019.

f.    Defendant Spitzer claimed title to the property addressed as 1223 East 34th Street, Brooklyn.  Defendant Spitzer created false documentation claiming to be the genuine owner of Wyona Street 293 Corporation.  The creation of false instruments occurred on or about July 20, 2018.

305.    In particular, Defendant Spitzer on behalf of the AIF engaged with the gambling of property that was either obtained through the forgery of title or purchased with the equity drawn against stolen title. The following list are some of the properties obtained by Defendant Spitzer, placed into a shell LLC, the mortgage was originated by the partnership of Wienfeld and Defendant Bleier using either Defendant Rosa Funding or 703 Funding, assigned to Defendant PS Funding, and subsequently became subject to foreclosure proceedings:

a.    On or about August 20, 2019, Defendant Spitzer forged title to the 67 Property and placed into the shell Defendant Sham LLC. On or about August 27, 2019, a mortgage for $1,200,000 was originated by Defendant Rosa Funding and assigned to Defendant PS Funding.  On February 15, 2021, Defendant PS Funding brought suit against Defendant Spitzer and the Defendant Sham LLC for defaulting on the mortgage.

b.    On or about August 20, 2019, Defendant Spitzer forged title to the 69 Property and placed into the shell Defendant Sham LLC.  On or about August 27, 2019, a mortgage for $1,200,000 was originated by Defendant Rosa Funding and assigned to Defendant PS Funding.  On February 18, 2021, Defendant PS Funding brought suit against Defendant Spitzer and the Defendant Sham LLC for defaulting on the mortgage.

c.    On or about August 1, 2019, Defendant Spitzer forged Rivka Braun's signature to transfer title of the property addressed as 138 Nobility Court, Toms River, New Jersey into a shell LLC, 138 Nobility LLC.  On or about August 1, 2019, a mortgage for $427,000 was originated by 703 Funding and, on August 14, 2019, assigned to Defendant PS Funding.   On

September 18, 2020, an assignee for Defendant PS Funding foreclosed on the property.

d. On or about September 26, 2019, Defendant Spitzer transferred title to the property 131 Division Avenue, Brooklyn, NY and placed into the shell LLC, 131 Division LLC. On or about September 27, 2019, a mortgage for $997,500 was originated by Defendant PS Funding. On December 8, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

e. On or about September 16, 2019, Defendant Rosa Funding originated for Defendant Spitzer a mortgage for $300,000 under the shell LLC, 59 Davenport Avenue LLC. The same day the mortgage was assigned to Defendant PS Funding. On March 1, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

f. On September 4, 2019, Defendant Spitzer purchased 52-54 Chelsea Avenue, Newark New Jersey, in the amount of $305,000. The same day, 703 Funding generated a mortgage of $280,000 and assigned it too Defendant PS Funding. On August 3, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

g. On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC the property of 134 N. 15th Street, East Orange New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage of $243,750 and assigned the mortgage to Defendant PS Funding. On December 28, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

h. On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 38 Headley Street, Irvington New Jersey, in the amount of $340,000. The same day, Defendant Rosa Funding generated a mortgage for $225,000 and assigned the mortgage to Defendant PS Funding. On December 29, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

i. On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 240 Amherst Street, East Orange New Jersey, in the amount of $259,000. The same day, Defendant Rosa Funding generated a mortgage for $240,000 and assigned the mortgage to Defendant PS Funding. On March 22, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

j.    On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 23-25 Chelsea Avenue, Newark New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage for $247,500 and assigned the mortgage to Defendant PS Funding.   On December 14, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

k.    On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 20 Girard Avenue, Newark, New Jersey, for $259,000.  The same day, Defendant Rosa Funding generated a mortgage for $234,000 and assigned the mortgage to Defendant PS Funding.  On January 4, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

l.    On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 62 South 13th Street, East Orange New Jersey, for $249,000. The same day, Defendant Rosa Funding generated a mortgage of $247,500 and assigned the mortgage to Defendant PS Funding.  On April 27, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

m.    On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 96 North Maple Avenue, East Orange New Jersey, in the amount of $259,000. The same day, Defendant Rosa Funding generated a mortgage for $235,500 and assigned the mortgage to Defendant PS Funding. On September 21, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

n.    On September 11, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 808 South 14th Street, Newark New Jersey, in the amount of $290,000. The same day, Defendant Rosa Funding generated a mortgage of $285,000 and assigned the mortgage to Defendant PS Funding. On September 21, 2020, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

o.    On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 57 Cedar Avenue, Newark New Jersey, in the amount of $315,000. The same day, Defendant Rosa Funding generated a mortgage of $262,500 and assigned the mortgage to Defendant PS Funding.  On January 27, 2021, an assignee for Defendant

PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

p.   On September 12, 2019, Defendant Spitzer purchased under the shell name 10 PCKG LLC for the purchase of 64 South 13th Street, Newark New Jersey, in the amount of $249,000. The same day, Defendant Rosa Funding generated a mortgage of $247,500 and assigned the mortgage to Defendant PS Funding.  On April 27, 2021, an assignee for Defendant PS Funding brought suit against Defendant Spitzer and the shell LLC for defaulting on the mortgage.

306.   The AIF also accumulated, mostly through Defendant Spitzer, a host of titles to other properties throughout New Jersey and New York.  Each of these properties were acquired between 2018 and 2022.

5.   Defendant Sham LLC

307.   Defendant Sham LLC is a limited liability company that Defendant Spitzer created on August 20, 2019, with the sole purpose of obtaining stolen to the 67 Property and the 69 Property.

308.   Besides the holding title created by the 67 Forgery and the 69 Forgery, the Sham LLC is a non-operating company, with no income, files no taxes, and does neither collect rents nor have a bank account.

309.   The purpose of creating the Sham LLC was to fence the title to the 67 Property and 69 Property and create the false appearance that the Sham LLC is the title holder so as to induce a third party to do business with the Sham LLC without suspecting its title consists of stolen property.

6.   Defendant Rosa Funding LLC

310.   Defendant Rosa Funding is a nonbank lending company that originates mortgages, located in the State of New Jersey and is owned jointly by Defendant Belier and Defendant Weinfeld.

311.     Defendant Rosa Funding also operates under different names, such as 703 Funding and Sonic Capital LLC.

312.     At all relevant times, Defendant Rosa Funding originated mortgages funded by Defendant PS Funding and acted as the originator of the mortgages that affected Plaintiffs.

313.     In an ordinary mortgage originated by an average originator and table funded by Defendant PS Funding, the originator earns about $7,936 on a $396,800.00 mortgage. That is about 2% of the principal.

314.     In each of the mortgages affecting Plaintiffs properties that were funded by Defendant PS Funding, Defendant Rosa Funding collected $30,000 on each $1,200,000 mortgage. That is about 2.5% of the principal.   This commission was for Defendant Rosa Funding in originating the mortgages on Plaintiffs' properties.

315.     In particular as related to Plaintiffs, besides the 2.5% commission which combined on the 67 Property and 69 Property are $60,000, Defendant Rosa Funding collected the lion size stake of $253,000 for the mortgage on the 67 Property and $60,000 for the mortgage on the 69 Property.  The reason for these extra commissions is the partnership that Defendant Rosa Funding has in the AIF through the embezzlement of funds taken from laymen investors.

316.     Defendant Rosa Funding serves the AIF as the vehicle to generate what a glance seems like a genuine mortgage, but in reality, encumbers property through a racketeering gamesmanship.  Such as in this case involving forgery, fraud and deceit, Defendant Rosa Funding took a lion stake share of the equity in the title of the 67 Property and 69 Property either as a direct disbursement from each mortgage or through various shell corporations laundering the equity of the mortgages into different pockets of Defendant Weinfeld and Defendant Bleier.

317.     As delineated above, Defendant Rosa Funding originated a mortgage for each, the 67 Property and the 69 Property, despite knowing that Defendant Spitzer is not a bona fide recipient of title to Plaintiffs real property.  This knowledge, in part, is imputed by the fact that there was no contract of sale between the Plaintiffs and Defendant Spitzer or the Sham LLC. This knowledge, in part, is also imputed by the fact that on the day Defendant Rosa issued the mortgages on the 67 Property and 69 Property, the 67 Forgey and 69 Forgery was not yet registered with the City Register, and as such Defendant Rosa was not a bona fide encumbrancer.  It is for this reason that Defendant Rosa Funding was willing to originate a mortgage on the forged deeds of Plaintiffs that Defendant Rosa Funding received the additional $253,000 and $60,000 on top of the regular commission that the originator receives for originating a mortgage.

