UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

1567 56TH STREET, LLC, 1569 56TH
STREET, LLC, SHLOMO BRAUN,

    *Plaintiffs*,

 - against -

ARTHUR SPITZER, JOSH WEINFELD,
ISIDORE BLEIER, BSD REALTY HOLDINGS,
INC., 1567 56 NY LLC, DEKEL ABSTRACT
LLC, ABRAHAM TEITELBAUM, ROSA
FUNDING LLC, PS FUNDING, INC.,
JEHUDA WEISZ,

    *Defendants*.

----------------------------------X

**MEMORANDUM & ORDER**

No. 22-CV-04873(KAM)(RML)

**KIYO A. MATSUMOTO, United States District Judge:**

 Plaintiffs Shlomo Braun ("Braun"), 1567 56th Street, LLC ("67 LLC"), and 1569 56th Street, LLC ("69 LLC") (collectively, "Plaintiffs") commenced this action against Defendants Arthur Spitzer ("Spitzer"), Josh Weinfeld ("Weinfeld"), Isidore Bleier ("Bleier"), BSD Realty Holdings, Inc. ("BSD Realty"), 1567 56 NY LLC ("Sham LLC"), Dekel Abstract LLC ("Dekel LLC"), Abraham Teitelbaum ("Teitelbaum"), Rosa Funding LLC ("Rosa LLC"), and Jehuda Weisz ("Weisz") (collectively, "Defendants").[1] Plaintiffs allege ten causes of action including, *inter alia*, fraud, conspiracy to defraud, and RICO. (*See generally* ECF No. 69, Third

---

[1] Defendant PS Funding, Inc. ("PS Funding"), was voluntarily dismissed from this action on June 4, 2024. (ECF No. 81.)

Amended Complaint ("TAC").)

Presently before the Court are two motions to dismiss by: (1) defendants Weinfeld, Bleier, and Rosa LLC (the "Rosa Defendants") to dismiss counts nine (civil conspiracy to defraud) and ten (civil RICO) of the Third Amended Complaint ("Count Nine" and "Count Ten," respectively) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (ECF No. 86, "Rosa Mot."), and (2) defendants Teitelbaum, Weisz, and Dekel LLC (the "Dekel Defendants") to dismiss count ten of the Third Amended Complaint ("Count Ten") pursuant to Rules 12(b)(6) and 9(b) (ECF No. 90, "Dekel Mot."). For the reasons set forth below, the Rosa Defendants' motion to dismiss Counts Nine and Ten is **DENIED,** and the Dekel Defendants' motion to dismiss Count Ten is **DENIED.**

## BACKGROUND

The Court accepts the allegations in Plaintiffs' Amended Complaint as true for the purpose of resolving the motions to dismiss under Rule 12(b)(6). *See J.S. ex rel N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

### I. Factual Background

#### A. The Parties

Plaintiffs are New York residents domiciled in Brooklyn, New York. (TAC ¶ 3.) Defendants are all domiciled and operating in New Jersey. (*Id.* ¶ 1.)

Plaintiff Braun holds title to two adjacent properties

located at 1567 56th Street (the "67 Property") and 1569 56th Street (the "69 Property") in Brooklyn, New York.  (*Id* ¶ 22.)  The 67 Property and 69 Property are the primary residences of Braun and his immediate family members.  (*Id.* ¶ 23.)

Braun is the sole member of plaintiffs 1567 56th Street LLC ("67 LLC") and 1569 56th Street LLC ("69 LLC").  (*Id.* ¶¶ 24, 25.) 67 LLC had clear title to, and ownership of, the entire 67 Property and 60% of the 69 Property.  (*Id.* ¶¶ 28, 32.)  69 LLC had clear title to, and ownership of, the remaining 40% of the 69 Property. (*Id.* ¶¶ 26, 28.)  Prior to Defendants' alleged actions, both the 67 Property and the 69 Property were clear from any defects and encumbrances.  (*Id.* ¶¶ 30-31, 34-35.)

Defendant Spitzer is an associate of defendants Weinfeld and Bleier, and has repeatedly referred to Weinfeld as his "superior." (*Id.* ¶¶ 228(b), 233(a).)  In 2017, Spitzer filed for bankruptcy, claiming that he had less than $50,000 in assets.  (*Id.* ¶ 362(g).) Afterwards, Spitzer, on behalf of the other Defendants, would obtain property throughout 2018 to 2022 using various fraudulent means, including forgery.  (*Id.* ¶¶ 305, 306.)  On August 21, 2024, Spitzer was indicted in the District of New Jersey on eight counts of wire fraud, one count of bank fraud, one count of bank and wire fraud conspiracy, two counts of aggravated identity theft, one count of making a false statement to a financial institution, and two counts of money laundering.  (*See* ECF No. 93); Indict., *United*

*States v. Spitzer, et al.*, No. 24-cr-528 (ESK) (D.N.J. Aug. 21, 2024).[2]

Defendant Weinfeld was a partner in, and managed the affairs of, defendant Rosa LLC and non-party entity 703 Funding. (*Id.* ¶¶ 284, 285.) Weinfeld and Spitzer are business partners, with Weinfeld acting as Spitzer's superior. (*Id.* ¶¶ 209-28, 286.)

Defendant Bleier was a partner in defendant Rosa LLC and 703 Funding. (*Id.* ¶ 291.) Bleier was also partners with Weinfeld in the affairs related to the alleged fraudulent scheme. (*Id.* ¶ 290.) Plaintiffs allege that Bleier served as the "front man" and "senior advisor" to the fraudulent scheme. (*Id.* ¶¶ 292, 293.) Bleier owned non-party entity DB Holdings LLC ("DB Holdings"), which received several promissory notes from Spitzer as payment for Bleier's role in Defendants' fraudulent scheme. (*Id.* ¶¶ 297-300.)

Defendant Rosa LLC is jointly owned by defendants Bleier and Weinfeld. (*Id.* ¶ 310.) Rosa LLC is a nonbank lending company in New Jersey that originates mortgages and collects commission on the generated mortgages. (*Id.* ¶¶ 310, 314-15.) Rosa LLC would also operate under other names, such as 703 Funding and Sonic Capital LLC. (*Id.* ¶ 311.) Rosa LLC's role in the scheme involved

---

[2] Ordinarily, a court does not consider any materials outside of the pleadings in considering a motion to dismiss. However, courts may – and routinely do – take judicial notice of public records of a party's indictment. *See, e.g.*, *May v. Levy*, 659 F. Supp. 3d 323, 336 (E.D.N.Y. 2023) ("The Court takes judicial notice that Plaintiff was subject to an indictment."); *Smith v. City of New York*, No. 13-cv-2395 (SJ)(RER), 2014 WL 4904557, at *1 (E.D.N.Y. Sept. 30, 2014) (taking judicial notice of an indictment).

generating mortgages which appear genuine but are actually
fraudulent.  (*Id.* ¶ 316.)