7.   Defendant Teitelbaum

318.     Defendant Teitelbaum is a natural person.

319.     At all relevant times, Defendant Teitelbaum was a licensed title insurance agent working as the title agent for the AIF to create the false appearance of genuine title when registering an encumbrance on real property.

320.     Defendant Teitelbaum is a co-owner of Defendant Dekel together with his wife Riki Teitelbaum.

321.     Defendant Teitelbaum is also the owner of ART Holdings together with his wife Riki Teitelbaum, which is an acronym for Abraham Riki Teitelbaum.

322.     At all relevant times, Defendant Teitelbaum also uses the name "Avroham Teitelbaum" to conceal being the same person doing the title insurance and cashing in on the AIF.

323.     Defendant Teitelbaum used his license as a title insurance agent, to create title insurance on the deeds that bore the forged signatures of Plaintiff Rabbi Braun.

324.     In return, the AIF through Defendant Spitzer provided promissory notes on other properties as compensation for the frauds perpetrated.  The following facts support these allegations:

a.     In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 287-297 Brunswick Avenue a/k/a 381 Oak Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

b.     In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 220-224 Washington Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

c.     In or about December 2020, Defendant Dekel registered in the name of Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 4, 2021 against the property addressed at 194-196 Johnson Ave, Newark, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

325.     Each of these mortgages advanced by Art Holdings LLC were rewards that Defendant Teitelbaum received for his role in the AIF.  Indeed, as delineated *supra*, approximately two weeks after Art Holdings received the three promissory notes of $500,000, DB Holdings also received subordinate promissory notes, including a promissory note on the same property 220-224 Washington Street for $600,000.

326.     Each of the foregoing subordinate mortgages listed in paragraph 324 were issued after Plaintiff Rabbi Braun appeared at the office of Defendant Dekel to protest the forgeries committed by Defendant Spitzer.  Defendant Teitelbaum were fully aware of Plaintiff's dispute with Defendant Spitzer over the 67 Forgery and 69 Forgery, as delineated above in paragraphs 209 though 228.  Yet, Defendant Teitelbaum created these subordinate mortgages, not as an extension

of legitimate credit, but as part of the process to enrich members of the AIF through the means of illegitimate mortgages.

8. Defendant Dekel Abstract LLC

327.    At all relevant times, Defendant Teitelbaum is a joint member of Defendant Dekel Abstracts, LLC together with his wife Riki Teitelbaum.

328.    Defendant Dekel fronts as a title search company.

329.    At all relevant times, as in particular as it relates to Plaintiffs, Defendant Dekel was the entity that registered the 67 Forgery and 69 Forgery.

330.    At all relevant times, as in particular as it relates to Plaintiffs, Defendant Dekel was the entity that registered the mortgages on the 67 Forgery and 69 Forgery.

331.    At all relevant times, Defendant Dekel employed Defendant Weisz.

332.    The key role by Defendant Dekel is serving the AIP with camouflaging activity to the public as if the mortgages and deeds procured by the AIF are valid. In return, the AIF provided promissory notes on other properties as a reward for the frauds perpetrated. The following facts support these allegations:

   a.   On or about August 20, 2019, Defendant Weisz, an associate of Defendant Dekel, notarized the forged signatures of Plaintiff Rabbi Braun creating the 67 Forgery and 69 Forgery.

   b.   On or about August 27, 2019, Defendant Dekel received the $1,191,611.65 from Defendant PS Funding representing the mortgage for the forgery on the 67 Property.

   c.   On or about August 27, 2019, Defendant Dekel received the $1,191,611.65 from Defendant PS Funding representing the mortgage for the forgery on the 69 Property.

   d.   On or about September 23, 2019, Defendant Dekel registered 67 Forgery and 69 Forgery together with its mortgages.

   e.   As such, at all relevant times, Defendant Dekel knew that Defendant Spitzer is the purported personal guarantee of the mortgages for the forgeries of title on the 67 Property and 69 Property.

f.  Parallel, on or about October 4, 2019, Defendant Dekel registered a deed for 54 Chelsea LLC, for a property located on 52-54 Chelsea Avenue, Newark, NJ. The same day, Defendant Dekel also processed for the same property a mortgage for $280,000.00 originated by 703 Funding, a subsidiary of Defendant Rosa Funding. On the same day, Defendant Dekel also processed an assignment of that mortgage to Defendant PS Funding. on January 14, 2020, Defendant PS Funding assigned the mortgage to a concealed entity as U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Fidelity & Guaranty Life Mortgage Trust 2018-1. On August 3, 2020, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Fidelity & Guaranty Life Mortgage Trust 2018-1 sued 54 Chelsea LLC and Defendant Spitzer for default on the mortgage registered by Defendant Dekel.

g.  Despite Dekel having the full requisite knowledge that Defendant Spitzer is in default on 54 Chelsea, on or about December 2020, Defendant Dekel used another corporation owned by the members of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 11, 2021 against the property addressed at 287-297 Brunswick Avenue a/k/a 381 Oak Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

h.  In or about December 2020, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020, and recorded on January 11, 2021, against the property addressed at 224 Washington Street, Perth Amboy, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

i.  In or about December 2020, Defendant Dekel used another corporation owned by the interest holders of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $500,000, and dated December 24, 2020 and recorded on January 4, 2021 against the property addressed at 194-196 Johnson Ave, Newark, New Jersey. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

j.  Each of these mortgages advanced by Art Holdings LLC were not for money advanced as a loan but a reward that the members of Defendant Dekel received for their role in the AIF.  Indeed, as delineated further below, approximately two weeks after Art Holdings LLC received the three promissory notes of $500,000, DB Holdings LLC (another

corporation owned by Defendant Bleier) received a subordinate promissory note on the same property 224 Washington Street for $600,000.

k.   An ordinary lender does not advance money to a party subject to a lawsuit for the collection of a delinquent debt. It follows that neither Art Holdings nor DB Holdings conveyed any money as a subordinate mortgage when the borrower is already a debtor to a lawsuit. Rather each of these mortgages advanced by Art Holdings LLC were rewards that Defendant Dekel received for its role in the AIF. Indeed, Art Holdings and DB Holdings collect on these mortgages when such property is sold, as it was the case with 224 Washington that Art Holdings and DB Holdings collected on the mortgages at the time the property was sold.

333.   On September 4, 2019, Defendant Dekel received from Defendant BSD $28,500 for its role in the AIF in perfecting the 67 Forgery and 69 Forgery.

334.   On September 5, 2019, Defendant Dekel received from Defendant BSD $13,766.62 for its role in the AIF in perfecting the 67 Forgery and 69 Forgery.

9.   Defendant Weisz

335.   Defendant Weisz is a natural person.

336.   At all relevant times, Defendant Weisz was an associate of Defendant Dekel.

337.   At the same time, Defendant Weisz was also a partner with Defendant Teitelbaum. For instance, Cross County MDS LLC is an entity registered as doing title search. Defendant Weisz is not licensed to be a title insurance agent, but Cross County MDS LLC is registered in the name of Defendant Weisz as doing title insurance. Interestingly, on June 21, 2021, Defendant "Avroham Teitelbaum" issued a promissory note of $400,000 to Cross County MDS LLC. The address for the lender Cross County MDS LLC is "485 Oak Glen Road, Howell, NJ", the same address as Defendant Dekel.

338.    As delineated *supra*, Defendant Weisz notarized the forged the signatures of Plaintiff Rabbi Braun on the deeds belonging to Plaintiffs.

339.    The AIF rewarded Defendant Weisz for notarizing the forgeries with title to his residence.  The following facts support this allegation:

    a.    On April 18, 2019, Defendant Spitzer purchased 1303 Hickory Street, Toms River for $600,000. Defendant Dekel registered the deed.

    b.    On June 6, 2019, Defendant Spitzer deeded 1303 Hickory Street to 1303 Hickory LLC, a corporation owned by Defendant Spitzer.  Defendant Dekel registered the deed.

    c.    On September 27, 2019, 1303 Hickory LLC, granted title to Defendant Weisz for the property 1303 Hickory Street.  Defendant Dekel registered the deed.

    d.    The transfer of 1303 Hickory by Defendant Spitzer to Defendant Weisz involved consideration by the AIF to reward Defendant Weisz for notarizing the forgeries of title by Defendant Weisz to Plaintiffs properties.

10. Defendant BSD Realty Holdings Inc.

340.    At all relevant times, Defendant Spitzer held a substantial interest in Defendant BSD Realty Holdings Inc.

341.    Defendant BSD served as the vehicle to redistribute all the equity received from Defendant PS Funding.

342.    On August 28, 2019, Defendant BSD received $850,250.00 from the equity received from Defendant PS Funding on the mortgage of the 67 Property.