Defendant Teitelbaum is a licensed title insurance agent.
(*Id.* ¶ 319.)  Teitelbaum is a co-owner of defendant Dekel LLC and
non-party entity ART Holdings.  (*Id.* ¶¶ 320, 321.)  Plaintiffs
allege that Teitelbaum used his license as a title insurance agent
to create title insurance on deeds bearing forged signatures of
Plaintiff Braun.  (*Id.* ¶ 323.)  In return, Teitelbaum, through ART
Holdings, received promissory notes on other properties as
compensation for his role in the fraudulent scheme.  (*Id.* ¶¶ 324,
325.)

Defendant Weisz is an associate of defendant Dekel LLC, and
business partners with defendant Teitelbaum.  (*Id.* ¶¶ 336, 337.)
As discussed further below, Weisz notarized the forged signatures
on the deeds belonging to Plaintiffs.  (*Id.* ¶ 338.)  As
compensation for his role in the scheme, Weisz received from
Spitzer title to property at 1303 Hickory Street, Toms River, New
Jersey, worth approximately $600,000.  (*Id.* ¶¶ 339, 360.)

Defendant Dekel LLC is a title search company co-owned by
Teitelbaum.  (*Id.* ¶¶ 327-28.)  Dekel LLC also employed defendant
Weisz.  (*Id.* ¶ 331.)  Dekel LLC would also receive the mortgage
funds generated from the fraudulent scheme.  (*Id.* ¶ 332.)

Defendant PS Funding is a nonbank lending company making real
estate loans affiliated with a startup named PeerStreet Inc.

("PeerStreet"). (*Id. ¶¶* 248, 272.) Weinfeld and Bleier were agents of PS Funding. (*Id. ¶* 233(a).) To nonbank lenders, PeerStreet represented itself as a marketplace to obtain funding for mortgages. (*Id. ¶* 248.) These purported lenders were a crowdfunding group of laymen with no sophisticated understandings of mortgages and the required due diligence. (*Id.*) PeerStreet represented to potential investors that its mortgages are legitimate, a product of its due diligence, and based on genuine title. (*Id.*) PS Funding filed for bankruptcy in mid-2023. (*Id. ¶* 258.)

Defendant BSD Realty served as the vehicle to redistribute all the equity received from the fraudulent scheme – specifically, the funds received from PS Funding. (*Id. ¶* 341.) At all relevant times, Spitzer held a substantial interest in BSD Realty. (*Id. ¶* 340.)

Defendants Weinfeld, Rosa LLC, Bleier, Dekel LLC, Teitelbaum, and Weisz, operate out of the same office and suite located at 485 Oak Glen Road, Howell, New Jersey, despite Rosa LLC and Dekel LLC being registered at two different addresses. (*Id. ¶* 228(c).)

## B. Fraud on Plaintiffs' Properties

On August 20, 2019, defendant Spitzer created defendant 1567 56 NY LLC (the "Sham LLC") without Plaintiffs' knowledge. (*Id. ¶¶* 36, 37.) In 2019, Spitzer, with the assistance of one or more of the Defendants, forged Braun's signature to transfer the titles of

the 67 Property and the 69 Property from 67 LLC to Sham LLC. (*Id.*
¶¶ 40, 63, 64.) Despite 67 LLC owning only 60% of the title to 69
Property, the documents transferring title to Sham LLC purported
to transfer 100% of the title to 69 Property. (*Id.* ¶ 183.)
Plaintiffs did not sell, gift, or otherwise receive any
consideration for, the transfer of titles of 67 Property and 69
Property to Sham LLC. (*Id.* ¶¶ 50-53, 73-76.)

Defendant Weisz, an employee of defendants Dekel LLC and
Teitelbaum, notarized the forged signatures transferring titles of
67 Property and 69 Property from 67 LLC to Sham LLC. (*Id.* ¶¶ 42,
65.) Braun has never sought nor obtained any notarization services
from Weisz. (*Id.* ¶¶ 43, 44, 47.) Indeed, on the day that Weisz
claimed to have notarized the forged signatures in Brooklyn, New
York, Weisz had appeared for work in New Jersey and did not travel
to Brooklyn. (*Id.* ¶ 187.)

On August 27, 2019, after 67 Property and 69 Property had
been transferred to Sham LLC, defendants Rosa LLC, Weinfeld, and
Bleier created an instrument encumbering the 67 Property with a
mortgage for $1,200,000. (*Id.* ¶ 48.) On August 29, 2019, Rosa
LLC, Weinfeld, and Bleier encumbered the 69 Property with a
mortgage for $1,200,000. (*Id.* ¶ 71.) Bleier secured and
guaranteed the mortgages for both properties. (*Id.* ¶ 232(e).)
Defendant BSD Realty accepted and redistributed to various shell
companies the funds generated on the mortgages on the 67 Property

7

and 69 Property. (*Id.* ¶ 232(f).) At the time the two mortgages were created, there was not yet a record in the City Register of the transfer of titles from plaintiff 67 LLC to defendant Sham LLC. (*Id.* ¶ 233(b).) Despite the lack of a public record, Rosa LLC created the mortgages, relying on unrecorded and notarized deeds from Spitzer and Weisz. (*Id.*) On the mortgages generated on Plaintiffs' properties, Rosa LLC collected a $60,000 commission plus additional commission in an unspecified amount. (*Id.* ¶¶ 314-15.)

In August 2019, BSD Realty received the funds generated from the mortgages placed on the 67 Property and the 69 Property. (*Id.* ¶¶ 342-47.) BSD Realty then used those funds to pay for the purchases of eleven other properties in New Jersey. (*Id.* ¶¶ 349-58.) Those eleven properties would also be encumbered by a promissory note to Rosa LLC or 703 Funding at approximately 75% of the purchase price. (*Id.* ¶ 359.) Spitzer signed those promissory notes, and the notes were subsequently assigned to PS Funding. (*Id.*)

On September 23, 2019, Teitelbaum used his license as a title insurance agent to record the fraudulent deeds and mortgages on 67 Property and 69 Property in the City Register – allegedly without performing any title searches or due diligence to determine the legitimacy of the title transfers and mortgages on 67 Property and 69 Property. (*Id.* ¶¶ 49, 54, 72, 77, 148, 232(j).) Teitelbaum

and Dekel LLC then assigned the mortgages on 67 Property and 69 Property from defendant Rosa LLC to defendant PS Funding. (*Id.* ¶ 49.)

On or about February 25, 2020, Braun learned about the fraudulent deed transfers of the 67 Property and 69 Property. (*Id.* ¶ 209.) Braun made multiple phone calls to Spitzer, demanding the return of title to the 67 Property and 69 Property, and the extinguishing of mortgages on both properties. (*Id.*) Spitzer admitted he forged Braun's signature, apologized to Braun for the conversion and promised the return of title – but insisted that he needed defendant Weinfeld's approval. (*Id.* ¶¶ 209, 389.) Spitzer claimed to have been "forced" to forge Braun's signature, though he did not specify by whom. (*Id.* ¶ 389.)