343.    On August 28, 2019, Defendant BSD received $20,391.11 from the equity received from Defendant PS Funding on the mortgage of the 67 Property.

344.    On August 28, 2019, Defendant BSD received $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

345.     On August 28, 2019, Defendant BSD received an additional $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

346.     On August 28, 2019, Defendant BSD received an additional $529,625.00 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

347.     On August 28, 2019, Defendant BSD received an additional $8,193.11 from the equity received from Defendant PS Funding on the mortgage of the 69 Property.

348.     On September 4, 2019, Defendant BSD used the some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for the purchase of 52-54 Chelsea Avenue, Newark New Jersey.

349.     On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs properties to pay for 10 PCKG LLC for the purchase of 134 N. 15th Street, East Orange New Jersey.

350.     On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 240 Amherst Street, East Orange New Jersey.

351.     On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 38 Headley Street, Irvington New Jersey.

352.     On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 23-25 Chelsea Avenue, Newark New Jersey.

353.    On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 20 Girard Avenue, Newark, New Jersey.

354.    On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 62 South 13th Street, East Orange New Jersey.

355.    On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 96 North Maple Avenue, East Orange New Jersey.

356.    On September 11, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 808 South 14th Street, Newark New Jersey.

357.    On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 57 Cedar Avenue, Newark New Jersey.

358.    On September 12, 2019, Defendant BSD used some of the funds received from Defendant PS Funding on Plaintiffs' properties to pay for 10 PCKG LLC for the purchase of 64 South 13th Street, Newark New Jersey.

359.    Each of these eleven (11) aforementioned properties, listed in paragraphs 348 through 358, were also encumbered by a promissory note to 703 Funding  or Defendant Rosa Funding at approximately 75% of the purchase price. Defendant Spitzer signed each of these promissory notes, and then the note was assigned to Defendant PS Funding.

360.     As delineated supra in paragraph 339, Defendant Weisz was rewarded for its role in the AIF with title to 1303 Hickory Street.  On October 10, 2019, Defendant BSD satisfied a mortgage of $450,000.00, on the property 1303 Hickory Street, Toms River, NJ, which was, at least in part gifted, to Defendant Weisz in the value of $640,000.00 as compensation for notarizing the 67 Forgery and 69 Forgery.

E.  *AIF in Action*

361.     The relationships of the members of the AIF are as follows:  Defendant Spitzer hunts for the property, such as creating a forged deed transferring title of a property to an LLC, as a shell corporation (referred to as the "Shell LLC").  The placing of the property into a Shell LLC is done by direction of Defendant Weinfeld and Defendant Bleier (*i.e*., Defendant Rosa Funding, 703 Funding) to present itself at a distance from the victim(s).  Defendant Weinfeld and Defendant Bleier, under the guise of Defendant Rosa Funding together with its personnel, create an encumbrance on the property based on forged deeds.  Defendant Weisz as an associate of Defendant Dekel notarizes the forged deed, so the forgery would seem legitimate and be acceptable for filing with local government offices.  Defendant Dekel with its personnel and Defendant Teitelbaum function as the title insurance agents to give the false appearance under CPLR 4523 of a legitimate title and to transmit the forged deed to the County Clerk or City Register to ruse the forgery. Defendant Dekel with its owner Defendant Teitelbaum expedite the mortgage and transmit the forged documents to the County Clerk or City Register to ruse the forgery. The expedition happens swiftly, as was in this case, the 67 Forgery and 69 Forgery were dated August 20, 2019, and by August 26, 2019, Defendant PS Funding had delivered the funds to Defendant Dekel.  Defendant Dekel with Defendant Teitelbaum facilitates the assignment of the mortgage from Defendant Rosa Funding to Defendant PS Funding.  Defendant PS Funding together with its

personnel presents itself as the vehicle to the foreclose on the false encumbrance even when knowing that the deed is a bald forgery.  Defendant PS Funding would either do the foreclosure by themselves or through an assignee.

362.     Members and associates of the AIF present themselves as bona fide businesspersons conducting a routine "innocent" transaction and blame Defendant Spitzer as the bad guy, a scapegoat for all wrongdoing.  By blaming Defendant Spitzer for all the wrong, the remainder of the AIF attempt to brand themselves as victims, distance themselves from the blame, and avoid any responsibility for the wrongs committed. This is despite the fact that it would have been impossible for Defendant Spitzer to mastermind and perfect the same pattern multiple times without the entire AIF having its commitment for the common purpose.  At a first glance, the AIF might seem to be blameless but as delineated supra, each individual and entity in the AIF is so entangled and involved with each other, that it is not possible for the AIF to achieve anything without there being a full cooperation with all members of the AIF. The following facts support these allegations:

    a.    Professional standards in the title industry guide against the title agent having any financial incentive with either party to a transaction that conveys or encumbers title to property.  This is for many reasons, in particular, the title agent is a fiduciary to the insurance provider, who relies on the title agent to exercise due diligence and care to protect the parties conveying or encumbering title to property.  Here, as delineated *supra*, Defendant Dekel and Defendant Teitelbaum use various shell corporations to encumber for themselves the same properties on which they acted as a fiduciary for Defendant PS Funding.

    b.    Defendant Spitzer created title to LLCs for multiple properties throughout 2018 and 2022 all the properties purportedly received "financing" from Defendant Rosa Funding or 703 Funding, almost all were handled by Defendant Dekel with Teitelbaum, all were then assigned to Defendant PS Funding, and almost all ended in foreclosure that were filed throughout 2018, 2019, 2020, 2021 and 2022.

c.   It follows that at some point either Defendant Rosa Funding or Defendant PS Funding would have exercised due diligence and stopped advancing more money to Defendant Spitzer, given his pattern of defaulting on mortgages.

d.   It follows that at some point either Defendant Rosa Funding or Defendant PS Funding would have exercised due diligence and examined the basis of receiving title to many properties for no consideration and creating multiple mortgages that ended in defaults.

e.   It follows that at some point either Defendant Rosa Funding would have exercised due diligence and recalled the faulty mortgages, or that Defendant PS Funding would cease pursing foreclosure, on any property which Defendant Spitzer illegitimately claimed title, and Defendant PS Funding would first seek declaratory judgment to clear any cloud on title or to rescind such mortgages.

f.   It follows that at some point that Defendant Weisz would have exercised due diligence and the conscious to cease advancing his notary stamp for every deed presented by Defendant Spitzer in the absence of the signee.

g.   It follows that at some point either Defendant Dekel or Defendant Teitelbaum would exercise due diligence and do a title search and ask how it is that Defendant Spitzer received title of multiple real property in a short period of time without a contract of sale and without having tendered any consideration. In particular in 2017 Defendant Spitzer had filed bankruptcy claiming that his assets are below $50,000.  In particular, Defendant Spitzer tax return for 2017 had shown only $25,000 as income, and Defendant Spitzer could not otherwise qualify for credit by a diligent creditor on such record.

h.   It follows that at some point Defendant Bleier would not secure any mortgages issued for Defendant Spitzer without doing due diligence to ascertain the purported deeds proffered by Defendant Spitzer.

i.   It follows that at some point Defendant Weinfeld would not have authorized any mortgages issued for Defendant Spitzer without doing due diligence to ascertain the purported deeds proffered by Defendant Spitzer.

363.   Neither Defendant exercised the due diligence entrusted to them by law and common sense necessary to have prevented the injury that Plaintiffs are now facing.  The Defendants did not exercise due diligence because these duties do not follow the common purpose of the AIF of converting title of property the AIF is not entitled to, since the conversion of title serves the AIF to enrich itself at the behest of unsuspecting victims.  It is the omission of due

diligence that enables the enterprise to convert title of property they are not entitled to and enriching themselves at the behest of unsuspecting victims.

364.    The acts of the AIF members included forging the signature of the victim to fabricate title to real property under the name of a Shell LLC belonging to one of the perpetrators, Defendant Weinfeld, Defendant Bleier, or Defendant Spitzer. Then the perpetrators encumber the stolen property through using shell corporations, such as Defendant Rosa Funding LLC, to create an instrument of funding with the false appearance of lending money.

365.    Defendant Weinfeld and Defendant Bleier, when asked about the mortgages created on a property involving Defendant Spitzer, play ignorant as if Defendant Spitzer purchased the property from the unsuspecting victim.  Meanwhile, Defendant Weinfeld and Defendant Bleier exercised dominion over Defendant Spitzer.