From February 25, 2020 onwards, Spitzer sought an innocent lender to refinance the mortgages on the 67 Property and 69 Property. (*Id.* ¶ 210.) Due to Braun's protests and demands for return of title, Spitzer was unable to refinance the properties. (*Id.*) To satisfy Braun's protests, on March 25, 2020, Spitzer forwarded to Braun two satisfactions of mortgages purportedly executed by PS Funding in satisfaction of the mortgages on the 67 Property and 69 Property. (*Id.*) From March 2020 to November 2020, Spitzer claimed that the satisfactions of mortgages were not filed due to the government shutdown associated with the COVID-19 pandemic. (*Id.*) On November 5, 2020, frustrated by Spitzer's

evasiveness, Braun filed for title of the 67 Property and 69 Property in his own name to publicly declare his rightful ownership. (*Id.* ¶ 212.)

Following Spitzer's representation that he needed Weinfeld's approval to return title of Braun's properties to Braun, Braun interacted with Weinfeld from November 2020 to mid-2022 to seek return of title. (*Id.* ¶ 213.) Despite multiple meetings and conversations where Weinfeld assured Braun that clean title would be promptly returned, Braun did not receive clean title to his properties. (*Id.* ¶¶ 213-26.) At one point, Weinfeld had even suggested that Braun must "buy back" his titles to his properties. (*Id.* ¶ 226.)

On February 9, 2021, PS Funding emailed Spitzer, inquiring about Braun's ownership of the 67 Property and 69 Property, and notifying Spitzer that transfers of the 67 Property and 69 Property constitute a "default under the loan documents." (*Id.* ¶¶ 55, 78.) PS Funding then commenced foreclosure actions on both the 67 Property and 69 Property. First, on February 15, 2021, PS Funding commenced a foreclosure action in New York Supreme Court, Kings County, against Sham LLC, Spitzer, New York City Department of Finance and Jane/John Doe Nos. 1-12 (the "69 Foreclosure Action"). (*Id.* ¶ 79.) Three days later, on February 18, 2021, PS Funding commenced a foreclosure action in New York Supreme Court, Kings County, against Sham LLC, Spitzer, New York City Department of

Finance, and John/Jane Doe Nos. 1-12 (the "67 Foreclosure Action").
(*Id.* ¶ 56.)  Braun was neither served with nor notified of either
the 67 Foreclosure Action or the 69 Foreclosure Action.  (*Id.* ¶¶
57-62, 80-83.)

### C.  The Alleged RICO Scheme

Plaintiffs allege that Defendants' scheme in fraudulently
obtaining and encumbering title to real property was not limited
to the 67 Property and 69 Property.  Rather, Plaintiffs allege
that Defendants comprise an association-in-fact enterprise in
furtherance of a scheme to defraud laymen investors and owners of
real property (the "Spitzer Enterprise").  (*Id.* ¶ 243.)  The scheme
had two parts: first, a system that generated a portfolio of
mortgages, and then second, a system that used fraudulent mortgages
to embezzle money from laymen investors.  (*Id.*)

The first part of the scheme involved claiming title to real
estate properties regardless of whether the Spitzer Enterprise had
genuine title.  (*Id.* ¶ 252.)  To accomplish this, defendant Spitzer
forged and stole title to real property, and together with other
members of the Spitzer Enterprise, encumbered the stolen title
with funds from lay investors, after which Spitzer made initial
payments to the mortgages encumbering the stolen titles.  (*Id.* ¶¶
252-66.)  The stolen property would be placed into a shell LLC at
the direction of defendants Weinfeld and Bleier.  (*Id.* ¶ 361.)
Defendant Rosa LLC would create the mortgage paperwork to give the

appearance of a legitimate mortgage. (*Id.*) Defendant Weinfeld, as an agent of PS Funding, would "coordinate" all the members of the Spitzer Enterprise to create the mortgage. (*Id.*) Defendants Dekel LLC and Teitelbaum would expedite the mortgage and transmit the forged documents to the County Clerk or City Register. (*Id.* ¶ 361.) Defendant Bleier personally secured the mortgages. (*Id.* ¶ 253.)

The second part of the scheme involved defendant PS Funding inducing unsophisticated laymen investors to invest their life savings into Defendants' mortgages. (*Id.* ¶ 248.) These laymen investors had no understandings of mortgages, or the due diligence required to ascertain the legitimacy of the mortgages, and were promised high returns from their investment. (*Id.*) Using these investments, defendant PS Funding would advance the funding, or appearance of funding, for Defendants' fraudulent mortgages. (*Id.* ¶ 266.) The money generated from each fraudulent mortgage was then embezzled by the Defendants. (*Id.* ¶ 256.) Specifically, defendant BSD Realty would receive the funds generated from each fraudulent mortgage and distribute those funds in accordance with the Defendants' interests. (*Id.* ¶ 266(f).)

Plaintiff alleges that, while Defendants may try to place the blame solely on Spitzer, the nature of the scheme makes it unlikely that Spitzer would have been able to repeatedly duplicate the same fraud without the knowledge and participation of the other

Defendants. (*Id.* ¶ 362.) Specifically, among other things, Rosa LLC continued to advance more money to Spitzer, despite Spitzer's repeated defaults on mortgages. (*Id.*) Weisz continued to notarize documents brought to him by Spitzer, despite the continued absences of the signees. (*Id.*) Teitelbaum continued to register the deeds brought to him by Spitzer, despite no contracts of sale, no exchange of consideration for the title transfers, and Spitzer's status in bankruptcy. (*Id.*) Bleier continued to personally secure the mortgages issued to Spitzer, despite Spitzer's repeated defaults and lack of assets. (*Id.*)

Through this course of conduct, Defendants operated a fraudulent scheme for a duration of at least three years between January 2019 to mid-2023 when PS Funding filed for bankruptcy.[3] (*Id.* ¶ 374.) Between the latter half of 2019 to the first half of 2020, the Spitzer Enterprise generated at least 26 mortgages in New York and New Jersey. (*Id.* ¶ 268.) These mortgages totaled over $15 million. (*Id.*)

Mendel Deutsch was another victim of Defendants' scheme. (*Id.* ¶ 381.) Deutsch purchased a property at 224 Washington Street, Perth Amboy, New Jersey, and placed the property into an LLC named 224 Washington Street, LLC. (*Id.*) Deutsch received a mortgage of $1,610,000. (*Id.*) Dekel LLC, through either Teitelbaum or Weisz,

---

[3] Though Plaintiffs allege that Defendants' scheme began in 2018, the earliest allegation in the Third Amended Complaint is on January 28, 2019. (TAC ¶ 381(b).)