366.    At all relevant times, Defendant Teitelbaum was a licensed insurance agent in the State of New York, operating under Defendant Dekel Abstract LLC.  Defendant Teitelbaum and Defendant Dekel presented themselves as title insurance agents, as if they did a title search, assisted the perpetrators with preparing closing documents to pass the appearance of clear title on properties that are deeded for no consideration to the Shell LLC. Meanwhile, neither Defendant Teitelbaum nor Defendant Dekel did any title search.  For instance, as delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred to Plaintiff 67 LLC, 60% of the title to the 69 Property and retained 40% of its title.  It is apparent that neither Defendant Teitelbaum nor Defendant Dekel did a title search, because the forgery transferred 100% of the title of the 69 Property from 1567 56th Street LLC (Plaintiff 67 LLC) to 1567 56 NY LLC (Defendant Sham LLC). Yet, Plaintiff 67 LLC held only 60% of the title, not 100%.  This omission by Defendant Teitelbaum and Defendant Dekel illustrates and further evidences the fact that no due diligence or title search was done at all.

367.     Likewise, Defendant PS Funding did not exercise its own due diligence by looking at the NYC ACRIS to verify the genuineness of the title.  Defendant PS Funding could have spotted easily, that Plaintiff 67 LLC held only 60% of the title, not 100%.  Had Defendant PS Funding looked at the NYS ACRIS prior to issuing a mortgage it would have been obvious that the 67 Forgery and 69 Forgery was not registered and as such it could not rely on the assumption of the 67 Forgery and 69 Forgery without inquiring into the circumstances for such title.

368.     Indeed, Defendant PS Funding disbursed the $1,191,611.65 to encumber 69 Property prior to Defendant Spitzer registering the 67 Forgery and 69 Forgery.  As such, Defendant PS Funding omitted verifying whether the purported deed presented by Defendant Spitzer and Defendant Dekel could be authenticated with the chain of title.

369.     In particular, because Defendant PS Funding was so eager to inflate its portfolio with mortgages, Defendant PS Funding disregarded the due diligence necessary to verify the chain of title.

370.     In particular, an encumbrance on property, like on Plaintiffs property can have the dire consequences of crippling a person.  It is for that reason, the law and common sense require the due diligence, such as a meeting at closing, where there is a meeting of the eyes and all the parties to the encumbrance can be confident that such encumbrances are genuine and not under duress or fraud.  Neither the 67 Forgery and 69 Forgery conveying purportedly conveying title of the 67 Property and 69 Property belonging to Plaintiffs, nor the encumbrance that Defendant PS Funding and Defendant Rosa Funding placed on Plaintiffs properties were as a result of a closing let alone an in-person meeting at closing with the presence of Plaintiffs.

371.     Indeed, it is the omission of due diligence that enabled the AIF to achieve its goals, and thus the fact that no one in the AIF spotted the obvious fact that Plaintiff 67 LLC

only owned 60% of the 69 Property, confirming that the AIF was functioning on the omission of due diligence in reckless disregard to the rights of others such as Plaintiffs.

372.    Neither Defendant Spitzer, nor Defendant Weinfeld, Defendant Bleier, Teitelbaum, Defendant Dekel or Defendant PS Funding fronted any money to purchase the property from Plaintiffs. The members and associates of the AIF are provided funding by Defendant PS Funding under the method of "table funding", where Defendant PS Funding holds itself as if the loan was funded by Defendant PS Funding as a contemporaneous "bona fide" lender advancing the funds for a purchase. Meanwhile, there were no funds advanced to purchase the 67 Property or 69 Property from the Plaintiffs. Rather, the money advanced by Defendant PS Funding was to enable the AIF to embezzle money of its laymen investors to acquire more property that is destined to bolster the portfolio of mortgages of Defendant PS Funding and induce more laymen investors to invest with Defendant PS Funding.

373.    Defendant PS Funding is aware that mortgages originating with Defendant Rosa Funding and 703 Funding through Defendant Teitelbaum and Defendant Dekel are faulty. Rather than rescinding the faulty mortgages to Defendant Rosa Funding, Defendant PS Funding is happily pursuing foreclosures on properties where the title is void in a concentrated effort to perfect the mission of the AIF and profit off from the fraudulent mortgages which originated from Defendant Rosa Funding and 703 Funding.

374.    The AIF has longevity sufficient to permit other AIF members to pursue the AIF's purposes.  Each of the RICO Defendants' participation in the AIF was necessary for the successful operation of the fraudulent scheme for a duration of at least three years that was started in 2018 and continued through mid-2023 when Defendant PS Funding filed for bankruptcy. During this period, in at least one circumstance, Defendants successfully took title to real property

through forgery, encumbered the title with a mortgage, and used that mortgage to complete foreclosure of such title.

375.     The activities of the AIF affected interstate commerce and engaged in interstate banking transactions by wire that crossed state lines in connection with the sale/transfer of properties, as the Defendants operated in the States of California and New Jersey to affect title in the State of New York.

### F. *There Are Other Victims Besides Plaintiffs*

376.     The aforementioned listed from paragraph 1 through 375 that happened to Plaintiffs also happened to others under similar patterns, revealing an organization to commit acts prohibited under 18 U.S.C. §1962(c). The following individuals and corporations have been impacted by the acts of Defendants and their associates:

377.     Towards the end of 2019, Elliot Brociner and Helen Brociner ("Brociners") were retiring and getting ready to sell their home, 78 Parkville Avenue, Brooklyn, NY to Levi Kraut.  78 Parkville Avenue represented the life savings of the Brociners. A contract of sale was executed, the purchaser Lavi Kraut had placed in escrow a deposit, and the purchaser was preparing for closing.

    a.    Defendant Spitzer approached the Brociners, representing himself to be a mortgage broker as an agent for Defendant Bleier and Defendant Weinfeld, explaining that he can get a mortgage for the purchaser Levi Kraut.

    b.    Defendant Spitzer asked the Brociners to place title of 78 Parkville in an LLC.  The Brociners, on the advice of their attorney, advised Defendant Spitzer that they will not do that.

    c.    On or about December 30, 2019, Defendant Spitzer forged the signatures without the consent of Elliot Brociner and Helen Brociner transferring title to the property addressed as 78 Parkville Avenue, Brooklyn to a shell LLC, 78 Parkville LLC ("Parkville Forgery").

d.     The Parkville Forgery was done without permission or consent of the Brociners.

e.     The title work for the Parkville Forgery was done by Defendant Teitelbaum, Defendant Dekel and Defendant Weisz.

f.     A mortgage for $1,995,000 was originated on the Parkville Forgery by Defendant Weinfeld using 703 Funding A LLC ("703 Funding"), a subsidiary of Defendant Rosa Funding, the mortgage was secured by Defendant Bleier, and funded by Defendant PS Funding.

g.     The mortgage was registered with the address of 1127 57th Street, Brooklyn NY, 11219, a mailing address used by Defendant Spitzer for many of its schemes.

h.     On January 14, 2020, Defendant BSD received $950,000 from the mortgage originated using the Parkville Forgery.  Where the other $1,045,000 was diverted, or if it was even funded, is unknown yet to Plaintiffs.

i.     On January 31, 2020, the Parkville Forgery was recorded together with the mortgage funded by PS Funding.

j.     Within days, the Brociners learned about the Parkville Forgery.  They immediately contacted Defendant Spitzer, Defendant Weinfeld, Defendant Dekel, Defendant Teitelbaum and Defendant PS Funding, and demanded the return of title and the cancellation of that mortgage.

k.     On April 8, 2020, Defendant PS Funding registered a satisfaction of mortgage and on May 7, 2020, the title was recorded as returned to Elliot Brociner and Helen Brociner.

l.     By the latest May 2020, the story of the Parkville Forgery should have alerted Defendant Weinfeld and Defendant Bleier (together with their entities Defendant Rosa Funding and 703 Funding), and Defendant PS Funding that Defendant Spitzer had committed mortgage and title fraud, and yet Defendant Weinfeld, Defendant Bleier and Defendant PS Funding did nothing to report such fraud to law enforcement.

m.     Now came November 12, 2020, when Plaintiff Rabbi Braun met with Defendant Weinfeld, reported the 67 Forgery and 69 Forgery directly to Defendant Weinfeld, a story that mirrors the Parkville Forgery, and yet Defendant Weinfeld did nothing to report to law enforcement the fraud committed against Plaintiffs.

n.     Rather, Defendant Weinfeld mislead Plaintiff Rabbi Braun under the false disguise that Defendant Spitzer would pay off the mortgages on the 67 Property and 69 Property.

o. Throughout 2021, Defendant Weinfeld misled Plaintiff Rabbi Braun instead of informing that Defendant Spitzer has done the same with the Parkville Forgery. Defendant Weinfeld knew that the Plaintiffs injury mirrored what happened to others like Elliot Brociner and Helen Brociner.