was the title agent for that purchase and mortgage. (*Id.*) Subsequently, on January 28, 2019, Dekel LLC, through another corporation by the name of Art Holdings LLC, registered a subordinate mortgage of Deutsch's property in the amount of $185,000. (*Id.*) This mortgage was signed and guaranteed by Spitzer, notarized by Teitelbaum, and recorded by Dekel LLC. (*Id.*) Approximately two years later, on or about December 2020, Bleier, through DB Holdings LLC, created another subordinate mortgage on Deutsch's property in the amount of $600,000. (*Id.*) On or about December 24, 2020, the members of Dekel LLC, through Art Holdings LLC, created another subordinate mortgage of $500,000. (*Id.*) On or about January 14, 2021, Bleier, using DB Holdings, created another subordinate mortgage of $225,000. (*Id.*) On February 11, 2021, the property was purportedly sold to Summerfield Ave LLC. (*Id.*) In 2022, a lawsuit was brought by Avraham Blau alleging that Spitzer was never a member of 224 Washington LLC, and has been misrepresenting himself to third parties as a member and authorized agent. (*Id.*)

Another victim of Defendants' scheme is Braun's daughter-in-law, Rivka Braun. (*Id.* ¶ 380.) Plaintiff Braun had purchased property located at 138 Nobility Court, Toms River, New Jersey, as the new home for his son and daughter-in-law. (*Id.*) On or around August 1, 2019, Spitzer forged Rivka Braun's signature transferring title of the property to Spitzer's LLC named 138

Nobility LLC. (*Id.*) Weisz notarized the forged signature. (*Id.*)

Weinfeld originated a $427,000 mortgage on the 138 Nobility

property for a subsidiary of Rosa LLC, 703 Funding. (*Id.*)

Teitelbaum served as the title agent, Dekel LLC registered the

title and mortgage, and Bleier secured the mortgage. (*Id.*) BSD

Realty received $58,073.92 of the funds generated by the mortgage,

with the remaining funds unaccounted for. (*Id.*) PS Funding then

foreclosed on the property, and the property was subsequently

auctioned off. (*Id.*)

Issac Matyas, a Brooklyn resident, is another victim of

Defendants' scheme. (*Id.* ¶ 379.) Matyas agreed to borrow $90,000

from Spitzer. (*Id.*) Unbeknownst to Matyas, on September 26, 2019,

Spitzer transferred title to Matyas' home and encumbered it with

a $997,500 mortgage. (*Id.*) Dekel LLC registered the title and

mortgage of Matyas' home. (*Id.*) On September 27, 2019, BSD Realty

received $400,000 from the mortgage, with the remaining funds

unaccounted for. (*Id.*) Matyas has since brought a lawsuit

claiming that he has been defrauded with a $997,500 mortgage.

(*Id.*)

Adolph and Sarah Polatsek (the "Polatseks") were also victims

of Defendants' scheme. (*Id.* ¶ 378.) The Polatseks lived at 625

Bedford Avenue, Brooklyn, and bequeathed this property in trust

for the Sarah Polatsek 2008 Family Trust. (*Id.*) The sole trustee

of the Sarah Polatsek 2008 Family Trust was 625 Bedford LLC. (*Id.*)

On October 16, 2019, Spitzer held himself out as the sole member of 625 Bedford LLC, and encumbered the Polatseks' home with a $1,995,000 mortgage. (*Id.*) The mortgage was originated by Weinfeld on behalf of Rosa LLC, secured by Bleier, and funded by PS Funding. (*Id.*) The title work was prepared by Teitelbaum and registered by Dekel LLC. (*Id.*) The mortgage on the Polatseks' home was then refinanced with a bona fide lender, FM Home Loans, for $3,000,000. (*Id.*) The mortgage was eventually transferred to Wilmington Savings Fund Society, FSB, d/b/a/ Christiana Trust, in its capacity as Certificate Trustee for NRP Mortgage Trust 1 ("Wilmington"). (*Id.*) Wilmington commenced foreclosure proceedings on 625 Bedford Avenue, which alerted the Polatseks to the fraud. (*Id.*)

Other victims include Elliott and Helen Brociner (the "Brociners") who were approached by Spitzer holding himself out as a mortgage broker on behalf of Bleier and Weinfeld. (*Id.* ¶ 377.) On or about December 30, 2019, without the Brociners' knowledge and consent, Spitzer forged the Brociners' signatures and transferred the Brociners' property to Spitzer's LLC. (*Id.*) The title transfer was done by Teitelbaum, Dekel LLC, and Weisz. (*Id.*) Weinfeld, through Rosa LLC, then encumbered the Brociners' property with a mortgage for $1,995,000. (*Id.*) Bleier personally secured the mortgage. (*Id.*) BSD Realty received $950,000 in connection with the mortgage on the Brociners' property, with the

16

remaining funds unaccounted for. (*Id.*) The Brociners learned of the fraudulent transfer within days of the transfer, and immediately contacted defendants Spitzer, Weinfeld, Dekel LLC, Teitelbaum, and PS Funding to demand return of clean title. (*Id.*) PS Funding registered a satisfaction of mortgage and returned title to the Brociners. (*Id.*)

Plaintiff alleges that Defendants have engaged in (1) extortion, 18 U.S.C. § 1951(a), (2) violations of the federal mail fraud statute, 18 U.S.C. § 1341, (3) violations of the federal wire fraud statute, 18 U.S.C. § 1348, and (4) violations of the predicate crime prohibiting monetary transactions in property derived from specified unlawful activity, 18 U.S.C. § 1957. (TAC ¶ 384.)

## II. Procedural Background

Plaintiffs initially filed this action on August 17, 2022. (ECF No. 1.) On February 23, 2024, Plaintiffs filed the Third Amended Complaint, asserting claims of, *inter alia*, civil RICO and conspiracy to defraud. (*See generally* ECF No. 69.) Plaintiffs seek declaratory relief, injunctive relief, monetary damages, punitive damages, and costs and fees. (*Id.* at 105.) On June 3, 2024, Plaintiffs notified the Court of its settlement with PS Funding and moved to dismiss PS Funding from the action. (ECF No. 79.) On June 4, 2024, PS Funding was dismissed from this action with prejudice. (ECF No. 82.)

On June 18, 2024, the Rosa Defendants' fully briefed motion to dismiss Counts Nine and Ten for failure to state a claim was filed with the Court. (*See* ECF No. 86, "Rosa Mot.")  On June 28, 2024, the Dekel Defendants' fully briefed motion to dismiss Count Ten for failure to state a claim was filed with the Court. (*See* ECF No. 90, "Dekel Mot.")  The Court now considers both motions to dismiss.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In resolving a motion under Rule 12(b)(6), the Court must limit its consideration to the complaint, documents incorporated by reference into the complaint, documents not incorporated but nonetheless integral to the complaint, and matters properly subject to judicial notice. *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d

Cir. 2016)).

## DISCUSSION

### I.   Plaintiffs' RICO Claims

To establish a RICO claim, a plaintiff must show: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). Here, Plaintiffs allege violations of 18 U.S.C. §§ 1962(c) and 1962(d).