378.     Adolph and Sarah Polatsek (referred to together as "Polatseks") lived at 625 Bedford Avenue, Brooklyn, NY. They bequeathed 625 Bedford in trust for the Sarah Polatsek 2008 Family Trust, the beneficiaries were their children. In 2010, the Sarah Polatsek 2008 Family Trust transferred title of 625 Bedford so that 625 Bedford LLC is the trustee of the Sarah Polatsek 2008 Family Trust. In a sense, instead of an individual being named as trustee on the deed, 625 Bedford LLC was the trustee. 625 Bedford continues to serve as the abode for several children of the Polatseks.

a. On October 16, 2019, Defendant Spitzer postulated himself as the sole member of 625 Bedford LLC and executed a mortgage of $1,995,000 originated by Defendant Weinfeld on behalf of Defendant Rosa Funding, secured by Defendant Bleier, and funded by Defendant PS Funding. Whether the mortgage by Defendant PS Funding on 625 Bedford was even funded or how the funding of such mortgage was dispersed is currently unknown yet to Plaintiffs.

b. The title work for this mortgage on 625 Bedford was done by Defendant Teitelbaum and on October 23, 2019, Defendant Dekel registered the mortgage.

c. On February 27, 2020, the mortgage on 625 Bedford was refinanced with a mortgage from FM Home Loans at $3,000,000. FM Home Loans, a bona fide lender, relied on the purported title work that Defendant Dekel postulated on the original mortgage in order to refinance the mortgage on 625 Bedford Avenue.

d. On April 23, 2020, Defendant Spitzer offered a sundry agreement to Defendant Bleier's company DB Holdings LLC that any adverse action against 625 Bedford without consent from Defendant Bleier is null and void.

e. Eventually, the refinanced mortgage by FM Home Loans was assigned to Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not In Its Individual Capacity But Solely In Its Capacity As Certificate Trustee For NRP Mortgage Trust 1 ("Wilmington").

f.   Wilmington commenced foreclosure proceedings in State court. The true owners of 625 Bedford LLC intervened and countersued to declare the mortgage as never been authorized and null and void. In particular, the true owners of 625 Bedford LLC alleged that Defendant Spitzer had falsely represented himself as being a member of 625 Bedford LLC.

379.   Isaac Matyas has called home 131 Division Avenue, 5A, Brooklyn, NY, since 2001.

a.   On or about September 26, 2019, Defendant Spitzer transferred title to 131 Division Avenue, Brooklyn, NY.

b.   The title was transferred from Isaac Matyas to 131 Division LLC.

c.   The same day, Defendant PS Funding created a mortgage of $997,500.00. Defendant Dekel did the registry of title and mortgage.

d.   On September 27, 2019, Defendant BSD received $400,000 from Defendant Dekel representing the mortgage by Defendant PS Funding. Where the other $597,500 went is currently unknown to Plaintiffs.

e.   An assignee of Defendant PS Funding has since sought to foreclose on 131 Division Avenue.

f.   Isaac Matyas has since brought a suit claiming that he had only agreed to borrow $90,000 and was conned with a mortgage of $997,500.00.

380.   On or about August 2018, Plaintiff Rabbi Braun purchased title to the property addressed as 138 Nobility Court, Toms River, New Jersey, as the new home for his son Ahron Braun and daughter-in-law Rivka Braun.  138 Nobility Court was registered in the exclusive name of Rivka Braun.

a.   On or about August 1, 2019, Defendant Spitzer forged Rivka Braun's signature transferring title to 138 Nobility from Rivka Braun to shell LLC, 138 Nobility LLC ("Nobility Forgery").

b.   Defendant Weisz notarized the Nobility Forgery.

c.   On or about August 1, 2019, a mortgage for $427,000 was originated by 703 Funding, a subsidiary of Defendant Rosa Funding and was purportedly funded by Defendant PS Funding.

d.   Defendant Teitelbaum was the title agent for the Nobility Forgery.

e.   Defendant Dekel registered the Nobility Forgery and its mortgage.

f.   Defendant Bleier secured the funding with Defendant PS Funding.

g.    Defendant Weinfeld originated the mortgage on the Nobility Forgery for 703 Funding.

h.    On August 5, 2019, Defendant BSD received $50,000 of the mortgage. On August 6, 2019, Defendant BSD received an additional $8,073.92. Where the other $368,926.08 went, or if it was even funded, is currently unknown to Plaintiffs.

i.    On July 30, 2020, the Defendant PS Funding assigned the mortgage on the Nobility Forgery to an assignee.

j.    On September 20, 2020, the assignee for Defendant PS Funding commenced foreclosure proceedings.

k.    On February 21, 2023, the title to 138 Nobility Court was auctioned off by the Sheriff for Ocean County.

l.    At no time did Rivka Braun receive any consideration for the Nobility Forgery.

381.    On December 19, 2018, Mendel Deutsch ("Deutsch") purchased a property addressed as 224 Washington Street, Perth Amboy, New Jersey and placed the property into 224 Washington Street, LLC for $2,300,000.  Avraham Blau was an investment partner with Deutsch in 224 Washington.  Atlantic Stewardship Bank provided a mortgage of $1,610,000.  The title agent for that purchase and mortgage was Defendant Dekel, bearing the handwriting of either Defendant Teitelbaum or Defendant Weisz.

a.    On January 1, 2022, a restriction of deed, dated January 3, 2019, in favor of MSF Cornelison LLC (Harvey Abrahams) was filed on behalf of 224 Washington LLC, purportedly executed by Mendel Deutsch and Arthur Spitzer Property. Defendant Weisz notarized this restriction of deed.

b.    In or about January 28, 2019, Defendant Dekel used another corporation owned by the same members of Defendant Dekel, with the name Art Holdings LLC, to register a subordinate mortgage of $185,000.  This mortgage was signed and guaranteed by Defendant Spitzer, notarized by Defendant Teitelbaum, and recorded by Defendant Dekel.  The maturity date of the note was May 28, 2019, and was discharged on October 6, 2020.

c.    On or about December 2020, DB Holdings LLC, which is owned by Defendant Bleier created a subordinate mortgage of $600,000, and dated October 1, 2020, which was recorded on January 14, 2021.

d.   On or about December 24, 2020, the same members of Defendant Dekel used another corporation owned, with the name Art Holdings LLC, to create a subordinate mortgage of $500,000, and was recorded so on January 11, 2021, against the property by Defendant Dekel. This mortgage was signed and guaranteed by Defendant Spitzer and also registered by Defendant Dekel.

e.   On or about January 14, 2021, Defendant Bleier using DB Holdings created another subordinate mortgage in the amount of $225,000. Defendant Dekel did the registration of that subordinate mortgage.

f.   On February 11, 2021, 224 Washington was purportedly sold to 1512 Summerfield Ave LLC.

g.   On February 8, 2021, Defendant Teitelbaum executed a discharge of its subordinate mortgage by Art Holdings LLC.

h.   On April 14, 2022, Defendant Bleier executed a discharge of its subordinate mortgage by DB Holdings LLC.

i.   On May 27, 2022, Avraham Blau brought suit alleging that Defendant Spitzer was never a member of 224 Washington LLC and has been misrepresenting himself to third parties as being a member and authorized agent of 224 Washington LLC.

j.   On May 12, 2023, the Superior Court of New Jersey entered an order rescinding the transfer of deed from 224 Washington LLC to 1512 Summerfield Ave LLC.

382.   The foregoing reveals that AIF members work hand in hand with each other to strip equity of title to properties without consent of the true owners.

G.   *The Racketeering Violations*

383.   From September 2019 and continuing up through the date of the filing of this Third Amended Complaint, Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Teitelbaum, Defendant Sham LLC, and Defendant Weisz knowingly and unlawfully conducted or participated, directly or indirectly, in the AIF through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

384.     The actions of the Defendants constitute a racketeering activity within the meaning of 18 U.S.C. § 1961(1) because they constituted criminal offenses that are indictable as violations of the federal mail fraud statute 18 U.S.C. § 1341; and the federal wire fraud statute 18 U.S.C. § 1343; and the predicate crime prohibiting the engaging in monetary transactions in property derived from specified unlawful activity, 18 U.S.C. § 1957.  The actions constitute a pattern of racketeering activity because each individual of the Defendant committed at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity" criteria described below.

385.     Over the course of years, from September 2019 and continuing to the present, Defendants knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c).  To accomplish schemes, artifices, and conspiracies Defendants and AIF members used the United States mail of the Post Office and interstate wires of to send and receive funds, send and receive the 67 Forgery and 69 Forgery and email other documents relating to the fraudulent schemes, described throughout this complaint.

386.     On or about September 23, 2019, the act of each registration, of the 67 Forgery and the 69 Forgery, are sperate and distinct counts of wire fraud by Defendant Dekel, Defendant Teitelbaum and Defendant Weisz.