### A.   Substantive RICO Claim - 18 U.S.C. § 1962(c)

Section 1962(c) makes it unlawful to participate in the conduct of an "enterprise" through a "pattern of racketeering activity" in interstate or foreign commerce.  18 U.S.C. § 1962(c). To state a claim under § 1962(c), one of RICO's substantive provisions, a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

The Dekel Defendants argue for dismissal of Count Ten for failure to allege (1) a valid RICO enterprise, and (2) a pattern of racketeering.  (Dekel Mot. at 4-9.)  The Rosa Defendants similarly argue that Count Ten should be dismissed for failure to allege (1) a valid RICO enterprise, (2) a pattern of racketeering, and (3) assertions of fraud with particularity.  (Rosa Mot. at 18-

28.)  As the arguments to points (1) and (2) are substantially identical between the Rosa Defendants' motion and the Dekel Defendants' motion, the Court will address those arguments together.  *See, e.g.*, *Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350 (S.D.N.Y. 2024) (jointly addressing separate motions to dismiss that presented similar arguments regarding fraud).

### 1.   RICO Enterprise

The Court first addresses the Dekel Defendants' and the Rosa Defendants' arguments that Plaintiffs have failed to allege a RICO enterprise.  (Dekel Mot. at 4-7; Rosa Mot. at 18-23.)  For purposes of RICO, an "enterprise" is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Second Circuit has construed "enterprise" liberally, noting that RICO's "language and [] history suggest that Congress sought to define the term as broadly as possible[.]"  *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989). "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (citations omitted); *United States v. Boyle*, 556 U.S. 938, 946 (2009).  A RICO enterprise may be a lawful entity or an association-in-fact.

*See Boritzer v. Calloway*, No. 10-cv-6264 (JPO), 2013 WL 311013, at
*5 (S.D.N.Y. Jan. 24, 2013).

An association-in-fact enterprise "must have at least three
structural features: [1] a purpose, [2] relationships among those
associated with the enterprise, and [3] longevity sufficient to
permit these associates to pursue the enterprise's purpose."
*Boyle*, 556 U.S. at 946. Additionally, courts in the Second Circuit
look to the "hierarchy, organization, and activities" of an
association-in-fact to determine whether "its members functioned
as a unit." *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d
Cir. 1991). Finally, in pleading the "enterprise" element under
RICO, a plaintiff need only satisfy the notice pleading
requirements of Federal Rule of Civil Procedure 8(a). *See In re
Sumitomo Copper*, 995 F. Supp. 451, 454 (S.D.N.Y. 1998).

Plaintiffs have adequately alleged that Defendants constitute
an association-in-fact enterprise (the "Spitzer Enterprise").
Taking Plaintiffs' allegations to be true, as the Court must at
the motion to dismiss stage, Plaintiffs have established that the
Spitzer Enterprise worked in tandem with a common purpose in
executing a fraudulent scheme to deprive rightful property owners
of their titles, encumbering the wrongfully obtained titles with
mortgages, and then embezzling the funds generated from the
wrongfully obtained mortgages. The purpose that all Defendants
shared, under a generous reading of the Third Amended Complaint,

is to enrich the members of the Enterprise through the embezzlement of funds generated from fraudulent mortgages. This sufficiently satisfies the purpose element in *Boyle*. *See Eagle One Roofing Contractors, Inc. v. Acquafredda*, No. 16-cv-3537 (NGG)(SJB), 2018 WL 1701939, at *7 (E.D.N.Y. Mar. 31, 2018) ("[I]t is sufficient to allege that there is an enterprise with the stated objective of defrauding the plaintiff."); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 314 (S.D.N.Y. 2009) (finding a RICO enterprise where the complaint alleges that defendants were "united by a common purpose, namely that of defrauding [Plaintiff].")

In achieving that common purpose, the Spitzer Enterprise relied on the actions of each of the Defendants to execute its fraudulent scheme. Defendants were physically located in a single office, and "depended on one another, acted for one another's benefit, or relied on one another." *Dynarex Corp. v. Farrah*, No. 18-cv-7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019) (citation omitted). For example, even though Spitzer forged Braun's signature, Spitzer still depended on Weisz to obtain a notarized document. (TAC ¶¶ 42, 65.) Furthermore, despite now having fraudulent but notarized title transfers, Defendants needed Weinfeld, Bleier and Rosa LLC to prepare mortgage paperwork prior to any title transfers being filed with the City Register. (*Id.* ¶¶ 48, 71, 231.) Then, for the mortgage to be finalized, Bleier

needed to personally secure the loan. (*Id.* ¶¶ 266(d), 269.) Next, after the mortgage was issued, Defendants relied on Dekel LLC and Teitelbaum to record the mortgage and deeds with the City Register. (*Id.* ¶¶ 266(g), 266(h).) Finally, in order for the scheme to continue, defendant BSD Realty collected the embezzled funds, and redistributed it to further the interest of the Spitzer Enterprise in perpetuating further mortgage fraud activities of the Enterprise. (*Id.* ¶ 266(f).) Thus, Plaintiffs have pleaded an "organized entity" operating out of a single office, with members of the Enterprise serving distinct and necessary roles.[4] (*See id.* ¶¶ 266(a)-(i).)

Aside from each of the Defendants' role in the alleged scheme, Plaintiffs have also pleaded other facts connecting the Defendants to each other. Specifically, Plaintiffs allege that Weinfeld is Spitzer's colleague and superior (*id.* ¶¶ 209-28, 228, 232(a), 286), Weinfeld is business partners with Bleier in Rosa LLC (*id.* ¶¶ 284-85), Bleier received payments from Spitzer (*id.* ¶¶ 297-300), Teitelbaum is a co-owner of Dekel LLC, which employed Weisz (*id.* ¶¶ 320, 336-37), Weisz received payments from Spitzer (*id.* ¶¶ 339,

---

[4] In opposition, the Dekel Defendants argue that Plaintiffs have not alleged that Dekel LLC, Teitelbaum, and Weisz "directed or managed the purported enterprise" to the degree required by the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). (ECF No. 92, "Dekel Reply" at 9-10.) The Court disagrees. *Reves* makes plain that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." 507 U.S. at 184. As discussed above, Plaintiffs have adequately alleged the participation of Teitelbaum, Weisz and Dekel LLC in the conduct of the enterprise.

360), Spitzer held a substantial interest in BSD Realty, which made payments to Dekel LLC and Weisz (*id.* ¶¶ 341, 333-34, 260), and all Defendants operated out of the same office and suite located at 485 Oak Glen Road, Howell, New Jersey (*id.* ¶ 228). This is not, as Defendants suggest, merely a "group [that] existed to do fraud."[5] *Aerowest GmbH v. Freitag*, No. 15-cv-2894, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016). (Dekel Mot. at 6; Rosa Mot. at 18-19.)