387.     On or about September 23, 2019, the act of each registration, of the 67 Forgery and the 69 Forgery, asked the City Register to mail back a copy of the registration to the Defendant Dekel, and such mailings are separate and distinct counts of mail fraud by Defendant Dekel, Defendant Teitelbaum and Defendant Weisz.

388.     On or about August 26, 2019, the act of each transmission by email, of the 67 Forgery and the 69 Forgery, in order to manufacture the mortgages on the 67 Property and 69

Property by way of misrepresenting the 67 Forgery and the 69 Forgery are sperate and distinct counts of wire fraud by Defendant Rosa, Defendant PS Funding, Defendant Weinfeld, Defendant Bleier, Defendant Spitzer, Defendant Dekel, Defendant Teitelbaum and Defendant Weisz.

389.   Months after the forgery was registered, upon learning of the fraud, Plaintiff Rabbi Braun confronted Defendant Spitzer over this ordeal.  Defendant Spitzer admitted to Plaintiff Rabbi Braun that he forged the signature of Plaintiff Rabbi Braun to transfer the property but exclaimed that he was "forced" to do it.  Defendant Spitzer did not say who forced him to forge Plaintiff Rabbi Braun's signature, but in a quest for answers, as delineated supra, all leads led to information and belief that Defendant Spitzer is a faithful servant who follows orders of Defendant Weinfeld and Defendant Bleier, as loyal members of the AIF. Each act of the 67 Forgery and the 69 Forgery are sperate and indictable charges of forgery under State law and chargeable to each AIF member separately.

390.   Defendant Weisz notarized the fraudulent transfer of the deeds bearing the forged signatures of "Shlomo Braun." Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC, nor Plaintiff 69 LLC ever appeared before Defendant Weisz to notarize any of the forged deeds. Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC, nor Plaintiff 69 LLC ever entered into a contract sale of the 67 Property or 69 Property. Neither Plaintiff Rabbi Braun nor Plaintiff 67 LLC, nor Plaintiff 69 LLC ever appeared before Defendant Dekel, Defendant Teitelbaum, Defendant Rosa Funding, or Defendant PS Funding to consummate a closing. All the acts were committed by the Defendants amongst themselves in the absence of Plaintiffs and without the knowledge of Plaintiffs. All the acts committed by the Defendants against Plaintiffs occurred between 2019 and the present day. The title to the 67 Property and 69 Property were transferred to Defendant Sham LLC in conformity with the AIF requirement that the forgery of the deed be registered in the name

of a Shell LLC owned by one of the perpetrators.  The properties of Plaintiffs became encumbered with a mortgage through the Defendant Sham LLC in conformity to the practice of the AIF to use an LLC to create an encumbrance of the property to make it appear as if Defendant Spitzer or Sham/Shell LLC was a bona fide purchaser.  The mortgages were assigned to Defendant PS Funding for the purposes of enforcing the encumbrance.  Defendant Dekel and Defendant Teitelbaum created the mock process of a title search, clear title, and registered the fraudulent documents with the City Register. Each of the foregoing acts by Defendants were an act to aide and abet the utility of the 67 Forgery and 69 Forgery.

391.     It is elementary that lenders would not proceed to lend money on a property without a closing in the presence of the sellers and borrowers. This elementary step serves as a meeting of the minds and to verify the identity of the sellers and borrowers.  Yet, Defendant Rosa Funding and Defendant PS Funding purportedly proceeded to finance property from Plaintiff 67 LLC to the Defendant Sham LLC and encumber the 67 Property and 69 Property without a closing where Plaintiff Rabbi Braun and Plaintiff 67 LLC were to be present. It follows that both Defendant Rosa Funding and Defendant PS Funding knew and had sufficient information that they should have known that the transfer of the deeds from Plaintiff 67 LLC to the Defendant Sham LLC is not legitimate, and that both Defendant Rosa Funding and Defendant PS Funding knew and had sufficient information that they should have known that no Plaintiff did not sell the 67 Property and 69 Property.

H.  *The Racketeering Activity - Extortion*

392.     Plaintiffs' plea that the Defendants committed violations of Extortion.

393.     Defendants are engaged in racketeering activity by extorting and attempting to extort money from Plaintiffs, namely having stolen title to the 67 Property and  69 Property and

using the foreclosure proceedings to extort money from Plaintiffs to save losing the 67 Property

and 69 Property in foreclosure despite that each Defendant is knowingly aware that there was no

valid transfer of title from Plaintiffs to the Defendant Sham LLC and consequently the mortgage

on Plaintiffs properties are unenforceable.

      394.    The first acts of extortion being committed by Defendant Spitzer, Defendant

Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum, Defendant Rosa Funding

LLC, and Defendant PS Funding, and Defendant Dekel Abstract LLC, are as follows:

a.    As delineated earlier, in 2016, the entity Plaintiff 69 LLC transferred 60% of the title of the 69 Property to Plaintiff 67 LLC and Plaintiff 69 LLC retained 40% of the interest in that title.

b.    Defendants stole 100% title of the 69 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer, transferring 100% of the title of the 69 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

c.    Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding, and Defendant PS Funding knowingly used the fraud to create a mortgage on the 69 Property.

d.    Defendant PS Funding knowingly made use of the fraud to foreclose on the 69 Property by way of the 69 Foreclosure.

e.    Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that Plaintiff 67 LLC could not grant 100% title of the 69 Property and that Plaintiffs are the genuine owners of the 69 Property.

f.    The extortion is brought to life by the 69 Foreclosure, wherein Defendants are threatening to have the 69 Property auctioned off in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 at 9.5% in interests plus a default interest of 16% and fees albeit that Plaintiffs did not incur either obligation.

g.    Defendants operating with a unified mindset to mastermind the extortion: by enabling Defendant Spitzer to initiate the extortion through the 69 Forgery that was notarized by Defendant Weisz who is also a servant of Defendant Dekel and Teitelbaum.  The extortion was conceived by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that of which the Defendant Sham LLC did not have genuine title.

h.   The extortion was made possible when the 69 Forgery with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

i.   The extortion is realized by Defendant PS Funding with its prosecution of the 69 Foreclosure and naming Plaintiff Rabbi Braun as a defendant after having knowledge of this lawsuit seeking to quiet title.

j.   Defendants are attempting to extort money from Plaintiffs in the State of New York in seeking deliverance of payment in interstate commerce by way to Defendant PS Funding being located in Delaware and California.

k.   The extortion to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), N.Y. Penal Law § 135.65(A)(1).

395.   The second acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum, and Defendant Rosa Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

a.   Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun or Plaintiff 67 LLC to purchase the 67 Property.

b.   Defendants stole title of the 67 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

c.   The fraud was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the 67 Forgery.

d.   Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the 67 Forgery to create a mortgage on the 67 Property.

e.   Defendant PS Funding knowingly made use of the fraud of title to induce payment in return for title to the 67 Property by way of the 67 Foreclosure.

f.   Each of the Defendants knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC issued a contract of sale, received any consideration, or had any reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

Page 92

g.    The extortion is brought to life by the 67 Foreclosure, wherein Defendants are threatening to have the 67 Property belonging to Plaintiffs auctioned off to induce Plaintiffs to pay a ransom of $1,200,000.00 at 9.5% interest plus a default rate of 15% and fees albeit neither sum was incurred by Plaintiffs.

h.    Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the 67 Forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel); the extortion was commenced by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on the 67 Property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the 67 Forgery with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the extortion is enforced by Defendant PS Funding with its prosecution of the 67 Foreclosure.

i.    Defendants attempt to extort money from Plaintiffs in the State of New York by seeking deliverance of payment in interstate commerce to demanding payment for Defendant PS Funding being situated in Delaware and California.

j.    The extortion is to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), N.Y. Penal Law § 135.65(A)(1).

396.    The third acts of extortion being committed by individual defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum, and Defendant Rosa Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

a.    Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun and the Plaintiff 67 LLC to purchase the 67 Property.

b.    Defendants stole title of the 67 Property through utilizing the 67 Forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

c.    The fraud was made possible by Defendant Weinfeld, Defendant Bleier, Defendant Dekel, Defendant Teitelbaum, and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the 67 Forgery.

d.   Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the fraud of title to create a mortgage on the 67 Property.

e.   Defendant PS Funding knowingly makes use of the fraud of title to seek payment for the mortgage on the 67 Property.

f.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC nor the Plaintiff 67 LLC issued a contract of sale, received any consideration, or had any reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

g.   The attempt of extortion is brought to life by maintaining the mortgage on the 67 Property and refusing to remove the mortgage in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 of 9.5% interest plus a default rate of 15% and fees albeit Plaintiffs did not incur either obligation.

h.   Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the 67 Forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel and Teitelbaum); the extortion was commenced by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the 67 Forgery with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the attempt of extortion is realized by Defendant PS Funding refusing to remove the encumbrance of the 67 Property despite knowing that the mortgage is based on a forged deed unless the mortgage for the 67 Forgery is paid in full.

i.   Defendants attempt to extort money from Plaintiffs in the State of New York when seeking deliverance of payment in interstate commerce to Defendant PS Funding being situated in Delaware and California.

j.   The attempt of extortion is the efforts to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), and N.Y. Penal Law § 135.65(A)(1).