The Dekel Defendants and Rosa Defendants further argue that the RICO enterprise must be wholly "separate" from the alleged pattern of racketeering activity. (Dekel Mot. at 6-7; Rosa Mot. at 21-23.) This assertion misunderstands our Supreme Court precedents. As the Supreme Court explained, the separateness requirement only means that the existence of an enterprise is a "separate element that must be proved" and "proof of [an enterprise] does not necessarily establish the [pattern of racketeering activity]." *Boyle*, 556 U.S. at 947 (citation

---

[5] Though the Dekel Defendants and Rosa Defendants cite to *Petroff Amshen LLP*, the quoted language actually arises from a separate case, *Aerowest GmbH v. Freitag*, No. 15-cv-2894 (LDW), 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016). In *Aerowest GmbH*, the sole reason that plaintiffs were able to assert an enterprise was through the defendants' commission of the predicate act. *Id.* at *4. There was neither a common purpose nor any other allegations of an organized entity. *Id.* at **3-4. The allegations here are distinguishable. Here, Plaintiffs have alleged a common purpose and an organized entity: namely, that Defendants, working out of the same office space, all served distinct but necessary roles in perpetuating a common scheme to enrich themselves through mortgage fraud. (*See* TAC ¶¶ 228(c), 266.) As discussed herein, Plaintiffs' allegations are sufficient to plead an association-in-fact.

omitted).  This principle does not mean that allegations of an enterprise and a pattern of racketeering cannot coalesce.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (finding that evidence used to prove pattern of racketeering and an enterprise "may in particular cases coalesce."); *see also United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) ("Proof of [enterprise and pattern of racketeering] [need not] be distinct and independent, as long as the proof offered is sufficient to satisfy both elements."), *cert. denied*, 461 U.S. 945 (1983).  "The fact that the purpose of the enterprise is identical with the alleged pattern of racketeering does not preclude the finding of an enterprise." *Eagle One Roofing Contractors, Inc.*, 2018 WL 1701939, at *7; *see also Boyle*, 556 U.S. at 947 (rejecting the contention that "existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity[.]")[6]  Thus, as discussed above, Plaintiffs have sufficiently alleged the elements of a RICO enterprise, regardless of whether or not those allegations also show a pattern of racketeering element.

---

[6] Dekel Defendants appear to rely on *Hamdeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997) for the proposition that a RICO enterprise must still exist after "the predicate acts [are] removed from the equation."  *Id.* at 1352.  The Second Circuit has explicitly rejected this restrictive approach to the enterprise element.  *See Mazzei*, 700 F.2d at 89-90; *Pavlov v. Bank of New York Co., Inc.*, 25 Fed. Appx. 70, 71 (2d Cir. 2002) ("Our Circuit has rejected the Eighth Circuit's restrictive approach to the enterprise element.").

## 2. Pattern of Racketeering Activity

The Dekel Defendants and Rosa Defendants argue that Plaintiffs have failed to establish a "pattern of racketeering activity" because they fail to adequately allege either "open-ended continuity" or "closed-ended continuity" under the pleading standards of Rule 9(b). (Dekel Mot. 7-9; Rosa Mot. at 23-25.)

To the extent that Dekel Defendants and Rosa Defendants argue that Plaintiffs have failed to plead a pattern of racketeering under Rule 9(b), their arguments misstate the correct pleading standards. Even in RICO complaints alleging some element of fraud, a plaintiff "must only satisfy the notice pleading requirements of Rule 8(a) in alleging the existence of the enterprise, the pattern of racketeering activity and the defendants' interest or participation in the enterprise."[7] *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 4-cv-4631 (CBA), 2006 WL 6176152, at *16 (E.D.N.Y. Mar. 16, 2006).

A "pattern of racketeering activity" is defined by the RICO statute as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). "Racketeering activity" is defined to include any "act" indictable under various specified

---

[7] For this reason, the Rosa Defendants' arguments fail as to Plaintiffs' purported failure to meet the heightened standard of Rule 9(b) regarding (1) the source of how Plaintiff discovered the fraud, (Rosa Mot. at 25-26) (2) the interpersonal relationships and agreements of the enterprise, (*id.*), and (3) how financial rewards flowed to each Defendant (*id*. at 27). As discussed, all these allegations are subject only to Rule 8(a)'s notice pleading standard.

federal statutes, including, as relevant here, predicate acts of mail fraud, wire fraud, money laundering and extortion. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include offenses indictable under 18 U.S.C. §§ 1341 (mail fraud), 1341 (wire fraud), 1951(a) (extortion), and 1957 (money laundering)).[8]

Two predicate acts are necessary to constitute a pattern, though not always sufficient. *See Sedima, S.P.R.L*, 473 U.S. at 496 n.14 ("The implication is that while two acts are necessary, they may not be sufficient."); *see also Indelicato*, 865 F.2d at 1382 ("The legislative history is . . . inconsistent with a rule that any two acts of racketeering activity, without more, suffice to establish a RICO pattern."). The Supreme Court has interpreted the phrase "pattern of racketeering activity" to require both that the RICO predicates pose a threat of continuous criminal activity (the "continuity" requirement) and that they be related to each other (the "relatedness" requirement). *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Here, Plaintiffs have sufficiently alleged more than two predicate acts per defendant in a ten-year period. First, Plaintiffs alleged violations of the wire and mail fraud statutes under 18 U.S.C. §§ 1341, 1348. The elements of federal mail fraud are: (1) the existence of a scheme to defraud involving money or

---

[8] Acts of wire fraud and mail fraud must be pleaded with particularity in satisfaction of Rule 9(b). *See United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004).

property; (2) the use of the mails or wires in furtherance of the scheme, *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*, No. 4-cv-2934 (ERK), 2005 WL 3710370, at *9 (E.D.N.Y. Feb. 22, 2005) (citing *United States v. Trapilo*, 130 F.3d 547, 551-52 (2d Cir. 1997), and (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). The pleading requirements for wire fraud are "essentially identical" to those for mail fraud except that defendants must have used interstate wires for the purpose of executing the alleged scheme. *Morrow v. Black*, 742 F. Supp. 1199, 1205 (E.D.N.Y. 1990) (citation omitted).

In accordance with Rule 9(b), Plaintiffs alleged that on August 26, 2019, in order to manufacture fraudulent mortgages, Defendants Weinfeld, Bleier, Spitzer, Dekel LLC, Teitelbaum and Weisz transmitted the fraudulent title transfers for the 67 Property and 69 Property over email. (TAC ¶ 388.) Plaintiffs further allege that, on September 23, 2019, Defendants Dekel LLC and Teitelbaum transmitted by email and United States mail, funds, the fraudulent title transfers, and mortgages containing forged signatures and fraudulent directives to transfer Plaintiffs' property, to the City Register, which Defendants requested to mail back a copy of the registration to Dekel LLC, in furtherance of a

mortgage fraud scheme that wrongfully deprived Plaintiffs of clean title to their properties. (*Id.* ¶¶ 385-87.) Plaintiffs' allegations include the senders, recipients, date, and purported content of the fraudulent transmission, and thus, satisfy Rule 9(b)'s heightened pleading standard. *See Mills*, 12 F.3d at 1176 (noting that allegations of predicate mail and wire fraud acts "should state the contents of the communications, who was involved, [and] when and where they took place, and [should] explain why they were fraudulent."); *Aiu Ins. Co.*, 2005 WL 3710370, at *11 ("In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [] require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'").