397.   The fourth acts of extortion being committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum, and Defendant Rosa Funding LLC, and Defendant PS Funding, Defendant Dekel Abstract LLC, are as follows:

a.   Neither Defendant Spitzer nor the Defendant Sham LLC had a contract of sale with Plaintiffs Plaintiff Rabbi Braun, the Plaintiff 67 LLC and the Plaintiff 69 LLC to purchase the 69 Property.

b.   Defendants stole title of the 69 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

c.   The fraud was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

d.   Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding knowingly used the fraud to create a mortgage on the 69 Property.

e.   Defendant PS Funding knowingly makes use of the fraud of title to seek payment for the mortgage on the 69 Property.

f.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 67 LLC nor the Plaintiff 69 LLC issued a contract of sale, received any consideration, or had any reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

g.   The attempt of extortion is brought to life by maintaining the mortgage on the 69 Property and refusing to remove the mortgage in an effort to induce Plaintiffs pay a ransom of $1,200,000.00 of 9.5% interest plus a default rate of 15% and fees albeit Plaintiffs did not incur either obligation.

h.   Defendants operating with a unified mindset to mastermind the extortion, by enabling Defendant Spitzer to initiate the extortion through the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Dekel and Teitelbaum); the extortion was commenced by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding in creating a mortgage on a property that in which the Defendant Sham LLC did not have genuine title; the extortion was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel; and the attempt of extortion is realized by Defendant PS Funding refusing to remove the encumbrance of the 69 Property despite knowing that the mortgage is based on the 69 Forgery.

i.   Defendants attempt to extort money from Plaintiffs in the State of New York when seeking deliverance of payment in interstate commerce to Defendant PS Funding being situated in Delaware and California.

j.   The attempt of extortion is the efforts to force Plaintiffs to pay for a debt on Plaintiffs property, that was not incurred by Plaintiffs, is chargeable as probable cause of a crime within the meaning of 18 USC 1951(a), and N.Y. Penal Law § 135.65(A)(1).

I. _Monetary Transactions in Property Derived from Specified Unlawful Activity – 18 U.S.C._
   _§ 1957._

398.    Plaintiffs' plea that the individual Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum committed violations of conducting Monetary Transactions in Property Derived from Specified Unlawful Activity.

399.    Individual Defendants Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, and Defendant Teitelbaum are engaged in racketeering activity by knowingly engaging in monetary transactions in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, i.e., extortion, and mail and wire fraud (see below).  Defendants stole title to Plaintiffs properties and used them to realize money through mortgages despite each Defendant knowingly aware that there is no valid title transfer of title by Plaintiffs.

400.    The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Teitelbaum, Defendant Rosa Funding LLC, Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

   a.  Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from Plaintiff 67 LLC to the Defendant Sham LLC.

   b.  The forgery of a deed is a financial transaction under 18 USC 1956(c)(4), Defendants unlawful taking of Plaintiffs title to the 67 Property was brought into effect by transmitting the forgery from the State of New Jersey to the City Register located in the City of New York and was initiated by Defendant Rosa Funding and progressed by Defendant PS Funding Inc. both who are financial institutions located outside the State of New York and affecting transactions within the State of New York.

   c.  Forgery in this case is a criminal offense under N.Y. Penal Law 170.10, 170.25 and is also federal offense 18 USC 495 to the extent that

Defendants are representing the forged deed to the Court in claiming that the Defendant Sham LLC is the genuine owner of the 67 Property.

d.    The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

e.    Defendants Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding engaged in a monetary transaction of criminal derived property of at least $1.2 million derived from specified unlawful activity (mail and wire fraud, extortion) by knowingly creating a mortgage on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

f.    Defendant PS Funding knowingly makes use of the criminal derived transaction to foreclose the 67 Property by way of the 67 Foreclosure despite knowing that the Defendant Sham LLC does not have valid title. The knowledge is confirmed by the fact that Defendant PS Funding has not sought to rescind any of the mortgages issued to the AIF and instead continued to seek compounded interest on each of the mortgages.

g.    Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

h.    Defendants operating with a unified mindset to mastermind the criminal activity, by enabling Defendant Spitzer to initiate the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC); the forgery was advanced to a monetary transaction by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding as a financial institution creating a mortgage on a property despite knowing that the Defendant Sham LLC did not have genuine title; the monetary transaction was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC; and the monetary transaction was made a reality with the assignment of the mortgage to Defendant PS Funding, a financial institution, and Defendant PS Funding Inc. knowingly advancing the monetary transaction with its prosecution of the 67 Foreclosure.

i.    Defendants' acts are chargeable as probable cause of a crime under 18 USC 1957.

401.    The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

   a.    Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 69 LLC to the Defendant Sham LLC.

   b.    The forgery of a deed is a financial transaction under 18 USC 1956(c)(4), Defendants unlawful taking of Plaintiffs title to the 69 Property was brought into effect by transmitting the forgery from the State of New Jersey to the City Register located in the City of New York and was initiated by Defendant Rosa Funding and progressed by Defendant PS Funding Inc. both who are financial institutions located outside the State of New York and affecting transactions within the State of New York.

   c.    Forgery in this case is a criminal offense under N.Y. Penal Law 170.10, 170.25 and is also federal offense 18 USC 495 to the extent that Defendants are representing the forged deed to the Court in claiming that the Defendant Sham LLC is the genuine owner of the 69 Property.

   d.    The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

   e.    Defendants Defendant Weinfeld, Defendant Bleier and Rosa Funding engaged in a monetary transaction of criminal derived property of financing $1.2 million derived from specified unlawful activity by knowingly creating a mortgage on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

   f.    Defendant PS Funding knowingly makes use of the criminal derived transaction to foreclose the 69 Property by way of the 69 Foreclosure despite knowing that the Defendant Sham LLC does not have valid title. The knowledge is confirmed by the fact that Defendant PS Funding has not sought to rescind any of the mortgages issued to the AIF and instead continued to seek compounded interest on each of the mortgages.

   g.    Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 69 LLC nor Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a

contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

    h.    Defendants operating with a unified mindset to mastermind the criminal activity, by enabling Defendant Spitzer to initiate the forgery that was notarized by Defendant Weisz (who is also a servant of Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding LLC); the forgery was advanced to a monetary transaction by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding as a financial institution creating a mortgage on a property despite knowing that the Defendant Sham LLC did not have genuine title; the monetary transaction was made possible when the forged deed with the mortgages were filed with the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC; and the monetary transaction was made a reality with the assignment of the mortgage to Defendant PS Funding, Inc., a financial institution, and Defendant PS Funding Inc. knowingly advancing the monetary transaction with its prosecution of the 69 Foreclosure.

    i.    Defendants' acts are chargeable as probable cause of a crime under 18 USC 1957.

402.    The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

    a.    Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through utilizing a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

    b.    The forgery of a deed is a security as a certificate of interest in property under 18 USC 2311.

    c.    Defendants unlawful taking of Plaintiffs title to the 67 Property was transmitted from the State of New Jersey to the City Register located in the City of New York.

    d.    The forgery was made possible by Defendant Weisz to notarize the forgery.

    e.    Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

f.  The forged deed with the mortgages were transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

g.  Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

h.  Defendants are attempting to obtain money for the forgery by way of the 67 Foreclosure in an amount exceeding $5,000 in value.

i.  Defendants are attempting to obtain money for the forgery by way of claiming a security on the 67 Property in an amount exceeding $5,000 in value.

403.  The following facts illustrate the acts in violation of section 1957 committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by individual defendants Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

a.  Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through a forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from Plaintiff 69 LLC to the Defendant Sham LLC.

b.  The forgery of a deed is a security as a certificate of interest in property under 18 USC 2311.

c.  Defendants unlawful taking of Plaintiffs title to the 69 Property was transmitted from the State of New Jersey to the City Register located in the City of New York.

d.  The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the forgery.

e.  Defendants Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

f.  The forged deed with the mortgages were transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

g.  Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the

Plaintiff 69 LLC nor the Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

h.  Defendants are attempting to obtain money for the forgery by way of the 69 Foreclosure in amount exceeding $5,000 in value.

i.  Defendants are attempting to obtain money for the forgery by way of claiming a security on the 69 Property in an amount exceeding $5,000 in value.