In addition to the allegations of mail and wire fraud, there can be little dispute that Plaintiffs have also alleged predicate acts arising under the federal money laundering statute, 18 U.S.C. § 1957.[9] Section 1957 provides, in relevant part:

---

[9] The Court notes that neither the Dekel Defendants nor the Rosa Defendants challenge whether the predicate acts of money laundering (18 U.S.C. § 1957) or extortion (18 U.S.C. § 1951(a)) have been sufficiently pleaded. Allegations of §§ 1951(a) and 1957 violations are subject only to Rule 8 notice pleading standards. *See McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (holding that "the more lenient pleading standards" of Rule 8(a) apply to claims of extortion alleged as RICO predicate acts); *Madanes v. Madanes*, 981 F. Supp. 241 (S.D.N.Y. 1997) ("[T]he money laundering allegations are assessed under the

> Whoever, in any of the circumstances set forth
> in subsection (d), knowingly engages or
> attempts to engage in a monetary transaction
> in criminally derived property of a value
> greater than $10,000 and is derived from
> specified unlawful activity, shall be punished
> as provided in subsection (b).

18 U.S.C. § 1957. First, Plaintiffs allege that on August 28, 2019, Defendants, through BSD Realty, received transactions of $850,250 and $20,391.11 in loan proceeds arising from the fraudulent mortgage on the 67 Property. (TAC ¶¶ 342-43.) Second, Plaintiffs further allege that, on August 28, 2019, Defendants, through BSD Realty, received $1,597,068.11 from the loan proceeds from the mortgage on 69 Property. (*Id.* ¶¶ 344-47.) Third, Plaintiffs allege that, on September 4 and 12, 2019, Defendants, through BSD Realty, used the proceeds received from the fraudulent mortgages on the 67 Property and the 69 Property to partially pay for the purchases of eleven other properties in New Jersey, which were then encumbered with promissory notes to Rosa LLC. (*Id.* ¶¶ 348-59.) Fourth, Plaintiffs allege that, on September 4, 2019, BSD Realty sent Dekel LLC $28,500 for its role in defrauding Plaintiffs. (*Id.* ¶ 333). Fifth, Plaintiffs allege that, on September 5, 2019, BSD Realty sent Dekel LLC another $13,766.62 for its role in defrauding Plaintiffs. (*Id.* ¶ 334.) Sixth, Plaintiffs allege that, on October 10, 2019, BSD Realty satisfied

less stringent 'notice pleading' requirements of Rule 8(a).") (citations omitted).

part of Weisz's mortgage on a property that was, at least in part, gifted in exchange for Weisz's role in the fraudulent mortgage scheme. (*Id.* ¶ 360.) Thus, Plaintiffs have alleged – and Defendants do not dispute – that Defendants have committed two predicate acts.

The Dekel Defendants and Rosa Defendants challenge only the "continuity" requirement in their respective motions to dismiss. (Dekel Mot. 8-9; Rosa Mot. 23-25.) Plaintiffs here may satisfy the continuity requirement in one of two ways: either by alleging an "open-ended" pattern of racketeering activity (i.e., past criminal conduct combined with a threat of future criminal conduct) or a "closed-ended" pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time). *See GICC Cap. Corp. v. Tech. Fin. Grp. Inc.*, 67 F.3d 463, 466 (2d Cir. 1995), *cert. denied*, 518 U.S. 1017 (1996). "In determining whether continuity exists the court should not limit its consideration to the duration of the scheme, but should also look at the overall context in which the acts took place." *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 75 (S.D.N.Y. 1995) (quoting *Deem v. Lockheed Corp.*, No. 87-cv-7017 (JMC), 1991 WL 196171, at *9 (S.D.N.Y. Sept. 25, 1991) (internal quotations omitted). At the pleading stage, the hurdle is "relatively low." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 497 (S.D.N.Y. 2007); *see, e.g.*, *Proctor & Gamble Co.*

*v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 18 (2d Cir. 1989) ("Whether defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial."); *Executive Photo, Inc. v. Norrell*, 765 F. Supp. 844, 846 (S.D.N.Y. 1991) (finding plaintiff's sole allegation that there was a pattern of racketeering "over a continuous period of at least two and one-half years" with "repeated and numerous [predicate acts]" sufficient to survive Rule 12(b)(6)).

### a. Open-Ended Continuity

Plaintiffs allege that open-ended continuity is present here. (ECF No. 91, "Pls. Opp. to Dekel Mot." at 14-15.) The Court disagrees.

Open-ended continuity requires that the predicate acts must "amount to or pose a threat of continued criminal activity." *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 180 (citing *H.J. Inc.*, 492 U.S. at 239.) "[W]here the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (citations omitted).

Here, the alleged RICO enterprise ended in 2023 when PS Funding declared bankruptcy, and the enterprise lost its source of

funding.  (TAC ¶¶ 258, 374.)  This is the type of scheme that is "inherently terminable" and, as Plaintiffs appear to concede, could not have continued once the enterprise's funding source declared bankruptcy.  *See Cofacredit, S.A.*, 187 F.3d at 244. Plaintiffs have not alleged how, if at all, the alleged predicate acts could imply a threat of continued criminal activity.

Plaintiffs instead argue that the wire fraud predicate acts were "the regular way" the defendants conducted "their ongoing legitimate business."  (Pls. Opp. to Dekel Mot. at 14-15.) (citing *H.J., Inc.,* 492 U.S. at 243.)  However, aside from that single conclusory allegation, the Third Amended Complaint does not contain any factual substantiation for the claim that Defendants' fraudulent predicate acts were "the regular way" of conducting their otherwise legitimate businesses.  (*See* TAC ¶ 410.)  Though Plaintiffs allege that there were 28 other properties across two states subject to the Spitzer Enterprise's fraudulent scheme, as well as multiple victims, this assertion is not sufficient on its own.  For instance, Defendants could be hypothetically involved in hundreds or thousands of other properties in a legitimate and lawful fashion, and the 28 properties Plaintiffs identified could be a mere fraction of Defendants' business.  Thus, Plaintiffs have not sufficiently alleged open-ended continuity.

### b.  Closed-Ended Continuity

As to closed-ended continuity, the Supreme Court did not

explicitly define the outer limits of time necessary to demonstrate a closed-ended pattern of racketeering but noted that it must be "a substantial period of time" not "weeks or months." *H.J. Inc.*, 492 U.S. at 242. The Second Circuit has held that "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 181 (emphasis in original). Although closed-ended continuity is primarily a temporal concept, "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Cofacredit, S.A.*, 187 F.3d at 242-43 (citing *GICC Cap. Corp.*, 67 F.3d at 467).