J.  _Mail and Wire Fraud - 18 U.S.C. § 1341 and § 1343_

404.    Plaintiffs plead that the individual Defendants, Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Weisz, Defendant Teitelbaum committed violations of Mail and Wire Fraud.

405.    The individual Defendants referenced above are engaged in racketeering activity by taking committing mail and wire fraud, namely creating a forgery of stolen title to Plaintiffs property and transmitting them to the internet and inducing the City Register to mail the forged deed through the United States Postal Services.

a.  The following facts illustrate the mail and wire fraud acts committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

b.  Defendants engaged in an unlawful taking of title from Plaintiffs of the 67 Property through the 67 Forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 67 Property from the Plaintiff 67 LLC to the Defendant Sham LLC.

c.  The 67 Forgery of the deed was the means by which Defendants placed a mortgage on the 67 Property.

d.  Defendants unlawful taking of Plaintiffs title to the 67 Property was transmitted through the wires of the internet from the State of New Jersey to the City Register located in the City of New York.

e.  The 67 Forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding, Defendant Teitelbaum, Defendant Dekel directing its associate Defendant Weisz to notarize the 67 Forgery.

f.   Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a mortgage of $1.2 million on the 67 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

g.   The 67 Forgery with the mortgages was transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

h.   Defendant Teitelbaum and Defendant Dekel directed the City Register to use the United States Postal Services to return the forged deed accompanied with the mortgage.

i.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 67 Property by the fact that neither the Plaintiff 67 LLC nor Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 67 Property to Defendant Spitzer or the Defendant Sham LLC.

j.   These acts in totality support the charge of criminality under 18 USC 1341, 1343, and 1952 and were also committed to accomplish a state crime prohibited under N.Y. Real Prop. Law § 430.

406.   The following facts illustrate the mail and wire fraud acts committed by Defendant Spitzer, Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding LLC, and Defendant PS Funding aided and abetted by Defendant Weisz, Defendant Teitelbaum and Defendant Dekel Abstract LLC:

a.   Defendants engaged in an unlawful taking of title from Plaintiffs of the 69 Property through 69 Forgery of Plaintiff Rabbi Braun's signature initiated by Defendant Spitzer transferring 100% of the title of the 69 Property from the Plaintiff 69 LLC to the Defendant Sham LLC.

b.   The forgery of the deed was the means by which to place a mortgage on the 69 Property.

c.   Defendants unlawful taking of Plaintiffs title to the 69 Property was transmitted through the wires of the internet from the State of New Jersey to the City Register located in the City of New York.

d.   The forgery was made possible by Defendant Weinfeld, Defendant Bleier and Defendant Rosa Funding directing its servant Defendant Weisz to notarize the 69 Forgery.

e.   Defendant Weinfeld, Defendant Bleier, Defendant Rosa Funding and Defendant PS Funding pledged security on the forgery by way of a

mortgage of $1.2 million on the 69 Property while knowing that the deed of the Defendant Sham LLC is a forgery.

f.   The forged deed with the mortgages was transmitted to the City Register by Defendant Teitelbaum and Defendant Dekel Abstract LLC.

g.   Defendant Teitelbaum and Defendant Dekel directed the City Register to use the United States Postal Services to return the forged deed accompanied with the mortgage.

h.   Each Defendant knew or should have known that the Defendant Sham LLC did not receive title to the 69 Property by the fact that neither the Plaintiff 69 LLC nor the Plaintiff 67 LLC or Plaintiff Rabbi Braun issued a contract of sale, received any consideration, or had any sound reason to gift the 69 Property to Defendant Spitzer or the Defendant Sham LLC.

i.   These acts in totality support the charge of criminality under 18 USC 1341, 1343, and 1952 and were also committed to accomplish a state crime prohibited under N.Y. Real Prop. Law § 430.

407.   As a direct result of the foregoing acts committed by Defendants, Plaintiff Rabbi Braun and the Plaintiff 67 LLC's right to clean title of the 67 Property was slandered.  As a direct of the foregoing acts committed by Defendant Spitzer and the Defendant Sham LLC, Plaintiff Rabbi Braun and the Plaintiff 69 LLC and the Plaintiff 67 LLC's right to clean title of the 69 Property was slandered. As a direct of the foregoing acts committed by Defendants, Plaintiffs suffered damages.

## K.   *Pattern of Racketeering*

408.   The actions constitute a pattern of racketeering activity because each Defendant committed at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity". The acts of wire fraud, mail fraud, money laundering (§ 1957); and interference with interstate commerce by means of extortion (18 U.S.C. § 1951) set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

409.     The closed-ended continuity test is satisfied, as there is proof of the commission of a series of related predicates extending over a substantial period of time, from about year 2019 to the present time.  Moreover, there is closed-ended continuity as this was not just one continuous mail and wire fraud scheme but involved schemes to defraud multiple victims, and multiple schemes involving the commission of multiple different predicate acts, including extortion and monetary transactions in criminally derived property.

410.     The "threat of continuity" test is demonstrated as the predicates can be attributed to Defendants operating as part of long-term association that exists for criminal purposes.  The continuity requirement is likewise satisfied for the additional reason that the predicate acts were a regular way of conducting Defendants ongoing business and of conducting or participating in the ongoing RICO enterprise. The criminal and predicate acts of Defendants have been related and continuous and have evidenced a pattern of racketeering.

411.     Plaintiffs have suffered injury to its person and property within the meaning of 18 U.S.C. §1964(c) by reason of Defendants' violations of 18 U.S.C. §1962(c), in an amount to be determined at trial, but no less than the minimum jurisdictional limit of this court.

412.     In particular, Plaintiff Rabbi Braun has suffered an injury to its health and well-being.

413.     Plaintiffs demand to recover treble damages and the costs of this action, including reasonable attorney's fee, under the provisions of 18 U.S.C.A. § 1964(c).

414.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## **JURY DEMAND**

415.     Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully asks the Court to enter judgment in Plaintiffs' favor:

a.   declaring that any conveyance from 1567 56th Street, LLC to 1567 56 NY LLC with regard to the 67 Property is void ab initio;

b.   declaring that any conveyance from 1569 56th Street, LLC to 1567 56 NY LLC with regard to the 69 Property is void ab initio;

c.   injunctive relief striking the deed of 1567 56 NY LLC on the 67 Property;

d.   injunctive relief striking the deed of 1567 56 NY LLC on the 69 Property;

e.   injunctive relief striking the mortgages created by Defendant Rosa Funding on the 67 Property;

f.   injunctive relief striking the mortgages created by Defendant Rosa Funding on the 69 Property;

g.   declaring that, Defendant Spitzer, Josh Defendant Weinfeld, Isidore Defendant Bleier, 1567 56 NY LLC, Defendant Dekel Abstract LLC, Abraham Teitelbaum, Defendant BSD Realty Holdings Inc., Defendant Rosa Funding LLC, Defendant PS Funding, Inc., and Jehuda Defendant Weisz are divested from any claim to the 67 Property;

h.   declaring that, Defendant Spitzer, Josh Defendant Weinfeld, Isidore Defendant Bleier, 1567 56 NY LLC, Defendant Dekel Abstract LLC, Abraham Teitelbaum, Defendant BSD Realty Holdings Inc., Defendant Rosa Funding LLC, Defendant PS Funding, Inc., and Jehuda Defendant Weisz are divested from any claim to the 69 Property;

i.   awarding money damages;

j.   awarding punitive damages;

k.   awarding treble damages, and awarding attorney fees with legal costs, and

l.   together with such other and further relief available at law to make the Plaintiffs whole.

## **<u>VERIFICATION</u>**

Levi Huebner verifies pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, that I conducted a reasonable inquiry into the facts and laws stated in the foregoing pleading, and certify in good faith that under the circumstances:

      1.  The factual allegations stated in the foregoing pleading related to Plaintiffs are true to the best of my knowledge based on the records in my office and the information provided by Plaintiffs.

      2.  The factual allegations stated in the foregoing pleading related to each defendant are made upon information and belief to the best of my knowledge by familiarity of the facts and statements that either a defendant and/or its agents made available to the public, Plaintiffs, my staff, and or became known  to me from a reliable source, while reserving the right to verify its veracity or dispute them.

Dated: Brooklyn, NY
        February 23, 2024

                        Respectfully submitted,

                        Levi Huebner & Associates PC

                        /s/ Levi Huebner
                        _____

                        488 Empire Boulevard, Suite 100
                        Brooklyn, NY 11225
                        Tell: (212) 354-5555

                        *Attorneys for Plaintiffs*