Here, Plaintiffs allege that the pattern of racketeering continued from January 2019 to mid-2023, when PS Funding declared bankruptcy. (TAC ¶ 258.) The Rosa Defendants concede that Plaintiffs have alleged the two-year minimum duration required by the Second Circuit. (Rosa Mot. at 32) ("[Plaintiffs] fall short with respect to properly pleading considerations *besides* number of years[.]") (emphasis in original). The gravamen of the Rosa Defendants' argument pertains instead to the "other factors" that the Second Circuit considers in addition to the duration of time. Specifically, the Rosa Defendants argue that Plaintiffs have

failed to allege "whether there were multiple schemes, and the number of participants and victims." (Rosa Mot. at 24.)

Affording the Third Amended Complaint the most favorable possible construction, the Court finds that Plaintiffs have alleged a scheme involving (1) at least four sets of victims, (2) at least 26 mortgages totaling over $15 million, and (3) nine participants – namely, Spitzer, Weinfeld, Weisz, Teitelbaum, Bleier, BSD Realty, Sham LLC, Rosa LLC and Dekel LLC. (TAC ¶¶ 266(a)-(i), 268, 377-81.) As detailed above, Plaintiffs allege that, in much the same fashion as with Plaintiffs' properties, Defendants separately defrauded the Brociners, the Polatseks, Mr. Matyas, and Ms. Braun by fraudulently encumbering their properties with a fraudulent mortgage, and then funneling the mortgage funds to Defendants' own purposes. (*Id.* ¶¶ 377-81.) Plaintiffs further allege that, in an email exchanged between PS Funding and Spitzer, the Spitzer Enterprise catalogued 26 purportedly fraudulent mortgages between 2019 to 2020 alone, totaling approximately $15 million. (*Id.* ¶ 268.) Accordingly, the Court finds that Plaintiffs have satisfied the "other factors" of closed-ended continuity, and both the Dekel Defendants' and the Rosa Defendants' motions to dismiss Count Ten are denied.[10]

---

[10] The Dekel Defendants' sole argument that Plaintiffs have not alleged closed-ended continuity is contained in a single sentence stating that "Plaintiff fails to plead their allegations [as to closed-ended continuity] with particularity as required by Fed. R. Civ. P. 9(b)." (Dekel Mot. at 15.) As discussed above, Plaintiffs need only satisfy Rule 8(a)'s notice-pleading requirements for

**B. RICO Conspiracy – 18 U.S.C. § 1962(d)**

The Rosa Defendants and Dekel Defendants argue that the Third Amended Complaint fails to plead a RICO conspiracy claim under 18 U.S.C. § 1962(d), (Dekel Mot. at 9; Rosa Mot. at 29-30), which makes it "unlawful for any person to conspire to violate any of the provisions of [§ 1962(c)]," 18 U.S.C. § 1962(d).

As a preliminary matter, Rule 9(b) does not govern allegations of RICO conspiracy, which are instead "subject only to the more liberal notice-pleading requirements of [Fed. R. Civ. P. 8]." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. [A] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a).").

Given that both the Rosa Defendants and the Dekel Defendants base their entire argument to dismiss the RICO conspiracy claim solely on the assumption that Plaintiffs' substantive RICO claim must be dismissed, their arguments fail because the Court has declined to dismiss the substantive RICO claim. *See SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 81 (E.D.N.Y. 2006) ("Because the court holds that Plaintiff has properly allege

---

allegations regarding the pattern of racketeering, and thus, the Dekel Defendants' argument fails as a matter of law.

a RICO claim, the court denies the motion to dismiss the conspiracy claim.") Thus, the Dekel Defendants' and the Rosa Defendants' motions to dismiss the RICO conspiracy claim are denied.

## II. Plaintiffs' Civil Conspiracy Claim

The Rosa Defendants also argue that Plaintiffs have failed to allege a cause of action for civil conspiracy. The Court disagrees.

As the Rosa Defendants correctly assert, there is no independent cause of action for civil conspiracy to defraud under New York law. *See Filler v. Hanvit Bank*, 156 F. Appx. 413, 417 (2d Cir. 2005). However, a civil conspiracy may be alleged for the purpose of showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interests, the acts of one may be imputed to the others. *Id.*; *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The allegation [of conspiracy] 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956), *cert. denied*, 352 U.S. 844 (1956)).

Thus, to establish a sufficient claim for conspiracy to defraud, a plaintiff must first allege facts demonstrating the underlying fraud, although the plaintiff "need not allege and prove that each defendant committed every element of the underlying

37

[fraud]." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) (citing *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521-22 (3d Dep't 2022)).  In addition, a plaintiff must allege plausible facts of (1) a corrupt agreement; (2) an overt act in furtherance of that agreement; and (3) membership in the conspiracy by each defendant. *See Cofacredit, S.A.*, 187 F.3d at 240. "As is true in criminal conspiracies, agreements in civil conspiracies will not easily be shown by direct evidence, but may be inferred from circumstantial evidence." *Id.*

At the pleadings stage, Plaintiffs have sufficiently and plausibly alleged a conspiracy to defraud.  The underlying fraud that Plaintiffs allege is that Defendants knowingly agreed and coordinated to generate fraudulent paperwork, encumber property that did not belong to them, abscond with the loan proceeds, and then subject the actual property owners to foreclosure proceedings.  (TAC ¶¶ 36-76.)  For the Rosa Defendants, specifically, Plaintiffs allege that the Rosa Defendants participated in the fraudulent scheme by creating fraudulent mortgage instruments encumbering property they knew or should have known was obtained through fraud. (*See, e.g.*, *id.* ¶¶ 48, 71.)

Plaintiffs have also plausibly alleged an agreement to undertake the fraud and corresponding overt acts.  Specifically, Plaintiffs allege that Defendants, despite having knowledge of the ongoing fraud, continued to notarize documents, generate

fraudulent mortgages, and collect and reallocate improperly generated loan proceeds. (*Id.* ¶ 362.) Plaintiffs have also alleged membership in the conspiracy as to all Defendants, who all played discrete and necessary roles in perpetuating the mortgage fraud scheme. (*Id.* ¶ 266(a)-(i).)

Plaintiffs' allegations against the Rosa Defendants are therefore sufficiently and plausibly alleged at this stage in the litigation. Thus, Defendants' motion to dismiss Count Nine is denied.

## CONCLUSION

For the foregoing reasons, the Dekel Defendants' motion to dismiss Count Ten pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) is **DENIED**. The Rosa Defendants' motion to dismiss Counts Nine and Ten pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) is also **DENIED**.

**So ordered.**

Dated:    March 26, 2025
          Brooklyn, New York      _____
                                  **Kiyo A. Matsumoto**
                                  United States District Judge
                                  Eastern District of New York